**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) MUSCOGEE (CREEK) NATION, a federally recognized Indian Tribe, *Plaintiff*, v. (1) CITY OF TULSA; (2) G.T. BYNUM, in his official capacity as Mayor of City of Tulsa; (3) WENDELL FRANKLIN, in his official capacity as Chief of Police, Tulsa Police Department; and (4) JACK BLAIR, in his official capacity as City Attorney for City of Tulsa, *Defendants*. | Case No. 23-cv-00490-SH |

**COMPLAINT**

Plaintiff the Muscogee (Creek) Nation ("Nation"), a federally recognized Tribal government that exercises sovereignty and jurisdiction over all Indians within the boundaries of the Muscogee (Creek) Reservation in eastern Oklahoma, by and through counsel, states as follows:

## INTRODUCTION

1. In *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), the United States Supreme Court affirmed that in a series of treaties between the 1830s and the 1860s, Congress established a federally protected reservation for the Nation. *Id*. at 2460–62. It further affirmed that Congress has never disestablished the Creek Reservation and that, accordingly, the Reservation today remains Indian country under 18 U.S.C. § 1151(a). *Id*. at 2462–68.

2. Within Indian country (which includes federal Indian reservations), criminal jurisdiction over Indians is shared between the federal government and tribal governments, exclusive of state jurisdiction. "The policy of leaving Indians free from state jurisdiction and control is deeply rooted in this Nation's history." *Id*. at 2476 (citation omitted). Accordingly, neither states nor their political subdivisions may exercise criminal jurisdiction over Indians within Indian country absent "a clear expression of the intention of Congress" to authorize such jurisdiction. *Id*. at 2477 (citation omitted); *see also, e.g.*, *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000, 1004 (10th Cir. 2015) (Gorsuch, J.) ("[U]nless Congress provides an exception to the rule … states possess 'no authority' to prosecute Indians for offenses in Indian country." (quoting *Cheyenne-Arapaho Tribes of Okla. v. Oklahoma*, 618 F.2d 665, 668 (10th Cir. 1980))); *United States v. Sands*, 968 F.2d 1058, 1061–63 (10th Cir. 1992) (finding Oklahoma had no criminal jurisdiction over Indians in Indian country because it lacked

the requisite congressional authorization); *Ross v. Neff*, 905 F.2d 1349, 1352 (10th Cir. 1990) (same).

3. *McGirt* put the Defendants on clear notice that Tulsa lacks criminal jurisdiction over Indians within the exterior boundaries of the Creek Reservation, which encompasses significant portions of the City of Tulsa, and that prosecuting Indians under color of such jurisdiction absent the assent of Congress violates federal law.

4. Nevertheless, after *McGirt*, Tulsa has continued to prosecute Indians for conduct arising within the Creek Reservation.

5. Tulsa initially undertook those prosecutions under the purported authority of Section 14 of the Curtis Act, ch. 517, § 14, 30 Stat. 495, 499, an 1898 Indian Territory statute conferring jurisdiction on federal territorial municipalities to apply ordinances to their Indian and non-Indian inhabitants.

6. In *Hooper v. City of Tulsa*, 71 F.4th 1270 (10th Cir. 2023), the Tenth Circuit rejected Tulsa's claim to jurisdiction over Indians within the Creek Reservation under that statute because "by its plain text, Section 14 of the Curtis Act no longer applies to Tulsa[.]" *Id*. at 1288.

7. Tulsa has refused to accept the Tenth Circuit's conclusive and controlling rejection of its claim to jurisdiction under Section 14 of the Curtis Act and has instead continued to assert criminal jurisdiction over Indians within the external boundaries of the Creek Reservation under that provision.

8. After losing in *Hooper*, Tulsa also began to advance an alternative theory to support its unlawful assertion of jurisdiction. It now claims, despite a wealth of controlling precedent to the contrary, that the State of Oklahoma (and, derivatively, Tulsa) enjoys criminal jurisdiction over Indians within the Creek Reservation based on the reasoning of *Oklahoma v.*

*Castro-Huerta*, 142 S. Ct. 2486 (2022), a case addressing state jurisdiction over non-Indians in which the Court expressly and repeatedly disclaimed any intent to address the question of state jurisdiction over Indians.

