**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

MUSCOGEE (CREEK) NATION,
　　a federally recognized Indian Tribe,

　　　　　　　*Plaintiff*,

v.

CITY OF TULSA; G.T. BYNUM, in his
official capacity as Mayor of City of Tulsa;
WENDELL FRANKLIN, in his official
capacity as Chief of Police, Tulsa Police
Department; and JACK BLAIR, in his official
capacity as City Attorney for City of Tulsa,

　　　　　　　*Defendants*.

Case No. 23-cv-00490-SH

**DECLARATION OF ATTORNEY GENERAL GERALDINE WISNER**

I, Geraldine Wisner, declare the following on the basis of personal knowledge to which I am competent to testify:

**General Information**

1.    I have served as the Attorney General for the Muscogee (Creek) Nation (Nation) since March 2022. In total, I have twenty years of experience as an Attorney General and prosecutor for Tribal Nations. Before my tenure as Attorney General for the Nation, I served as Attorney General for the Kickapoo Tribe of Oklahoma. I have also served as a prosecutor for the Iowa Tribe of Oklahoma and the Citizen Potawatomi Nation of Oklahoma, among others.

2.    From 2013 to 2015, I was appointed by Attorney General Eric Holder to serve on the National Coordination Committee for the American Indian/Alaska Native Sexual Assault Nurse Examiner-Sexual Assault Response Team Initiative. As a member of the Committee, I worked with other Indian country experts in developing the Report to the United States Attorney General on Improving Federal Agency Response to Sexual Violence in Tribal Nations.[1]

3.    I also served as the first Ambassador to the United Nations for the Muscogee (Creek) Nation, during which time I made presentations to the United Nations in Geneva, Switzerland, and New York City. My presentations addressed topics including the need for the United Nations to recognize Indigenous Tribes as members or to create an alternate mechanism for their participation; support for, and the passage of, the United Nations Declarations on the Rights of Indigenous

---

[1]

https://ovc.ojp.gov/sites/g/files/xyckuh226/files/media/document/NCC_June2014_FinalReport_508.pdf.

Peoples; and issues specific to Indigenous women, the United Nations Declaration of the Rights of the Child, and treaty recognition.

4.  As Attorney General for the Muscogee (Creek) Nation, I lead the Nation's Department of Justice and serve as the chief law enforcement officer responsible for the faithful execution of the Nation's laws within the Reservation. The Department of the Attorney General provides numerous services, including prosecuting cases through the Nation's court system and referring non-Indian cases to the appropriate jurisdiction.

5.  As Attorney General, I oversee the Nation's records department, which in the ordinary course of business collects the data presented in this declaration; work closely with the Nation's Lighthorse police force, district courts, and Tribal Juvenile Justice Division; and draft and provide legal review of proposed revisions to tribal laws, including our comprehensive criminal justice code, MCN Code tit. 14 (Crimes and Punishments),[2] for the benefit of our Nation's Council.

6.  Following the United States Supreme Court's decision in *McGirt v. Oklahoma* on July 9, 2020, the Nation has invested significant additional resources in its law enforcement system.

7.  Since *McGirt*, our Department of Justice has filled four new attorney positions and nine new administrative positions. The Department is in the process of hiring seven additional attorneys and six additional administrative staff.

8.  Since *McGirt*, the Nation's Court has hired five new judges and thirteen new administrative staff.

---

[2] https://www.creeksupremecourt.com/wp-content/uploads/title14.pdf.

**Purpose and Scope of Cross-Deputization Agreements**

9.     The Nation has long cooperated with the numerous local, State, and Federal law

enforcement agencies that exercise criminal jurisdiction within its Reservation

boundaries. One of the principal means of implementing this cooperative law

enforcement relationship is through cross-deputization agreements, pursuant to

which law enforcement officers from the Nation and cooperating agencies are

delegated authority to enforce each other's laws against all persons, both Indian

and non-Indian, within their respective jurisdictions.