9. Tulsa's prosecution of Indians for conduct occurring within the Creek Reservation constitutes an ongoing violation of federal law and irreparably harms the Nation's sovereignty by subjecting Indians within the Creek Reservation to laws and a criminal justice system other than the laws and system maintained by the Nation. Doing so impermissibly interferes with the Nation's federally protected rights of self-government.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1362. The Nation maintains a government-to-government relationship with the United States and has a governing body duly recognized by the United States Department of the Interior. The Nation asserts claims arising under the principles of federal Indian law governing federal, tribal, and state authority within Indian country.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the actions or omissions giving rise to the claims occurred in this District, a substantial part of the property that is the subject of this action is situated in this District, Defendant City of Tulsa is located in this District, and the named defendant officials principally discharge their official duties in this District.

## PLAINTIFF

12. Plaintiff the Muscogee (Creek) Nation is a federally recognized Indian Tribal government whose governing body is recognized by the Secretary of the Interior. *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of

Indian Affairs, 88 Fed. Reg. 2112-01, 2114 (Jan. 12, 2023). The Nation exercises sovereign powers of self-governance and jurisdiction over the Creek Reservation, which was guaranteed to the Nation and defined by Congress in the Treaty with the Creeks, 7 Stat. 366 (1832); Treaty with the Creeks, 7 Stat. 417 (1833); Treaty with Creeks and Seminole, 11 Stat. 699 (1856); and Treaty with the Creeks, 14 Stat. 785 (1866). *See McGirt*, 140 S. Ct. at 2460-62.

13. The Nation, through its Attorney General, Lighthorse police, tribal court system, and comprehensive criminal code, provides for criminal law enforcement "over all Indians alleged to have committed in Muscogee (Creek) Nation Indian Country a criminal offense enumerated and defined by any law or statute of the Muscogee (Creek) Nation insofar as not prohibited by federal law." MCN Code tit. 27, § 1-102(C).[1] To ensure coordinated law enforcement and public safety, the Nation has incorporated into its criminal code "any criminal offense" prescribed by other governments within the Nation's Reservation boundaries, including Tulsa. NCA 22-048 (codified at MCN Code tit. 14, ch. 2, § 2-114(B)).[2] Likewise, the Nation revised its traffic code in 2020 to mirror Oklahoma's traffic code. NCA 20-087 (codified at MCN Code. tit. 14, ch. 3).[3]

## DEFENDANTS

14. Defendant City of Tulsa is a municipality organized under the laws of the State of Oklahoma. Tulsa is located wholly within the exterior boundaries of the State of Oklahoma, and a majority of the land within Tulsa's city limits falls within the exterior boundaries of the Creek Reservation.

---

[1] http://www.creeksupremecourt.com/wp-content/uploads/title27.pdf.
[2] http://www.creeksupremecourt.com/wp-content/uploads/NCA-22-048.pdf.
[3] http://www.creeksupremecourt.com/wp-content/uploads/NCA-20-087.pdf.

4

15. Defendant G.T. Bynum is the Mayor of the City of Tulsa and is sued in his official capacity.

16. Defendant Wendell Franklin is the Chief of Police, Tulsa Police Department, and is sued in his official capacity.

17. Defendant Jack Blair is the City Attorney for the City of Tulsa and is sued in his official capacity.

18. Defendants are hereinafter collectively referred to as "the City" or "Tulsa."

19. As a municipal corporation organized under Oklahoma law, Tulsa possesses no government powers other than those derived from the State of Oklahoma. *See Puerto Rico v. Sanchez Valle*, 579 U.S. 59, 75 (2016); *Toch, LLC v. City of Tulsa*, 474 P.3d 859, 866 (Okla. 2020).

**STANDING**

20. Tulsa's ongoing criminal prosecutions of Indians for conduct within the Creek Reservation are causing irreparable injury to the Nation by interfering with its sovereignty and undermining the authority of its own criminal justice system, including the authority of its Attorney General, Lighthorse Police, and courts to prosecute under the Nation's own laws criminal offenses committed by Indians within its Reservation. Tulsa has made plain, by word and deed, that absent judicial intervention it will persist with its unlawful prosecutions.