10.    The purpose of these agreements is to "authorize commissioned Officers to react

immediately to observed violations of the law and other emergency situations

regardless of whether such occurrences violate the criminal statutes of the

[Nation], the United States, and/or the State of Oklahoma." Tulsa Cross

Deputation Agreement § 1(3) (2006).[3] The agreements facilitate comprehensive

and coordinated efforts in "responding to observed violations of the law, effecting

arrests, responding to calls for assistance, performing investigations and providing

other assistance such as dispatching and detention." *Id*. §1(6). The agreements are

effective throughout the Muscogee (Creek) Reservation as established by the

Nation's 1866 Treaty. with the United States. *Id*. § 2(F) (citing 18 U.S.C. § 1151

and 1866 Treaty, 14 Stat. 785)).

11.    The Nation currently has sixty-nine cross-deputization agreements in force with

the State of Oklahoma and various State agencies, including the Oklahoma

Highway Patrol and Oklahoma Bureau of Narcotics; ten counties within the

---

[3] https://www.sos.ok.gov/documents/filelog/63941.pdf.

Nation's Reservation, including Tulsa County; thirty-nine municipalities, including the City of Tulsa; and federal law enforcement agencies, including the United States Bureau of Indian Affairs, the United States Marshals, and the FBI Safe Trails Taskforce.

12.    Under these agreements, non-Nation officers may "respond to observed violations of the Nation's Criminal Code, and upon request by Officers of the Nation, investigate offenses and enforce the criminal laws enumerated in the Nation's Criminal Code and/or other criminal laws of the Nation." Tulsa Cross Deputation Agreement § 8(A). The agreements, therefore, permit non-tribal officers to ticket, arrest, and detain Indians for violations of the Nation's laws, just as they permit the Nation's Lighthorse officers to ticket, arrest, and detain non-Indians for violations of non-tribal laws—with subsequent referrals in each case to the government with jurisdiction to prosecute the offenders in question.

**Arrest and Ticketing Under the Cross-Deputization Agreements – Key Principles**

13.    As explained in greater detail below, under the cross-deputization agreements, Tulsa law enforcement officers should ordinarily follow the same procedures when encountering suspects, regardless of the suspect's Indian status. The only additional step that Tulsa's officers should take is to inquire whether the suspect is an Indian, and on the basis of the suspect's response and any identifying information she has on her person decide whether to refer the matter to the Nation or to Tulsa's municipal courts, which can then further investigate issues of Indian status if in doubt. Tulsa's officers are decidedly not required to investigate further into, or to conclusively resolve, Indian status in the field.

4

14.    If a suspect fails to inform the officer that she is an Indian, or if the suspect does so in an evasive or unconvincing manner, the officer may refer the matter to Tulsa for prosecution. If the suspect subsequently contends that she is an Indian and therefore not subject to prosecution by Tulsa for conduct within the Nation's Reservation, the suspect will have the opportunity to raise her jurisdictional defense at what is known as a "*McGirt* hearing." If the suspect provides sufficient evidence of her Indian status, the matter can then be referred to the Nation for prosecution.

15.    If a suspect identifies herself as an Indian, the officer should request that the suspect provide any documentation, such as a Tribal citizenship card or a Certificate of Degree of Indian Blood. If the officer is satisfied that the suspect is an Indian, the officer should refer the matter to the Nation for prosecution.

16.    Under no circumstance are officers required to conclusively determine at the point of contact whether the suspect is an Indian or a non-Indian. When an offense is referred to the Nation, the Nation's Attorney General's Office confirms these facts. Conversely, where matters are referred to Tulsa's municipal courts, suspects can at that time raise any evidence relating to Indian status.

17.     Nor does anything in the cross-deputization agreements require Tulsa officers to determine in the first instance whether the offense occurred within the Muscogee (Creek) Nation Reservation or the Cherokee Nation Reservation. While most of the land within Tulsa's city limits are included within the Muscogee (Creek) Nation Reservation, a portion of Tulsa is located within the Cherokee Nation. To that end, the Nation and the Cherokee Nation collaborate on law enforcement

matters. This includes referring Indian offenders to one another when appropriate. The status of the land can be, and is, confirmed by the Nations post-arrest and post-ticketing.