21. This Court can redress the injury that Tulsa is inflicting on the Nation and its right to self-government by issuing a declaratory judgment that Tulsa lacks criminal jurisdiction over Indians within the Creek Reservation, and by enjoining Tulsa from prosecuting Indians under color of such jurisdiction going forward.

## THE SUPREME COURT'S DECISION IN *McGIRT v. OKLAHOMA*

22. In *McGirt*, the United States Supreme Court affirmed that in treaties entered between 1832 and 1866, Congress established and defined a federally protected Indian reservation for the Nation. 140 S. Ct. at 2460–62. The Court further affirmed that, since 1866, Congress has never disestablished the Creek Reservation and that it remains Indian country today under 18 U.S.C. § 1151(a). *Id.* at 2462–68.

23. *McGirt*'s holding that the Creek Reservation is Indian country confirms that the settled jurisdictional rules that allocate state, tribal, and federal criminal jurisdiction within Indian country apply within the Creek Reservation. Among those rules is that "within Indian country, generally only the federal government or an Indian tribe may prosecute Indians for criminal offenses," and that "unless Congress provides an exception to the rule … states possess no authority to prosecute Indians for offenses in Indian country." *Ute Indian Tribe*, 790 F.3d at 1003 (Gorsuch, J.) (quotation marks omitted). *McGirt* concluded that "Oklahoma cannot come close to" showing that Congress has ever authorized it to exercise criminal jurisdiction over Indians within reservation boundaries. 140 S. Ct. at 2477.

24. Because Tulsa and its officials possess only those powers derived from the State of Oklahoma, *McGirt*'s holding applies to them as it does Oklahoma. *See Ute Indian Tribe*, 790 F.3d at 1006 (rule against state criminal jurisdiction over Indians in Indian country applies to "a state and its subdivisions").

## TULSA'S CONTINUED CLAIM TO JURISDICTION OVER INDIANS FOR CONDUCT WITHIN THE CREEK RESERVATION AFTER *McGIRT*

25. After the Supreme Court's decision in *McGirt*, Tulsa has nevertheless continued to assert criminal jurisdiction over Indians within the Creek Reservation. Tulsa first claimed that it possesses such jurisdiction by virtue of Section 14 of the Curtis Act. According to Tulsa, that

Section "provides the City of Tulsa with continuing jurisdiction to enforce its laws and ordinances as to *all* its inhabitants, including Indians." Resp. Br. on Behalf of Appellee City of Tulsa at 6, *Hooper v. City of Tulsa*, 71 F.4th 1270 (10th Cir. 2023).

26. In *Hooper*, an Indian challenged his conviction by Tulsa for a traffic offense committed within the Creek Reservation. The Tenth Circuit rejected Tulsa's claim to jurisdiction because "by its plain text, Section 14 of the Curtis Act no longer applies to Tulsa[.]" *Id*. at 1288.

27. Tulsa requested that the Court stay its mandate pending resolution of the City's anticipated petition for a writ of certiorari to the Supreme Court. The Tenth Circuit denied the request.

28. Tulsa then sought an emergency stay of the Tenth Circuit's mandate in the Supreme Court, which denied the request on August 4, 2023. The Tenth Circuit's mandate in *Hooper* issued that day.

29. Tulsa thereafter did not pursue a petition for a writ of certiorari to the Supreme Court to challenge the Tenth Circuit's ruling in *Hooper*.

**TULSA'S CONTINUED CLAIM TO JURISDICTION OVER INDIANS
FOR CONDUCT WITHIN THE CREEK RESERVATION AFTER *HOOPER***

30. The Tenth Circuit's mandate in *Hooper* notwithstanding, Tulsa has continued to assert criminal jurisdiction over Indians for conduct within the exterior boundaries of the Creek Reservation. The day the mandate issued, Tulsa asserted in the press that it will "continue to enforce City ordinances against all persons within the City of Tulsa regardless of Indian status." Gavin Pendergraff, *Supreme Court Denies Hooper v. Tulsa Hearing Request*, KTUL News (updated Aug. 4, 2023) (quoting statement of Tulsa).[4]

---

[4] https://ktul.com/news/local/supreme-court-issues-stay-on-hooper-v-tulsa.