**Traffic Ticketing Process Under Cross-Deputization Agreements**

18.    The Nation's cross-deputization agreements apply to offenses including traffic violations, such as speeding. The MCN Attorney General's Office has provided agencies operating under the cross-deputization agreements with streamlined, step-by-step instructions for issuing traffic citations to Tribal citizens for prosecution by the Nation.

a.    When officers observe traffic violations, they should follow their ordinary protocols for traffic stops, which generally include stopping the driver, verifying the driver's license and tag information, and checking the driver's insurance verification. These general procedures apply whether the suspect is an Indian or not.

b.    If the driver claims to be Indian (of his own initiative or in response to the officer's inquiry), the officer may ask the driver to provide proof of his or her Indian status. Drivers typically prove their Indian status by showing an identity card issued by a federally recognized Tribe or a card showing the driver's Certificate of Degree of Indian Blood, which is issued by the federal government. If the driver provides such verification, or other reasonable assurance of Indian status, the officer should refer the matter to the Nation.

6

c.     When a suspect provides verification or identifies as a member or citizen of a federally recognized Tribal nation, the ticketing officer should include that Tribal citizenship on the citation form that is then forwarded to the Nation for prosecution.

d.     If the suspect does not provide verification of Tribal citizenship, or the officer otherwise lacks a reasonable basis to conclude that the suspect is in fact an Indian, the officer should issue the ticket as though the suspect is a non-Indian. If the suspect is indeed an Indian, she can provide evidence of that status during a *McGirt* hearing in State or municipal court. In such hearings an Indian can challenge a jurisdiction's attempt to prosecute her for conduct undertaken within the Nation's Reservation. If the suspect provides sufficient proof of Indian status, the State should then refer the matter to the Nation for prosecution.

e.     The officer uses his or her own citation book or e-ticket system to issue the driver a ticket.

    i.     If the officer is using a citation book, the officer writes on the ticket that the violation falls under the Nation's jurisdiction by indicating in writing "Creek Nation jurisdiction" or "Creek Nation Court."

    ii.     I have advised the various jurisdictions with which we have cross-deputization agreements that the officer should write the charges on the ticket according to that officer's municipal code. As an example, an officer in Sapulpa would write up the charges

7

on the ticket pursuant to the Sapulpa municipal code. When such tickets are referred to my office for prosecution, prosecutors determine the equivalent Tribal code provisions under which the offenses can be prosecuted under Tribal law. The cross-deputization agreements accordingly do not require Tulsa officers to determine in the first instance what tribal law applies, nor is there any need for Tulsa officers to use a separate citation book for traffic tickets for those claiming Indian status. The applicable provision of MCN's Tribal Code can be, and is, determined by the Nation post-ticketing and post-arrest.

f.   The Attorney General's Office must have the original ticket.

   i.   If the officer is using a citation book, the driver receives a copy of the ticket. The officer may take a photo of the ticket and email it to the Attorney General's Office. The officer must also mail the original ticket to the Creek Nation's Attorney General's Office for prosecution.

   ii.   If the officer is using an e-ticket system, the officer will direct the e-ticket to the MCN Attorney General's Office electronically. The officer also mails the paper ticket that the e-ticket system generates to the Attorney General's Office.

g.   Once the Attorney General's Office receives the ticket, it confirms the driver's Indian status, and it confirms that the traffic offense occurred within the Nation's Reservation.

8

      i.      The Attorney General's Office will prosecute traffic tickets unless the violation was committed by a non-Indian, the violation occurred outside the Nation's Reservation, or there is insufficient evidence to prosecute. Where this occurs, the Nation refers the traffic ticket back to the jurisdiction that issued the ticket for prosecution.

      ii.     From January 1, 2023, to October 31, 2023, the Nation referred fifty-one traffic tickets back to the respective ticketing agencies because the Nation either could not confirm the driver's Indian status or lacked jurisdiction because the driver was non-Indian.