31. On August 11, 2023, one week after the Tenth Circuit's mandate issued in *Hooper*, Tulsa asserted in a municipal court filing that it could continue with its prosecution of an Indian for a traffic offense because it "has jurisdiction over Indians for their violations that occur within City limits." City's Resp. to Def.'s Second Mot. to Dismiss for Lack of Subject Matter Jurisdiction and Br. in Supp. at 6, *City of Tulsa v. O'Brien,* Case Nos. 720766–720766D (Mun. Criminal Ct. of Tulsa Aug. 11, 2023).

32. In support of its assertion, Tulsa cited Section 14 of the Curtis Act. *Id*. at 22–28. It also cited the Supreme Court's decision in *Castro-Huerta*, wherein the Court held that states have inherent criminal jurisdiction over non-Indians in Indian country. Tulsa argued that *Castro-Huerta* likewise governs state jurisdiction over Indians, *id*. at 5–9, despite the Supreme Court's repeated statements that the decision "express[es] no view over a criminal case of that kind" and does "not take a position on that question," 142 S. Ct. at 2501 n.6, 2504 n.9.

33. On August 17, 2023, the municipal court rejected both of Tulsa's arguments. Order Granting Def.'s Second Mot. to Dismiss for Lack of Subject Matter Jurisdiction at 3–4, *City of Tulsa v. O'Brien,* Case Nos. 720766–720766D (Mun. Criminal Ct. of Tulsa Aug. 17, 2023).

34. Tulsa has appealed the *O'Brien* decision to the Oklahoma Court of Criminal Appeals ("OCCA"). Pet. in Error, *City of Tulsa v. O'Brien*, Case No. S-2023-715 (Okla. Crim. App. Oct. 3, 2023).

35. Tulsa has also made plain in a separate traffic offense case pending in the OCCA that "[t]he City continues to assert jurisdiction over Indian offenses, and Indians continue to file motions to dismiss those cases." Appellee City of Tulsa's Mot. for Suppl. Briefing, Withdrawal

8

of Request for Stay, and Notification to the Ct. of Status in *Hooper v. City of Tulsa* at 4, *Stitt v. City of Tulsa*, No. M-2022-984 (Okla. Crim. App. Aug. 18, 2023).

36. On October 19, 2023, Tulsa filed a supplemental brief in that same case confirming that it continues to assert criminal jurisdiction over Indians within the Creek Reservation based on its view that: (1) "The City has jurisdiction over Indian municipal offenders under the Curtis Act, as the Tenth Circuit's *Hooper* Decision was incorrectly decided," and (2) "the City also shares with the Tribes concurrent jurisdiction derived from the State over Indian offenses" under *Castro-Huerta*. Appellee City of Tulsa's Suppl. Briefing of *Hooper v. City of Tulsa* and *Oklahoma v. Castro-Huerta* at 1, 6, *Stitt v. City of Tulsa*, Case No. M-2022-984 (Okla. Crim. App. Oct. 19, 2023).

37. The Tenth Circuit's decision in *Hooper* with respect to Section 14 of the Curtis Act is binding and final and forecloses as a matter of law Tulsa's reliance on Section 14 to support its exercise of jurisdiction over Indians within the Creek Reservation.

38. *Castro-Huerta* states repeatedly that the decision carries no implications for questions of state jurisdiction over Indians in Indian country and expressly confines its analysis to the narrow jurisdictional issue of state jurisdiction over non-Indians in Indian country. It accordingly does not alter longstanding Supreme Court and Tenth Circuit precedents foreclosing states and their political subdivisions from criminally prosecuting Indians for conduct within Indian country absent the assent of Congress. Those precedents remain binding.

**TULSA'S SELECTIVE PARTICIPATION IN CROSS-DEPUTIZATION AGREEMENTS WITH THE CREEK NATION**

39. While Tulsa broadly asserts criminal jurisdiction over Indians within the Creek Reservation, it has in practice generally limited its prosecution of Indians to certain categories of traffic offenses.

9

40. The Nation has in place sixty-nine cross-deputization agreements with entities including the United States Bureau of Indian Affairs, the State of Oklahoma, and various Oklahoma agencies and political subdivisions within the Creek Reservation, including numerous Oklahoma municipalities and including specifically the City of Tulsa.