19.    Drivers may either pay their traffic tickets or attend a traffic court hearing or trial.

    a.    Drivers may pay their traffic tickets in one of three ways. They may pay online, via mail, or in person. The link to the payment system is available on the MCN District Court's website.[4] The Nation also offers individuals the option to establish a payment plan.

    b.    Individuals who wish to attend a traffic court hearing or trial will receive a letter from the Attorney General's Office notifying them of their court date. If an individual fails to attend the hearing or trial, a bench warrant will issue for that person's arrest.

    c.    Individuals who wish to appear virtually may submit a request to the MCN District Court at least twenty-four hours in advance of their court date.

---

[4] https://creekdistrictcourt.com/traffic/.

    d.    On occasion, the officer who issued the citation may be subpoenaed to attend a traffic court trial. That officer may also ask the MCN District Court if he or she can appear virtually.

20.    The Nation has made the step-by-step process described in ¶ 18(b)–(e) available on its website.[5] The Nation shared this webpage with Tulsa in a July 2023 meeting.

21.    Pursuant to the process described in ¶ 25(a)–(e) below, Tulsa refers most criminal felonies and misdemeanors to the Nation, including certain criminal felonies and misdemeanors related to traffic violations, such as Driving Under the Influence and Leaving the Scene of an Accident. Indeed, a substantial number of the cases the Nation prosecutes originate in referrals from the Tulsa Police Department.

    a.    From January 1, 2023, to October 31, 2023, the Nation received a total of 2,618 criminal felony and criminal misdemeanor referrals from the Tulsa Police Department.

    b.    The Nation prosecutes the vast majority of cases referred to it by the Tulsa Police Department. From January 1, 2023, to October 31, 2023, the Nation filed 1,950 cases referred to it by the Tulsa Police Department. Each case includes multiple charges, and many include multiple felony charges and multiple misdemeanor charges. Of the 1,950 cases the Nation filed, the Nation filed 5,010 felony charges and 1,663 misdemeanor charges, twenty-six of which were related to traffic offenses such as DUIs.

---

[5] https://www.muscogeenation.com/attorney-general-directory/attorney-general-tickets/.

c.    The Nation declines to prosecute Tulsa referrals where the referred case does not involve crimes committed within the Muscogee (Creek) Reservation, there is a non-Indian offender and a non-Indian victim, or there is insufficient evidence to prosecute.

22.    Tulsa refuses to refer traffic citations to the Nation. Following *McGirt*, Tulsa has not referred any traffic tickets to the Nation notwithstanding its authority to make such referrals under the cross-deputization agreement.

23.    By contrast, numerous municipalities, political subdivisions, and agencies refer traffic citations to the Nation. These include the Oklahoma Highway Patrol; the Oklahoma Department of Tourism & Recreation, Division of State Parks; Bixby; Broken Arrow; Bristow; Coweta; Drumright; Glenpool; Jenks, McIntosh County; Mounds; Muskogee; Sapulpa; and Tulsa County. From January 1, 2023, to October 31, 2023, the total number of traffic citation referrals to the Nation was 1,083. By way of example, between January 1, 2023, and October 31, 2023:

a.    The Broken Arrow Police Department referred 281 traffic citations to the Nation.

b.    The Coweta Police Department referred 170 traffic citations to the Nation.

c.    The Oklahoma Highway Patrol referred 156 traffic citations to the Nation.

24.    Many of the agencies that refer tickets to the Nation use an e-ticket system. These include the Oklahoma Highway Patrol; Glenpool Police Department; Broken Arrow Police Department; Sapulpa Police Department; Bixby Police Department; Jenks Police Department; Muskogee Police Department; Coweta Police

11

Department; and Kellyville Police Department. From January 1, 2023, to October 31, 2023, the Nation received approximately 800 e-tickets.