41. Under these agreements, all cross-deputized officers, tribal and non-tribal, possess arrest authority within the Creek Reservation over all persons within their respective jurisdictions, Indian and non-Indian alike. This includes arrest authority for applicable tribal law and non-tribal law offenses, including state and municipal offenses, and specifically including traffic offenses.

42. After *McGirt*, the City of Tulsa began referring felony and criminal misdemeanor offenses by Indians within the Creek Reservation to the Creek Nation for prosecution. From January 1, 2023, to October 31, 2023, for example, the Creek Nation received 2,618 such referrals from the City of Tulsa Police Department.

43. Tulsa has generally declined to refer just one category of offenses: traffic offenses.

44. Other municipalities successfully collaborate with the Nation on traffic safety within the Creek Reservation. Between January 1, 2023, and October 31, 2023, for example, the Nation received 1,083 traffic citation referrals from agencies, municipalities, and political subdivisions that are parties to cross-deputization agreements with the Nation.

45. Since *McGirt*, the Nation generally has received no referrals from the City of Tulsa for Indian traffic offenses within the Reservation. Tulsa instead has persisted in prosecuting these matters unilaterally despite referring an array of other criminal matters involving Indian defendants to the Nation.

## COUNT 1

46. The Nation restates, realleges, and incorporates by reference all preceding paragraphs and allegations.

47. The Creek Reservation is Indian country under 18 U.S.C. § 1151(a).

48. Within its Reservation, the Creek Nation and the United States possess criminal jurisdiction over Indians exclusive of the State of Oklahoma and its political subdivisions, which are prohibited under federal law from asserting any such jurisdiction absent the assent of Congress. Congress has not authorized such jurisdiction here.

49. Tulsa continues to assert criminal jurisdiction over Indians for conduct occurring within the Creek Reservation despite the lack of congressional authorization. Tulsa's actions directly contravene federal law.

50. Tulsa has repeatedly demonstrated its intention to continue asserting criminal jurisdiction over Indians for conduct within the Creek Reservation absent judicial intervention.

## PRAYER FOR RELIEF

WHEREFORE, the Nation respectfully requests that this Court:

A. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 in favor of the Nation that Tulsa lacks criminal jurisdiction over Indians for conduct occurring within the Creek Reservation and that Tulsa's continued assertion of that jurisdiction violates federal law.

B. Preliminarily and permanently enjoin Tulsa from exercising criminal jurisdiction over Indians for conduct occurring within the Creek Reservation absent express authorization from Congress.

C. Award the Nation its reasonable attorney's fees, costs, and such other relief as the Court deems just and appropriate.

| | |
|---|---|
| Dated: November 15, 2023 | Respectfully submitted, |
| | /s/Riyaz A. Kanji |
| Geraldine Wisner, OBA No. 20128 | Riyaz A. Kanji |
| Attorney General | David A. Giampetroni |
| MUSCOGEE (CREEK) NATION | KANJI & KATZEN, P.L.L.C. |
| P.O. Box 580 | P.O. Box 3971 |
| Okmulgee, OK 74447 | Ann Arbor, MI 48106 |
| (918) 295-9720 | (734) 769-5400 |
| gwisner@mcnag.com | rkanji@kanjikatzen.com |
| | dgiampetroni@kanjikatzen.com |
| O. Joseph Williams, OBA No. 19256 | |
| O. JOSEPH WILLIAMS LAW OFFICE, PLLC | Philip H. Tinker |
| The McCulloch Building | KANJI & KATZEN, P.L.L.C. |
| 114 N. Grand Avenue, Suite 520 | 811 1st Avenue, Suite 630 |
| P.O. Box 1131 | Seattle, WA 98104 |
| Okmulgee, OK 74447 | (206) 344-8100 |
| (918) 752-0020 | ptinker@kanjikatzen.com |
| jwilliams@williamslaw-pllc.com | |
| | Stephanie R. Rush, OBA No. 34017 |
| | KANJI & KATZEN, P.L.L.C. |
| | P.O. Box 2579 |
| | Sapulpa, OK 74067 |
| | (206) 486-8211 |
| | vrush@kanjikatzen.com |

*Counsel for Muscogee (Creek) Nation*

## CERTIFICATE OF SERVICE

      I certify that on November 15, 2023, this document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

                                    /s/ *Riyaz A. Kanji*
                                    Riyaz A. Kanji