**Arrest and Referral Process Under Cross-Deputization Agreements**

25.    The Nation's cross-deputization agreements authorize non-tribal officers to arrest, detain, and refer to MCN for prosecution criminal offenders who are Indian, or allege that they are Indian, and commit offenses within the Nation's Reservation. This process is set out below in ¶ 25(a)–(h).

a.    As with traffic violations, when an offender identifies as an Indian, the officer may ask the suspect to provide a Tribal citizenship identification card or a Certificate of Degree of Indian Blood. At times the offender may simply allege that he or she is an Indian. If the officer has sufficient grounds to believe that the suspect is an Indian, the officer should refer the matter to the Nation, which will verify the suspect's status prior to prosecuting any violations of the Nation's laws.

b.    When the police arrest a proven or alleged Indian offender, the police will book that person into a detention facility with which the Nation has contracted.

i.    When the Tulsa Police Department arrests and books an Indian offender, that person is taken to the David L. Moss Criminal Justice Center in Tulsa pursuant to the Nation's contract with Tulsa County.

ii.    The Nation also has jail contracts with Pawnee County, Muskogee County, and Okfuskee County.

c.     The arresting officer produces an arrest and booking sheet for each offender at the time that person is booked.

d.     If the offender has shown that he or she is Indian pursuant to ¶ 25(a), or claims to be Indian, the officer will write this on the arrest and booking sheet. The officer will also write on the arrest and booking sheet that the inmate should be held for Creek Nation prosecution.

      i.     In certain circumstances, the arresting officer may lack a reasonable basis to conclude that the suspect is in fact an Indian. In those cases, the officer may choose to refer the matter to the Nation, which will determine in the course of the prosecution whether the suspect is in fact an Indian. Alternatively, the officer may send the offender to State court for the court to conduct a *McGirt* hearing.

e.     As with traffic tickets, the officer does not need to confirm the suspect's Indian status; the location of the offense; or what tribal law applies. Under the Nation's laws, it is the Nation's burden to prove each of these jurisdictional predicates as elements of the offense in the course of prosecuting the offenders. The Attorney General's Office accordingly confirms each of these points once it receives the arrest and booking sheet and police report from the officer. Based on this information, the Attorney General's Office decides whether to file charges.

13

    f.      If the Nation files charges against the inmate, the MCN District Court will hold an arraignment hearing. The MCN District Court may hold a separate bond hearing before it holds the arraignment hearing.

          i.      Inmates who post bond post it with Lighthorse. Afterwards, they are brought to the Nation's District Court in Okmulgee for an arraignment. Inmates who do not post bond remain incarcerated.

    g.      The Nation's District Court regularly holds video hearings on its criminal docket, including for arraignments. The presiding judge will hold a virtual hearing upon the request of the defendant.

    h.      On occasion, the arresting officer may need to appear in MCN District Court. Such officers may request to appear virtually.

**The Nation's Criminal Justice System and Its Relationship to Nation Values and Self-Government**

26.    A key component of the Nation's commitment to public safety is the Nation's implementation of its law enforcement and criminal justice priorities in a manner that is best suited to upholding its traditional and cultural expectations around justice, fairness, and individual accountability, with an emphasis on caring for all of its citizens' safety needs by minimizing those conditions that lead to harmful or criminal conduct. As with other sovereigns, the Nation's community values around justice and public safety are reflected in its Law and Order Code; its enforcement of this code through its Lighthorse Police Department, Prosecutor's Office, courts, and other criminal justice professionals; and services provided to victims and offenders aimed at providing critical protection and support for victims while eliminating the conditions that contribute to criminal behavior.

27.    While the Nation's modern criminal justice system is modeled on and encompasses all the features commonly employed in State and federal justice systems, including incarceration and/or levying criminal fines and monetary penalties on offenders where appropriate, the Nation's longstanding policy is to prioritize rehabilitation, healing, restorative justice, and offender reintegration, in addition to strictly punitive measures such as incarceration, to the greatest degree possible. So while the Nation can and does incarcerate offenders when appropriate, our justice system seeks to identify and address the root causes underlying an individual's behavior, in order to prevent recidivism and to set the offender up for the greatest possibility of success as a member of the Reservation community.

28.    In this respect, the Nation is not alone among tribal governments. In 2013, the Indian Law and Order Commission, established by Congress under the 2010 Tribal Law and Order Act, 124 Stat. 2258, published its final report to Congress: A Roadmap to Making Native America Safer (ILOC Report).[6] After extensive research and analysis incorporating the views of tribal communities across the Nation, the Commission "conclude[d] that creating and maintaining fair, restorative, culturally compatible, and community healing justice institutions is a primary goal of many Indian nations." ILOC Report ch. 5, at 131. Adopting a recommendation of the United States Department of Justice and the Department of the Interior's Long Term Plan to Build and Enhance Tribal Justice Systems, the Commission further concluded that "[a]lternatives to incarceration (which could

---

[6] https://www.aisc.ucla.edu/iloc/report/.

include treatment) should be the paramount objective in any plan to address the corrections aspect of public safety in Tribal nations. Detention of Tribal members should be a rare exception in the corrections context, where many of the offenders are suffering the effects of poverty, isolation and substance abuse." *Id.* (quoting Department of Justice and Department of the Interior, *Tribal Law and Order Act: Long Term Plan to Build and Enhance Tribal Justice Systems* at 10 (2011)[7]).

29.    As the Nation's chief law enforcement officer, I fully endorse these findings as consistent with the Nation's criminal justice, public safety, and law enforcement policies and priorities.

**A.    Procedures in Lieu of Prosecution and Incarceration**

30.    One of the key features of the Nation's criminal justice system is its emphasis on rehabilitation and healing, particularly when an offender's conduct relates to addiction or other mental health needs. Such offenders are often eligible to receive treatment from the Nation's Department of Health, Behavioral Health and Substance Abuse treatment program in lieu of incarceration or other punitive measures. Generally, if eligible offenders can commit to completing appropriate treatment programs, the Nation's prosecutor will request, and the Court will frequently approve, a deferred judgment or suspended sentence regime for the offender. Upon the successful completion of the behavioral health or substance abuse treatment program and any additional conditions imposed by the Court, the

---

[7] http://www.justice.gov/tribal/docs/tloa-tsp-aug2011.pdf.

offender will be eligible for release, with any records of the case expunged by the Court. *See* MCN Code tit. 14, § 1-609 (Deferred Judgment Procedure).[8]

31.    These procedures differ substantially from the drug court programs available under State law. For an offender to be eligible for drug court under Oklahoma State law, the offender must meet an extensive list of qualifying criteria not applicable to offenders under the Nation's jurisdiction. *See* Okla. Stat. tit. 22, § 471.2.

32.    While it is the State's sovereign prerogative to set whatever conditions on its drug court and treatment programs it feels best meet the needs of its community, the Nation has found that the State's conditions do not effectively serve the needs of the Nation or of the Indian persons subject to its jurisdiction. It is the Nation's judgment that focusing on making rehabilitation and remedial services more readily available to all offenders suffering from substance abuse and mental health issues best comports with the Nation's values and public safety needs.

33.    Even with respect to criminal offenses not necessarily tied to substance abuse or mental health issues, the Nation's judicial procedures allow for alternatives to prosecution or incarceration in appropriate circumstances. For instance, the Nation's judicial code authorizes the court to "mediate or settle pending matters" with the consent of the parties. MCN Code tit. 26, § 4-103(A)(4).[9] This procedure has been used to adjudicate criminal conduct when the Nation's prosecutors believed that the circumstances warranted legal action but the underlying facts

---

[8] *Supra* note 2.

[9] https://www.creeksupremecourt.com/wp-content/uploads/title26.pdf.

and circumstances made prosecution aimed at incarceration or other punitive criminal sentencing inappropriate.

34.     The Tribal Code additionally provides the Nation's courts with discretion to craft criminal sentences to satisfy the imperatives of public safety and victim needs while facilitating the rehabilitation and reintegration of offenders where possible. For instance, at the request of the Attorney General or Chief of Lighthorse Police and with the consent of the convicted person, the Court may "arrange for the convicted person to continue his or her regular employment without interruption insofar as is reasonably possible[.]" MCN Code tit. 14, § 1-614.[10] The Nation's courts additionally exercise discretion to impose deferred or suspended sentences where there is no threat to public safety and subject to the offender's complying with the conditions of probation or supervised relief; upon the successful completion of those conditions and probationary period, the Court may authorize the defendant to withdraw a guilty plea and expunge any record of the proceedings. *Id.*

35.     The ability to provide a robust suite of alternatives to prosecution and incarceration where public safety would not be compromised, and to tailor punitive sentences to minimize the disruption to the offender's life and livelihood and maximize the offender's chances of finding success after the completion of the sentences, is a significant component of the Nation's criminal justice strategy. The Nation can implement this strategy with respect to Indian offenders within its jurisdiction only so long as the Nation's law enforcement partners within the

---

[10] *Supra* note 2.

Reservation are willing to honor the Nation's jurisdiction and to refer criminal offenders subject to the Nation's jurisdiction to the Nation to be adjudicated under Nation law and in accordance with these law enforcement priorities.

**B.    Offender Reintegration Services**

36.    The Nation's commitment to addressing the conditions that lead to recurring criminal behavior is additionally expressed through its robust Adult Offender Reintegration program. While at this time the Nation is only able to provide some of the program's services, including housing, food, and clothing support, to enrolled Muscogee (Creek) Nation citizens, the Nation seeks to make the bulk of its reintegration services and programs available to all offenders under the Nation's jurisdiction.

37.    For instance, one seemingly simple but in practice often significant barrier to effective reintegration faced by many offenders is the loss of driving privileges, without which the barriers to obtaining employment or accessing services can increase exponentially, particularly for those who reside in the more rural and remote areas of the Reservation. Accordingly, the Nation's reintegration program provides a License Reinstatement Program, which assists offenders in paying license reinstatement fees, vehicle interlock (i.e., breathalyzer) device installation fees, and alcohol or substance abuse treatment courses that may be required before an offender is eligible for license reinstatement. Helping those offenders whom the courts have deemed eligible to return to the road, but who face otherwise-insurmountable financial barriers to license reinstatement, provides the mobility options necessary for those individuals to find lawful employment

opportunities, access substance abuse treatment and other services, and participate in community and family life. The Nation has found all these factors to be vital components of an offender's recovery journey and critical to creating the conditions best suited to preventing recurrence of their criminal conduct.

38.   Another significant barrier to reintegration is a lack of employment skills and opportunities on the part of offenders, many of whom consequently struggle to meet conditions of release such as securing gainful employment, paying fines and court costs, and supporting themselves and their families lawfully as productive members of society. For these reasons, the reintegration program's Fiber Technician Training Program has proven to be highly successful in helping offenders break the cycle of criminal conduct and incarceration and to find stable and high-paying employment both within the Reservation and across the United States. The program consists of eight weeks of in-person instruction and a four-week paid internship, at the conclusion of which participants will be certified and fully qualified to install and repair fiberoptic cables for both residential and commercial uses, including installing or repairing fiberoptic cables on overhead lines and powered lines as well as in homes and commercial spaces. The program is open to any interested individuals regardless of tribal membership status or criminal history, but as part of the Nation's focus on making effective reintegration services available to all offenders within the Nation's jurisdiction, the Nation provides funding assistance for offenders who would otherwise be unable to access the training program.

39.     In sum, the Nation, including its law enforcement officers, prosecutors, judges, and other criminal justice professionals, strive to reduce crime and protect all community members by eliminating the conditions leading to criminal behavior and providing support programs, alternatives to prosecution and incarceration, and reintegration services for offenders.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 15, 2023

*/s/ Geraldine Wisner*
Geraldine Wisner