No. 23-CV-490-CVE-SH

---

### IN THE UNITED STATES DISTRICT COURT FOR
### THE NORTHERN DISTRICT OF OKLAHOMA

---

**MUSCOGEE (CREEK) NATION,**
a federally recognized Indian Tribe

Plaintiff,

v.

**CITY OF TULSA; G.T. BYNUM, IN HIS OFFICIAL
CAPACITY AS MAYOR OF CITY OF TULSA; WENDELL
FRANKLIN, IN HIS OFFICIAL CAPACITY AS CHIEF OF
POLICE, TULSA POLICE DEPARTMENT; AND JACK
BLAIR, IN HIS OFFICIAL CAPACITY AS CITY ATTORNEY
FOR CITY OF TULSA,**

Defendants.

---

### DEFENDANTS' JOINT MOTION TO DISMISS AND BRIEF IN SUPPORT

---

Kristina L. Gray, OBA #21685
Litigation Division Manager
Becky M. Johnson, OBA #18282
Senior Assistant City Attorney
City Hall, One Technology Center
175 East Second Street, Suite 685
Tulsa, Oklahoma  74103
(918) 596-7717 Telephone
(918) 596-9700  Facsimile
**ATTORNEYS FOR DEFENDANTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................ii, iii, iv

BACKGROUND OF MUNICIPAL-TRIBAL LITIGATION INCLUDING
PENDING CASES IN MUNICIPAL AND STATE COURT ON SAME ISSUES ..................2

 CASE ONE:  *Stitt v. City of Tulsa*, Oklahoma Crim. App. MA-2022-984 .............................4

 CASE TWO:  *City of Tulsa v. O'Brien*, Oklahoma Crim. App. S-2023-715 .........................5

 CASE THREE: *City of Tulsa v. Harjo*, Municipal Court 6225139, 6225140, et al. ...............6

 CASE FOUR:  The Case at Bar...............................................................................8

PROPOSITION I:  THIS COURT SHOULD ABSTAIN FROM RULING ON
PLAINTIFFS' REQUESTED RELIEF AND DISMISS THIS LAWSUIT ............................9

 A. This Court should dismiss this case under the *Younger* abstention doctrine because
 there are prior pending State Court proceedings on the same issues............................9

 B. This Court should abstain from hearing this case as to completed municipal cases
 because *McGirt* does not apply retroactively, and convictions cannot be overturned
 under the *Rooker-Feldman* doctrine. ...............................................................16

PROPOSITION II:  EVEN IF THIS COURT DOES NOT FIND ABSTENTION
IS PROPER, THE COURT SHOULD DISMISS THIS CASE UNDER THE
*COLORADO RIVER* DOCTRINE DUE TO PRE-EXISTING CONCURRENT
STATE COURT CASES.........................................................................................17

PROPOSITION III:  ALTERNATIVELY, SHOULD THIS COURT DECLINE TO
DISMISS THIS LITIGATION, THE MATTER SHOULD BE STAYED PENDING A
DECISION BY THE OCCA IN *STITT*.....................................................................22

CONCLUSION ...................................................................................................23

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Barker v. Delaware Cty.,* 2012 WL 5429549 (N.D. Okla. 2012) ................................................... 12

*Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006) ........................................................10

*City of Tulsa v. Harjo*, Municipal Court 6225139, 6225140, et al....................................... 6, 8, 18

*City of Tulsa v. Hooper*, Mem. Op., 600 U.S. --- 2023, 143 S.Ct. 2556, 2556 ............................... 4

*City of Tulsa v. O'Brien*, Oklahoma Crim. App. S-2023-715 .......................... 5, 6, 8, 9, 18, 20, 21

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800,
     818, 96 S. Ct. 1236 (1976). ........................................................... 17, 18, 19, 20, 22, 23

*D.A. Osguthorpe Fam. Partnership v. ASC Utah, Inc.*, 705 F.3d 1223, 1233, 1234,
     1235, 1236 (10th Cir. 2013)................................................ 18, 19, 20, 21, 22

*D.C. Court of Appeals v. Feldman*, 460 U.S. 475 (1983) ............................................................ 17

*Davis v. Muellar*, 643 F.2d 521 (8th Cir. 1981) ............................................................... 15

*Fife v. Moore, et al.*, 808 F.Supp.2d 1310 (E.D. Okla. 2011)....................................................... 15

*Fox v. Maulding*, 112 F.3d 453 (10th Cir. 1997)........................................................................ 18

*Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994)................................................................ 18

*Grayson v. State*, 485 P.3d 250, 2021 OK CR 8 ....................................................................... 21

*Hogner v. State*, 500 P.3d, 629, 2021 OK CR 4 ....................................................................... 21

*Hooper v. City of Tulsa*, 2022 WL 1105674 (N.D. Okla. 2022) ............................................ 2, 3, 5

*Hooper v. City of Tulsa*, 71 F.4th 1235, 1270, 1276, 1284, 1285
     (10th Cir. 2023).................................................... 2, 3, 4, 5, 6, 8, 9, 10, 16, 17, 18, 19, 20, 21, 22

*Kirk v. Oklahoma*, 2021 WL 5111985 at *3 (10th Cir. 2021) .................................................... 15

*Lowery v. Dedeke*, 2021 WL 1966199 (D. Kan. May 17, 2021) ................................................. 15

*Mayotte v. U.S. Bank Nat'l. Assoc'n. for Structured Asset Investment Loan Trust Mortgage
     Pass-Through Certificates*, 880 F.3d 1169, 1174 ...................................................... 17

*McClain v. State*, 501 P.3d 1009, 2021 OK CR 38 (Chickasaw Nation) ..................................... 21

*McGirt v. Oklahoma*, 591 U.S. ---, 140 S.Ct. 2452 (2022)....... 1, 2, 5, 6, 10, 12, 15, 16, 18, 21, 22

*Morales v. City of Oklahoma City,* 2010 OK 9, ¶ 12, 230 P.3d 869, 876 ..................................... 12

*Morrow v. Winslow*, 94 F.3d 1386, 1396, 1397, 1398 (10th Cir. 1996)................................. 15, 16

*Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2494, 2501, 2503, 213 L.Ed.2d
    847 (2022)............................................. 1, 2, 3, 4, 5, 6, 7, 8, 9, 14, 15, 16, 17, 18, 19, 20, 21, 22

*Parish v. Oklahoma*, 142 S.Ct. 767 211 (2022). .......................................................... 17

*Pickup v. Dist. Ct. of Nowata Cnty., Oklahoma*, No. CIV 20-0346 JB/JFJ, 2023 WL 1394896,
    at *42 (N.D. Okla. Jan. 31, 2023), ..................................................................... 17

*Sizemore v. State*, 48 P.3d 867, 2021 OK CR 6 (Choctaw Nation);.............................................. 21

*Smith v. Crow*, 2022 WL 657956 (E.D. Okla. Mar. 4, 2022) ...................................... 15

*State ex rel. Ballard v. Hon. Terrell Crosson*, 2023 OK CR 18, ¶ 3.................... 6, 7, 8, 14, 18, 22

*State ex rel. Matloff v. Wallace*, 2021 OK CR 21, 497 P.3d 686............................................. 16, 17

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994): ............................... 23

*State v. Brester*, 2023 OK CR 10, ¶ 36; 531 P.3d 125, 137-38 ................................. 7, 21

*State v. Lawhorn*, 499 P.3d 777, 2021 OK CR 37........................................................ 21

*State v. Long*, District Ct. McIntosh Co., Okla., CF-23-86.......................................... 7

*State v. Long,* Okla. Crim. App. Case No. RE-2023-884.......................................... 7, 14

*Stitt v. City of Tulsa*, Oklahoma Crim. App.
    MA-2022-984 ...................................... 4, 5, 8, 9, 10, 11, 16, 17, 18, 19, 20, 21, 22, 23

*United States v. City of Las Cruces*, 289 F.3d 1170 (10th Cir. 2002). ......................................... 23

*United States v. Wheeler*, 435 U.S. 313, 98 S. Ct. 1079 (1978) .................................... 14

*Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*, 790 F.3d 1000, 1003, 1004, 1008
    (10th Cir. 2015)........................................................................... 14, 15

*Ute Indian Tribe of the Uintah and Ouray Reservation v. Lawrence*,
    22 F.4th 892 (10th Cir. 2022 ) ..............................................................14, 15

*Wakaya Perfection, LLC v. Youngevity Int'l., Inc.*, 910 F.3d 1118 (10th Cir. 2018), ..................... 18

*Warehouse Market, Inc. v. Oklahoma ex rel. Oklahoma Tax Commission,* 2021 WL........... 22, 23

*White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142-45, 100 S. Ct.
  2578, 2583-85 (1980)........................................................................... 3, 5, 6, 7, 9, 18, 20, 21

*Williams v. United States*, 327 U.S. 711, 66 S. Ct. 778 (1946) ..................................................... 14

*Winn v. Cook*, 945 F.3d 1253, 1258, 1259 (10th Cir. 2019)...................................................... 10, 11

*Yancey v. Bonner*, 323 F. App'x 674, 2009 WL 1058142 (10th Cir. 2009)............................... 15

*Younger v. Harris*, 401 U.S. 37, 39, 43, 44, 45, 91 S.Ct.
746, 748, 750, 751 (1971) ............................................................... 9, 10, 11, 15, 16

**Statutes**

11 O.S. § 14-111(B)(1) (2016). ...................................................................................................... 12

18 U.S.C. § 1152 .............................................................................................................................. 6

28 U.S.C.A. § 1257(a) (1988). ...................................................................................................... 11

30 Stat. 495 §14 (1898)........................................................................................... 2, 3, 4, 5, 20

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MUSCOGEE (CREEK) NATION,<br> a federally recognized Indian Tribe, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| vs. | ) <br> ) | Case No. 23-CV-490-SH |
| CITY OF TULSA; G.T. BYNUM, in his official<br>capacity as Mayor of City of Tulsa; WENDELL<br>FRANKLIN, in his official capacity as Chief of<br>Police, Tulsa Police Department; and JACK<br>BLAIR, in his official capacity as City Attorney<br>for City of Tulsa, | ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| Defendants. | ) <br> ) | |

## DEFENDANTS' JOINT MOTION TO DISMISS AND BRIEF IN SUPPORT

Plaintiff Muscogee (Creek) Nation ("the Nation") has brought suit against Defendants City of Tulsa ("the City"), Mayor G.T. Bynum, Tulsa Police Chief Wendell Franklin, and Tulsa City Attorney Jack Blair requesting declaratory and injunctive relief as it relates to the City's enforcement of traffic and other City ordinances in areas of the City within the Nation's reservation boundaries after the landmark Supreme Court ruling in *McGirt v. Oklahoma*, 591 U.S. ---, 140 S.Ct. 2452 (2022) ("*McGirt*"). Since the Court's ruling in *McGirt*, and certainly since the more recent ruling in *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 213 L.Ed.2d 847 (2022) ("*Castro-Huerta*"), the law regarding jurisdiction over Indians is unsettled, continually evolving, and the subject of several pending lawsuits in both state and federal courts. Rather than wait for the Oklahoma Court of Criminal Appeals or the other courts that have pending cases to rule and provide clarification on the complicated issue of municipal jurisdiction over Indian inhabitants, the Nation filed the present case in an effort to try to circumvent the State court system and ask

1

this Court to disregard all other pending litigation on this issue. Such a tactic is prohibited by law and thus, the case should be dismissed.

## BACKGROUND OF MUNICIPAL-TRIBAL LITIGATION INCLUDING PENDING CASES IN MUNICIPAL AND STATE COURT ON SAME ISSUES

The Nation's case is premised on the idea that the State of Oklahoma ("the State"), and therefore the City, has no jurisdiction over Indians within the Nation's reservation boundaries which the Supreme Court determined in *McGirt* have not been disestablished. Although the Nation asserts the City's exercise of criminal jurisdiction over Indians violates federal law, the law regarding State and municipal jurisdiction over Indians under the *Castro-Huerta* analysis is not settled, and the question is already the subject of multiple cases in State appellate courts and municipal court. Post-*McGirt*, individual Indians charged in the City of Tulsa's Municipal Court ("Municipal Court") filed motions to dismiss their charges based on *McGirt* to which the City responded that it retained jurisdiction under the Curtis Act of 1898. 30 Stat. 495 §14 (1898). The Municipal Court decided it had jurisdiction under the Curtis Act. One Indian person, Justin Hooper, filed in this federal district court for post-conviction relief and a declaratory judgment that the Curtis Act does not provide the City with jurisdiction. The City filed a motion to dismiss the federal case which this Court granted on or about April 13, 2022, finding the Curtis Act provided the City with jurisdiction. *Hooper v. City of Tulsa*, 2022 WL 1105674 (N.D. Okla. 2022) (unpublished), *reversed in part and vacated in part by Hooper v. City of Tulsa*, 71 F.4th 1270. Hooper then appealed this Court's decision to the United States Court of Appeals for the Tenth Circuit ("the Tenth Circuit") which ruled on June 28, 2023, the City previously had jurisdiction over Indians on Indian Country under the Curtis Act but lost such jurisdiction once the City incorporated under the State of Oklahoma's Constitution and laws. *Hooper v. City of Tulsa*, 71 F.4th 1270, 1285 (10th Cir. 2023) (the "*Hooper* Decision").

2

After the Municipal Court and Northern District of Oklahoma made their *Hooper* case decisions, the U.S. Supreme Court issued its opinion in *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 213 L.Ed.2d 847 (2022) ("*Castro-Huerta*"). *Castro-Huerta* fundamentally changed the jurisdiction of States over reservation areas finding that that "the default is that States may exercise criminal jurisdiction within their territory." *Id.* at 2503. The Court found that State jurisdiction in Indian country can only be preempted: "i) by federal law under ordinary principles of federal preemption, or ii) when the exercise of state jurisdiction would unlawfully infringe on tribal self-government." *Id.* at 2494. To determine whether interference with Tribal self-government preempts concurrent State jurisdiction, the *Castro-Huerta* Court applied the so-called *Bracker* balancing test evaluating Tribal interests in self-government, federal interests in fulfilling the trust relationship with Tribes, and State interests in the law(s) at issue. 142 S. Ct. at 2501. *See White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142-45, 100 S. Ct. 2578, 2583-85 (1980).

In the *Hooper* appeal, the State of Oklahoma, writing as amicus, raised the argument that under *Castro-Huerta*, the State retains concurrent jurisdiction with the Tribes over offenses committed by Indians unless such jurisdiction is preempted, and that in *Hooper*, such jurisdiction was not preempted and was conferred to the City by the State. However, the Tenth Circuit did not consider *Castro-Huerta* and its ruling, 71 F.4th at 1276, n.5, but instead limited its decision to whether the City has jurisdiction over Indians under the Curtis Act. 71 F.4th at 1284-85.

After the *Hooper* Decision was rendered, the City filed an application in the U.S. Supreme Court for a stay of the Tenth Circuit's mandate. *See*, U.S. Supreme Court Case No. 23A73. The Supreme Court denied the stay, but Justice Kavanaugh, joined by Justice Alito, issued a statement

noting that the *Hooper* case "arises in an interlocutory posture"[1] and that the City's request for a stay "raises an important question" concerning the City's jurisdiction over Indians. *City of Tulsa v. Hooper*, Mem. Op., 600 U.S. --- 2023, 143 S.Ct. 2556, 2556. The Kavanaugh-Alito statement noted that the Tenth Circuit declined to apply the *Castro-Huerta* analysis but that on remand the City "may presumably raise that argument." *Id.*

Most importantly for this case, the Justices stated that "nothing in the decision of the Court of Appeals prohibits the City from continuing to enforce its municipal laws against all persons, including Indians, as the litigation progresses." 600 U.S. ---, 143 S.Ct. 2556, 2557. Based in part on this statement, the City has continued to enforce its municipal laws against all persons equally within the City and has raised the *Castro-Huerta* analysis as an alternative argument to the Curtis Act. The *Hooper* case was remanded to this Court for further proceedings and at a status setting on December 4, 2023, the assigned Judge indicated he will either dismiss the case or enter a declaratory judgment consistent with the opinion of the Tenth Circuit in relation to the Curtis Act but stated that he will not hear the *Castro-Huerta* argument. While the *Hooper* case will be concluded shortly unless the City appeals, there are still multiple pending State and Municipal Court cases ongoing in which the presumption of State jurisdiction articulated in *Castro-Huerta* is front and center. Because the timing and posture of those cases is important to this Court's determination of whether this case should be heard, the cases, applicable dates, proceedings, and current postures are set out here:

**CASE ONE**:  *Stitt v. City of Tulsa*, Oklahoma Crim. App. MA-2022-984[2]:  The *Stitt* case was filed in the trial court on or about February 4, 2021, more than two years before this case was

---

[1] Although the Nation asserts the City did not pursue a petition for writ of certiorari in the Supreme Court to challenge the *Hooper* Decision, the *Hooper* case is not in a proper procedural posture for such a writ at this time as noted by Justice Kavanaugh.

[2] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=M-2022-984&cmid=134050

filed. The *Stitt* criminal defendant filed multiple motions to dismiss the case based on Indian Country jurisdiction under *McGirt*. The first motion was filed before, and the second was filed after, this Court's pronouncement in *Hooper*. All motions to dismiss were denied, and, after a non-jury trial, the defendant was found guilty, convicted, and sentenced to a fine on October 20, 2022.

On November 7, 2022, the *Stitt* defendant appealed his conviction to the Oklahoma Court of Criminal Appeals ("the OCCA"), and after the appellant's brief and appellee's response brief were filed, the Tenth Circuit issued the *Hooper* Decision. After the *Hooper* Decision issued, the City initially requested a stay of the proceedings in *Stitt* as the City addressed the *Hooper* Decision in the federal system. When no stay was forthcoming from the federal courts and *certiorari* was determined not to be an option due to the interlocutory nature of the case, the City withdrew its request for stay and sought supplemental briefing of the *Hooper* Decision in *Stitt*.

On October 6, 2023, the OCCA ordered supplemental briefing of the *Hooper* Decision, and *sua sponte* ordered the parties, and invited the amici including the Nation, to brief the implications of *Castro-Huerta* and the *Bracker* balancing test on municipal jurisdiction. The Nation and other Eastern Oklahoma Tribal amici participated in the briefing throughout the *Stitt* case. All briefs, including supplemental briefing of the *Hooper* Decision and *Castro-Huerta* have been submitted. The Nation itself filed an amicus brief on April 14, 2023, a reply brief on July 3, 2023, and a supplemental amicus brief on or about October 19, 2023. All briefing is complete on the issues of the Curtis Act and the *Castro-Huerta* analysis, and the case is awaiting decision.

**CASE TWO**:  *City of Tulsa v. O'Brien*, Oklahoma Crim. App. S-2023-715[3]:  The *O'Brien* case is also currently pending before the OCCA on the same issues of municipal jurisdiction over Indians raised in this case and in *Stitt*. That case was filed in the trial court on or about August 30,

---

[3] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=S-2023-715&cmid=136030.

2021, and the motion to dismiss was granted on or about August 17, 2023, and included dismissal based on the *Hooper* Decision and a determination that *Castro-Huerta* does not provide the City with jurisdiction because *Castro-Huerta* involved a non-Indian defendant. The City filed its notice of intent to appeal on or about August 24, 2023, and its petition in error on October 3, 2023, again before this case was filed. *O'Brien* is now being briefed, with the City's Appellant Brief due January 12, 2024, as the record on appeal was completed November 16, 2023.

**CASE THREE**: *City of Tulsa v. Harjo*, Municipal Court 6225139, 6225140, et al.: The first of Mr. Harjo's cases was filed in the Municipal Court on May 18, 2023, and he was released on bond and has been charged with other cases including trespass on property owned by non-Indians, theft from non-Indian retailers, and assault on a non-Indian individual. Mr. Harjo filed a motion to dismiss based on *McGirt* and the *Hooper* Decision on November 16, 2023. The Municipal Court has set the motion for hearing due to new case law issued in the Oklahoma courts which shows that the question of the City's jurisdiction over Indians in Indian Country is far from settled. In fact, several cases show the State Courts are considering whether State jurisdiction exists over Indians to some extent under *Castro-Huerta*, including a concurring decision by the Presiding Judge of the OCCA issued the day after the case at bar was filed[4], which decision stated:

> Until recently, it was settled law that the State of Oklahoma lacked jurisdiction to prosecute crimes committed by or against Indians in Indian Country. … But that analysis has become more complicated after the U.S. Supreme Court's decision in *Oklahoma v. Castro-Huerta* where the majority held that 18 U.S.C. § 1152, known as the General Crimes Act, does not preempt Oklahoma's jurisdiction over non-Indians who commit crimes on a reservation. … Although *Castro-Huerta* involved a non-Indian, the Supreme Court made clear that the text of this statute would not preempt state jurisdiction against an Indian in similar circumstances …. Thus, under the General Crimes Act, courts must now apply the so-called *Bracker* balancing test to determine if state jurisdiction is preempted in cases of crimes committed by Indians in Indian Country.

---

[4] Notably, the OCCA announced on Monday, November 13, 2023, before this case was filed, that a published opinion in the *Crosson* case would be issued on November 16.

*State ex rel. Ballard v. Hon. Terrell Crosson*, 2023 OK CR 18, ¶ 3 (P.J. Rowland concurring) (internal citations and quotations omitted) (emphasis added).

In addition to the *Crosson* opinion, there are multiple cases in the State courts which indicate that the State, and thereby the City, has jurisdiction over crimes committed by Indians within the Nation's reservation boundaries based on the *Castro-Huerta* analysis, or at the very least that this is an open and important question. "Because the State has jurisdiction to prosecute crimes committed in Indian country unless state jurisdiction is preempted, <u>*Castro-Huerta* leaves unresolved</u> whether the State's jurisdiction to prosecute Indians for crimes under the General Crimes Act in Indian country is preempted." *State v. Brester*, 2023 OK CR 10, ¶ 36; 531 P.3d 125, 137-38 (internal quotations and citations omitted; emphasis added).

Further, at least one Oklahoma District Court has ruled that the State maintains jurisdiction over crimes committed by Indians within the Nation's reservation boundaries. *State v. Long*, District Ct. McIntosh Co., Okla., CF-23-86[5], Order on Jurisdictional Issues Raised by Def., filed October 4, 2023. In *Long*, after applying the *Castro-Huerta* analysis and the *Bracker* balancing test, "the Court [found there is a] presumption of the State's ability to enforce its laws. With this presumption in mind, the Court finds subject matter jurisdiction exists for the State to prosecute the Defendant for violating State laws …." *Id.* at *9. The criminal laws at issue in *Long* involved a felony of bringing contraband into a penal institution and misdemeanor trespass. *Id.* That case is currently on appeal to the OCCA. Okla. Crim. App. Case No. RE-2023-884[6], filed Nov. 1, 2023. Presumably, as with other cases of this nature, the Tribes will be allowed to assert their positions as amici.

---

[5] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=mcintosh&number=CF-2023-86.
[6] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=RE-2023-884.

Although the Municipal Court in *O'Brien* ruled the City does not have jurisdiction over Indians under the *Castro-Huerta* analysis because *Castro-Huerta* was issued in reference to a non-Indian offender, that decision was rendered prior to the OCCA's statement in the *Crosson* opinion. Currently, the Municipal Court is reconsidering its decision on the *Castro-Huerta* analysis and has set the *Harjo* motion to dismiss for hearing January 18, 2024, in light of the *Crosson* statement. As such, there are currently pending criminal cases in Municipal Court where the same issues in question in this litigation are set to be ruled upon within the next 60 days.

In the interim since the Tenth Circuit's *Hooper* Decision, and while awaiting a decision from the OCCA, any Indian who has been charged in the Municipal Court who wishes to raise the jurisdictional issue has been able to present a motion to dismiss either verbally or in writing at any time during the case, with or without counsel, and the Municipal Court has even created a form motion to dismiss. Upon proof of their Indian status, such Indians have been provided the choice to either stay their proceedings pending a final appellate decision or to have their cases dismissed with potential future refiling in the appropriate court once a final determination is made on the jurisdictional question. Indeed, in the filed declaration from the Nation's Attorney General, she concedes that Indians charged in Municipal Court can raise the jurisdictional issue, and the Municipal Court can then adjudicate the issue. *See* Doc. No. 9, Dec. of G. Wisner at 5, ¶ 16.

**CASE FOUR**:  The Case at Bar:  This case was filed on November 15, 2023, last of all the cases involving the same issues. This case was filed after the Nation filed its briefs in *Stitt* addressing the *Castro-Huerta* analysis. *Stitt* has been litigated continuously for almost three years, and a decision is imminent. The case at bar is wholly unnecessary because the same issues exist in at least two pending State appellate cases, and the Nation has been actively involved in one and can be involved in the second if it so chooses. This case appears to be forum shopping to

circumvent the OCCA's authority to determine jurisdiction of the State and its political subdivisions.

**PROPOSITION I:   THIS COURT SHOULD ABSTAIN FROM RULING
ON PLAINTIFFS' REQUESTED RELIEF AND DISMISS THIS LAWSUIT**

This Court should dismiss this case under the abstention doctrines due to the pending litigation in Municipal Court on the City's jurisdiction under *Castro-Huerta* and the litigation in both the *Stitt* and *O'Brien* cases on the same issues of municipal court jurisdiction wherein both the City and the Nation are or can be represented, and the issues of *Castro-Huerta* and the *Hooper Decision* are currently being reviewed. It is clear that the issues at hand need to be resolved by the U.S. Supreme Court, and the most expedient route to said Court is through the *Stitt* case.

**A.      This Court should dismiss this case under the *Younger* abstention doctrine because there are prior pending State Court proceedings on the same issues.**

This Court should abstain from hearing this case and dismiss it because it interferes with pending Oklahoma Court of Criminal Appeals proceedings where a decision is imminent and the questions at issue are the City's jurisdiction over Indians in Indian Country, including both application of the Tenth Circuit *Hooper* Decision as well as the *Castro-Huerta* analysis and application of the *Bracker* balancing test. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746 (1971). This case fits squarely within the *Younger* abstention doctrine because here, as in *Younger*, the Nation attempts to have this Court enjoin the City from exercising jurisdiction over Indians in criminal cases and to declare that the City does not have jurisdiction over Indians while the exact same question is at issue in a pending proceeding in the Municipal Court as well as multiple pending appellate proceedings before the OCCA.

Similarly, in *Younger*, the federal court was asked to enjoin a district attorney from prosecuting cases under a state law alleged to be unconstitutional, and the plaintiff and various

9

intervenors argued that they would suffer immediate and irreparable injury absent relief from the federal court. The Court noted that "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." 401 U.S. 37, 39, 44, 91 S.Ct. 746, 748, 751. According to the *Younger* Court, "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id.* at 43-44, 750. The Court noted that injunctive relief with respect to State criminal cases should occur only in extraordinary circumstances "where the danger of irreparable loss is both great and immediate." 401 U.S. at 45, 91 S.Ct. at 751 (internal citations omitted).

The *Younger* abstention doctrine requires a federal court to refrain from hearing an action when:

> "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."

*Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) *quoting Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006). Here, as in *Winn*, there are multiple ongoing state criminal proceedings involving the same issues of State and municipal jurisdiction over Indians. Second, just as in the multitude of post-*McGirt* cases, the Nation has been able to raise its claims to jurisdiction in every State case where it has chosen to assert its interests. The Nation filed a brief in the *Stitt* case on October 19, 2023, involving precisely the same issues asserted in this case with most of the same attorneys involved in filing this case. The Nation also fails to even assert that the Oklahoma courts provide an inadequate forum to review their claims. As the *Winn* court noted, the state courts must provide only an "*adequate* state-court forum, not a favorable result in the state forum." 945 F.3d

at 1258 (emphasis in original). Lastly, state criminal proceedings "are viewed as 'a traditional area of state concern.'" *Id.* (internal citations omitted).

When these three requirements are met, abstention is mandatory unless the plaintiff can show "the prosecution was (1) commenced in bad faith or to harass, (2) based on a flagrantly and patently unconstitutional statute, or (3) related to any other such extraordinary circumstance creating a threat of irreparable injury both great and immediate." *Id.* at 1258-59 (internal citations and quotations omitted). The Nation does not allege bad faith, harassment, or an unconstitutional statute are in play but merely concludes that the City: "irreparably harms the Nation's sovereignty by subjecting Indians within the Creek Reservation to laws and a criminal justice system other than the laws and system maintained by the Nation. Doing so impermissibly interferes with the Nation's federally protected rights of self-government" [Doc. No. 2, at 4, ¶ 9] and is "causing irreparable injury to the Nation by interfering with its sovereignty and undermining the authority of its own criminal justice system, including the authority of its Attorney General, Lighthorse Police, and courts to prosecute under the Nation's own laws criminal offenses committed by Indians within its Reservation." Doc. No. 2 at 5, ¶ 20. For a court to find the irreparable harm exception to *Younger* abstention, the court must find that the injury cannot be corrected through pending state proceedings or on appeal. *Winn* at 1259. Again, in this case, there are multiple cases in the OCCA, including *Stitt* which is ripe for decision since briefing is complete, where the Nation has participated in the case, and the Nation's claimed injuries will be addressed one way or the other. Further, *Stitt* will have been fully litigated in the State system, and should the losing side elect to appeal, a writ of *certiorari* would be proper to the U.S. Supreme Court which can certainly correct any injury to the Nation or City. See, 28 U.S.C.A. § 1257(a) (1988).

The Nation fails to show it will suffer irreparable harm. The City has exercised jurisdiction over Indians within both the Muscogee (Creek) and Cherokee reservations for 125 years, and for the last three (3) years post-*McGirt*, thus it is questionable how the Nation is suddenly suffering irreparable harm from the status quo. Although the Nation asserts that the City sends all cases except certain categories of traffic cases to the Nation, [Doc. No. 2 at 9, ¶¶ 39, 43] that assertion is patently false. There may be some misdemeanor cases sent to the Nation,[7] but many misdemeanors committed by Indians within the Nation's boundaries are filed in Municipal Court on a regular basis, including but not limited to, driving under the influence, misdemeanor gun crimes, assault and battery, larceny from a retailer, trespass, and many others[8].

Further, any harm to the Nation is speculative. The Nation's harm is based on the assumption that cases involving Indian offenders investigated by Tulsa Police Department must be filed with the Nation. However, police officers have discretion to not investigate those cases at all. *See, e.g.*, *Morales v. City of Oklahoma City,* 2010 OK 9, ¶ 12, 230 P.3d 869, 876; *Barker v. Delaware Cty.,* 2012 WL 5429549 (N.D. Okla. 2012) (unpublished). Even if an investigation is completed, every officer has discretion to present or not present charges to a prosecutor against that offender. The City's officers do currently investigate and file some charges in the Nation's courts under a cross-deputization agreement, but the officers could simply let every Indian offender walk free without any court charges being filed at all, could refer all of such cases to the Lighthorse for investigation, or the City could withdraw from all cross-deputization agreements leaving the Tribal and federal governments to address the cases the Plaintiff asserts are part of their inherent sovereignty. Cross-deputization is voluntary, and the City can withdraw from all such agreements,

---

[7] The City currently sends non-Major Crimes Act felonies to the Nation because the City currently does not have felony jurisdiction under State law. See, e.g., 11 O.S. § 14-111(B)(1) (2016).
[8] Should this Court decide to hear the Plaintiff's claim on the merits, the City requests a hearing on the motion for preliminary injunction to present evidence on these issues for this Court's consideration.

tribal and federal, at any time. Even if this Court deems it appropriate to enjoin the City from filing charges against Indians in Municipal Court, this Court cannot compel Tulsa Police officers to file charges in the Nation's Courts, and thus, their alleged harm cannot be addressed by the declaratory or injunctive relief sought.

The Nation has had more than three years to hire sufficient numbers of Lighthorse to handle the Indian offender cases within the City and remove the City from the equation such that the City's officers would not be involved in cases the Nation believes are part and parcel of the Nation's sovereignty. The Defendants have done nothing to stop the Nation from hiring adequate numbers of Lighthorse to police all Indian crimes within the City of Tulsa. The Lighthorse could investigate and file all of those cases in the Nation's courts with none being filed in the Municipal Court. Instead, the Nation has filed new and redundant litigation while having hired insufficient law enforcement to address crimes committed by Indians on its reservation within the City's corporate boundaries.

Although the Nation argues the City's jurisdiction interferes with the Nation's laws, the Nation also admits it has incorporated into its code "any criminal offense prescribed [sic] by other governments within the Nation's Reservation boundaries, including Tulsa." Doc. No. 2 at 5, ¶ 13. If the Nation is simply incorporating municipal law as its own when no tribal law exists, the Nation's laws are to some extent no different than the City's and State's, and it has essentially subordinated its sovereign authority to "make its own laws and be ruled by them" to municipal and State law. Further, the Nation's Attorney General admits that Indians can be charged in the Municipal Court and assert a jurisdictional argument based on Indian status and have their case dismissed. *See* Doc. No. 9, Dec. of G. Wisner at 5, ¶ 16. Because the Nation admits individual criminal defendants have a remedy to have their municipal case dismissed and refiled in the

13

Nation's court, there is no irreparable harm. The Nation has alleged nothing that shows the current status quo process is irreparably harming the Nation.

Although at least one prior case regarding criminal jurisdiction[9] in Indian Country allowed for federal court intervention by way of an injunction against the exercise of State jurisdiction over Indians, that case is not on point because it was issued before *Castro-Huerta* and, at the time, involved settled law. *Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*, 790 F.3d 1000 (10th Cir. 2015). In the *Utah* case, Utah was attempting to relitigate an already determined boundary issue, *Id.* at 1008, and the law at that time was clear that the State did not have jurisdiction over Indians on the Ute Reservation absent an express authorization by Congress. *Id.* at 1003-04. *Castro-Huerta* has since called into question the previous criminal jurisdiction analysis applied in Indian Country because the Supreme Court specifically held that States are presumed to have jurisdiction in Indian Country unless preempted.

Here, the City is not litigating the reservation boundary but is seeking finality of unsettled law on the State's, and thereby the City's, jurisdiction in Indian Country. *Castro-Huerta* fundamentally changed Indian Country criminal jurisdictional analysis as federal Indian law for years required that a crime committed by or against an Indian be tried in federal or tribal court with the states having no jurisdiction[10] unless only non-Indians were involved. That is simply no longer the case, and the strong language in *Castro-Huerta* not only favors but presumes State authority and jurisdiction within Indian Country. After the Kavanaugh-Alito statement and the decisions in *Castro-Huerta*, *Long*, and *Crosson*, and, in light of the direction in pending cases in

---

[9] *See also*, *Ute Indian Tribe of the Uintah and Ouray Reservation v. Lawrence*, 22 F.4th 892 (10th Cir. 2022) (civil jurisdiction).

[10] *See, e.g., Williams v. United States*, 327 U.S. 711, 66 S. Ct. 778 (1946) (suggesting no State jurisdiction over crimes by non-Indians committed against Indians in Indian Country in what the *Castro-Huerta* Court called *dicta*); *United States v. Wheeler*, 435 U.S. 313, 98 S. Ct. 1079 (1978) (recognition of inherent Tribal jurisdiction to prosecute members committing offenses on Indian Country).

the OCCA, the propriety of State and City jurisdiction over Indians within the reservation boundaries is far from clear at this time, and the *Ute* cases do not resolve the issue because they were both decided before *Castro-Huerta*.

Although some older federal case law enjoined tribal court jurisdiction over Indians for crimes occurring outside the reservation, *Fife v. Moore*, et al., 808 F.Supp.2d 1310 (E.D. Okla. 2011), more recently, the federal courts have applied *Younger* abstention to prevent defendants from seeking federal court relief from State Court cases where the basis of their arguments is *McGirt* and Indian Country jurisdiction. *See, e.g.*, *Kirk v. Oklahoma*, 2021 WL 5111985 at *3 (10th Cir. 2021) (unpublished) ("contention that a state court lacks jurisdiction to try a defendant is not a basis for a federal court to intervene in an ongoing prosecution by granting a writ of habeas corpus"); *Smith v. Crow*, 2022 WL 657956 (E.D. Okla. Mar. 4, 2022) (unpublished) (abstaining review of pretrial detention based on jurisdictional question raised by *McGirt* for Creek reservation crime); *Lowery v. Dedeke*, 2021 WL 1966199 (D. Kan. May 17, 2021) (unpublished) (abstaining from intervening in state criminal case where Indian raised jurisdictional question). *See also Davis v. Muellar*, 643 F.2d 521 (8th Cir. 1981) (abstaining when Indian challenged state court extradition in non-compliance with tribal law).

This case is much like the *Morrow v. Winslow* case where the Cherokee Nation and a biological father attempted to avoid a state adoption proceeding by filing a complaint in federal court to enjoin the State judge, adoptive parents, and adoption agency from pursuing the adoption alleged to be in violation of the Indian Child Welfare Act. *Morrow v. Winslow*, 94 F.3d 1386 (10th Cir. 1996); see also, *Yancey v. Bonner*, 323 F. App'x 674, 2009 WL 1058142 (10th Cir. 2009) (*Younger* abstention in state adoption case involving ICWA). In *Morrow*, even with a statutory provision allowing for federal suits and comprehensive legislation relating to Indian children, the

15

Court ruled *Younger* abstention was proper to prevent numerous delays and multiple, piecemeal litigation. *Id.* at 1396. The Court also noted that the State had an important interest in orderly conduct of proceedings in its courts and domestic relations and that the state proceedings provided an adequate opportunity for the claims relating to the constitution and ICWA. *Id.* at 1397-98.

Here, the Nation attempts to restrain all criminal prosecutions of Indians by the City. However, as noted in the Background section, *supra* 2-9, there are multiple cases currently pending in the State Court appellate system which will determine the City's jurisdiction over Indians through application of the *Castro-Huerta* analysis and the *Hooper* Decision. For the highest criminal court in Oklahoma to determine the jurisdiction of subordinate courts over criminal cases clearly implicates an important State interest. Further, because the Nation and other Eastern Oklahoma Tribes have filed amicus briefs in the cases where the Tribes deem it appropriate, their interests are being addressed in the State cases, and they have had an adequate opportunity to raise their claims to jurisdiction in those cases. The OCCA can provide the same relief as this Court should the OCCA find the City does not have jurisdiction over Indians who commit non-major crimes in Indian Country. Because full briefing has been completed in the *Stitt* case, the OCCA is likely to issue an opinion on the precise questions raised in this litigation within the next few months. As such, this Court should decline to hear the Nation's claims and dismiss this matter.

**B.   This Court should abstain from hearing this case as to completed municipal cases because *McGirt* does not apply retroactively, and convictions cannot be overturned under the *Rooker-Feldman* doctrine.**

The Nation seeks a declaratory judgment that the City does not have criminal jurisdiction over Indians who commit offenses in Indian Country within the City limits. To the extent that such a declaration seeks to affect final cases where no relief was sought in the trial court, the declaratory judgment must be denied because *McGirt* does not apply retroactively. *State ex rel. Matloff v.*

*Wallace*, 2021 OK CR 21, 497 P.3d 686, *cert. denied sub nom Parish v. Oklahoma*, 142 S.Ct. 767

211 (2022). Further, the Court should dismiss the case as to any request to disturb completed

criminal cases in the Municipal Court under the *Rooker-Feldman* abstention doctrine. "The

*Rooker-Feldman* doctrine bars a 'federal action that tries to *modify or set aside* a state-court

judgment because the state proceeding should not have led to that judgment.'" *Pickup v. Dist. Ct.

of Nowata Cnty., Oklahoma*, No. CIV 20-0346 JB/JFJ, 2023 WL 1394896, at *42 (N.D. Okla. Jan.

31, 2023), quoting *Mayotte v. U.S. Bank Nat'l. Assoc'n. for Structured Asset Investment Loan

Trust Mortgage Pass-Through Certificates*, 880 F.3d 1169, 1174 (emphasis in original). Thus, to

the extent any declaratory judgment seeks to void previous convictions in municipal criminal

cases, this Court should rule, as it did in *Pickup*, that the Court has no jurisdiction to render a

declaratory judgment that would void State court convictions as barred by *Rooker-Feldman*. Even

once the OCCA makes a ruling on the issues of the applicability of the *Hooper* Decision and

*Castro-Huerta* in the *Stitt* case, this Court would not have jurisdiction to review that decision

because the U.S. Supreme Court has exclusive jurisdiction to review a judgment by a State's

highest court. *D.C. Court of Appeals v. Feldman*, 460 U.S. 475 (1983).

**PROPOSITION II:  EVEN IF THIS COURT DOES NOT FIND ABSTENTION IS
PROPER, THE COURT SHOULD DISMISS THIS CASE UNDER THE *COLORADO
RIVER* DOCTRINE DUE TO PRE-EXISTING CONCURRENT STATE COURT CASES.**

Should the Court decide that abstention is improper, the Court should still dismiss this case

under the *Colorado River* doctrine because a decision from the OCCA, in a proceeding in which

the Nation has participated, is pending imminently on the same issues raised by the Nation in this

case. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S. Ct. 1236

(1976). According to the Tenth Circuit, this doctrine applies when "'reasons of wise judicial

administration' must weigh in favor of 'permitting the dismissal of a federal suit due to the

presence of concurrent state proceedings'" even when the pendency of the State action is not a necessary bar to federal jurisdiction under the abstention doctrines. *D.A. Osguthorpe Fam. Partnership v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013), *quoting Colorado River*, 424 U.S. at 818.

The Tenth Circuit has recognized four factors when applying the *Colorado River* test.[11] The Court must first determine if the cases are parallel in that they involve substantially the same parties and litigate substantially the same issues in the forums. *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994), *on appeal after remand*, *Fox v. Maulding*, 112 F.3d 453 (10th Cir. 1997). Here, the City is a party and the Nation, although it did not attempt to intervene as a party, has asserted its interests as an amicus in the *Stitt* litigation just as it did in *McGirt*. Further, the *Stitt* litigation involves the exact same issues raised by the Nation in this litigation, to wit, the City's criminal jurisdiction over Indians within the Nation's reservation boundaries in light of the *Hooper* Decision and *Castro-Huerta/Bracker* preemption analysis. The *Stitt* litigation is fully briefed and awaits only a decision by the OCCA, and the case at bar has been filed with the Nation's full knowledge that the decision from the *Stitt* Court is imminent. As noted by the Nation, there is also a pending case in the OCCA where the City appealed the Municipal Court's ruling on the *Castro-Huerta* analysis, the *O'Brien* case, which is now set for briefing. Further, the Municipal Court is set January 18, 2024, to reconsider in the *Harjo* case its original *Castro-Huerta* analysis in light of the OCCA's recent *Crosson* opinion.

As such, this Court should find the cases are parallel and should dismiss this case based on balancing the relevant factors set out in *Colorado River*, to wit:  "(1) whether the state or federal court first assumed jurisdiction over the same res; (2) the inconvenience of the federal forum; (3)

---

[11] See also, *Wakaya Perfection, LLC v. Youngevity Int'l., Inc.*, 910 F.3d 1118 (10th Cir. 2018), recognizing eight factors but not applying *Colorado River* because two federal court cases in different districts were involved.

the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums." *D.A. Osguthorpe*, 705 F.3d at 1234 (*internal quotations and citations omitted*). In reviewing the *Colorado River* factors, the first factor is not relevant as this case does not involve property. As to the second factor, although the trial court houses are not distant, it is inconvenient to litigate the same issue in multiple courts, including City, State and Federal at the same time especially when one case, *Stitt*, has all but concluded in the State system since briefing is complete, and no oral argument was requested. Although the trial courthouses are not distant, the appellate courthouses are. It is significantly less convenient to travel and litigate at the Tenth Circuit in Denver, Colorado, than it is to litigate in Oklahoma City. Most importantly, because the *Stitt* trial court proceedings concluded in a conviction, any decision by the OCCA will be final, and any appeal will be directly to the U.S. Supreme Court, the final arbiter on this issue. There is no more going to court at all in the *Stitt* OCCA case unless it goes to the U.S. Supreme Court so even though distance may not be a factor, going to court for this case and preparing and attending hearings and briefing the same issues already briefed in the OCCA is inconvenient. This factor thus weighs in favor of dismissal.

Further, according to the Tenth Circuit, the third and fourth *Colorado River* factors weigh heavily in the analysis, and the danger of piecemeal litigation is paramount. *D.A. Osguthorpe*, 705 F.3d at 1234. Again, as shown herein, there are three pending cases, two in the OCCA and one in Municipal Court, addressing the same issues raised here, to wit, the City's jurisdiction over Indians after *Castro-Huerta* and the *Hooper* Decision. The *Stitt* OCCA decision will be final within the State system and immediately appealable to the U.S. Supreme Court which would negate the need for this case in its entirety. The trial court record on appeal in the *Stitt* case is at least 588 pages and the Appellant has filed three briefs, the City has filed two briefs, and the Nation, as well as

several other Tribes, have filed multiple briefs in that case. Because the case at bar seeks to add yet another case about the same questions of law and results in piecemeal litigation of the question of municipal jurisdiction over Indians in Indian Country, this factor weighs in favor of dismissal.

The Municipal Court and OCCA first assumed jurisdiction over the question of application of *Castro-Huerta* as opposed to this case. The *Stitt* case began in the trial court on or about February 4, 2021, more than two years before this case was filed, and the appeal to the OCCA was filed a full year before this case. The *O'Brien* case also currently pending before the OCCA on the same issues raised in this case and in *Stitt*, is now in the appellate briefing stages since the Record on appeal was completed November 16, 2023. Indeed, the Tenth Circuit has found that priority is not based solely on which complaint was filed first but on how much progress has been made. 795 F.3d at 125. The case at bar has seen no progress, thus, looking to the fourth *Colorado River* factor, that factor weighs in favor of dismissal.

The Tenth Circuit has also noted that in a follow-up case, additional factors could be considered where a court may also "look to whether federal law provides the rule of decision on the merits and whether the state-court proceedings adequately protect the litigants' rights …. a court may take into account the possibly 'vexatious or reactive nature of either the federal or the state litigation.'" *Id.* at 1235 (internal citations and quotations omitted). Here, federal law alone does not answer the question of *Bracker* balancing because the City/State's interests must also be weighed as well as the City's incorporation under State law post-Curtis Act. Even if federal law does govern the State Court decisions, "this factor does not automatically compel the conclusion that the resolution of a claim arising under" federal law must occur in the federal courts. *Id.* The *D.A. Osguthorpe* court noted that state courts often apply the federal law at issue when it ruled that the federal case should be dismissed in favor of a pending state case.  *Id.*

20

Further, there is no allegation, nor any evidence at all, to suggest that the City and State Courts will not adequately protect the Nation's rights. In fact, recent history shows that the OCCA will protect the Nation's rights. Since *McGirt*, the OCCA has repeatedly found that reservation boundaries have not been disestablished and that State courts therefore have no jurisdiction over Major Crimes Act crimes without requiring intervention by the federal courts.[12] In *Stitt*, the OCCA is reviewing briefs submitted by the Nation and other Eastern Oklahoma Tribes and is working on a decision regarding the rights of the City, State, and Tribes in non-Major Crimes Act cases applying the *Bracker* balancing test, as provided in *Castro-Huerta*. Although the Nation asserts that long-standing federal law is clear that the State has no jurisdiction over Indians in Indian Country, that is the same position taken by the *Castro-Huerta* dissent, not the majority opinion which makes it unclear whether the State's jurisdiction, and thereby the City's, has been preempted. Further, that the Municipal Court is following and applying recent changes to federal law under *Castro-Huerta* and the *Hooper* Decision while considering the Nation's interests is shown by the Municipal Court's initial application of the *Hooper* Decision and *Castro-Huerta* in *O'Brien* where the Court dismissed the case finding that the City does not have jurisdiction based on those cases. Because the parties' rights are adequately protected in both the City and State Court proceedings, this case should be dismissed.

The final factor to be weighed also favors dismissal. The filing by the Nation of the case at bar is certainly "vexatious or reactive" in nature. 705 F.3d at 1235. The Nation lays out in its complaint, its application for injunctive relief, and declarations its awareness that the City is litigating cases through the State Court criminal appellate system and that the City has been

---

[12] *See, e.g.*, *Hogner v. State*, 500 P.3d, 629, 2021 OK CR 4 (Cherokee Nation); *McClain v. State*, 501 P.3d 1009, 2021 OK CR 38 (Chickasaw Nation); *Sizemore v. State*, 48 P.3d 867, 2021 OK CR 6 (Choctaw Nation); *Grayson v. State*, 485 P.3d 250, 2021 OK CR 8 (Seminole Nation); *State v. Lawhorn*, 499 P.3d 777, 2021 OK CR 37 (Quapaw Nation); *State v. Brester*, 531 P.3d 125, 2023 OK CR 10 (Peoria Tribe).

prosecuting Indians since *McGirt*. The Nation further concedes that Indian defendants have a remedy in Municipal Court to have their cases dismissed. *See* Doc. No. 9, Dec. of G. Wisner at 5, ¶ 16. The lack of necessity for yet another case on this issue is set out plainly in the Nation's filings as well as *supra* at pages 2-9. The *D.A. Osguthorpe* case noted that where a litigant goes to federal court after receiving an unfavorable state-court ruling, litigation should remain in the State system. 705 F.3d at 1236. Here, this case was filed two days after the OCCA announced it would issue an opinion for publication in the *Crosson* case on November 16, the day after this case was filed; such timing for filing of this case is certainly suspect given that the *Hooper* Decision was issued almost six months ago, and the City has continued to file municipal cases during that entire time. Although the Nation argues that the *Hooper* Decision is final and binding, the City can still appeal whatever decision this Court renders. More importantly, the *Hooper* case has not addressed *Castro-Huerta* at any level and therefore it is not relevant as to the City's assertion of jurisdiction under *Castro-Huerta*.

Because the City and State Courts assumed jurisdiction before the federal courts to decide the issue of municipal jurisdiction over Indians in Indian Country under the *Castro-Huerta* analysis, this case should be dismissed.

**PROPOSITION III:  ALTERNATIVELY, SHOULD THIS COURT DECLINE TO DISMISS THIS LITIGATION, THE MATTER SHOULD BE STAYED PENDING A DECISION BY THE OCCA IN *STITT***

Should this Court decide not to dismiss this lawsuit under the abstention or *Colorado River* doctrines, the Defendants respectfully request this Court stay resolution of this matter until the OCCA has rendered its decision in *Stitt* and any appeal of that matter has been completed as that case is ripe for ruling and will be decisive on the issues in this case.  This Court addressed a similar situation in *Warehouse Market, Inc. v. Oklahoma ex rel. Oklahoma Tax Commission,* 2021 WL

37681 (N.D. Okla. Jan. 5, 2021) Case No. 20-CV-0577-CVE-JFJ (Unpublished). In *Warehouse Market*, the Court noted that "if the Court finds that it should not exercise jurisdiction over this case, it must also consider whether plaintiff's claims should be dismissed without prejudice or stayed until resolution of the state court proceedings." *Id*. at \*3, *quoting United States v. City of Las Cruces*, 289 F.3d 1170 (10th Cir. 2002). This Court looked at the four factors set forth in *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994):

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

In evaluating the final *Mhoon* factor the Court noted that "The Court will not be able to determine whether the state court interpleader action will provide better or more effective relief until the Oklahoma Supreme Court issues its decision, and this factor weighs in favor of staying the case." *Warehouse Market,* at 3-4. Such is the case here. This Court cannot evaluate whether an alternative remedy is better or more effective until the OCCA makes its determination in the *Stitt* case. Thus, should this Court decide not to dismiss this matter under the abstention or *Colorado River* doctrines, this case should be stayed pending a ruling by the OCCA in *Stitt*.

## CONCLUSION

This Court should dismiss the claims and requested relief against all parties under the abstention and *Colorado River* doctrines because there are presently numerous other lawsuits pending on this same question that could render this case moot once decided. In the alternative, this case should be stayed pending the OCCA's decision in *Stitt* which would be instructive, if not decisive on this case.

23

Respectfully Submitted,

CITY OF TULSA,
a municipal corporation

JACK C. BLAIR,
City Attorney


BY:   /s/Kristina L. Gray
     Kristina L. Gray, OBA #21685
     Litigation Division Manager
     Becky M. Johnson, OBA #18282
     Senior Assistant City Attorney
     City Hall, One Technology Center
     175 East Second Street, Suite 685
     Tulsa, Oklahoma  74103
     (918) 596-7717 Telephone
     (918) 596-9700  Facsimile


## CERTIFICATE OF MAILING

I, Kristina L. Gray, hereby certify that on the 8th day of  December, 2023, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Riyaz A. Kanji
David A. Giampetroni
Kanji & Katzen, PLLC
P.O. Box 3971
Ann Arbor, MI 48106
rkanji@kanjikatzen.com
dgiampetroni@kanjikatzen.com

and

Geraldine Wisner
Attorney General
Muscogee (Creek) Nation
P.O. Box 580
Okmulgee, OK 74447
gwisner@mcnag.com

O. Joseph Williams
O. Joseph Williams Law Office, PLLC
The McCulloch Building
114 North Grand Avenue, Suite 520
P.O. Box 1131
Okmulgee, OK 74447
jwilliams@williamslaw-pllc.com

Philip H. Tinker
Kanji & Katzen, PLLC
811 lst Avenue, Suite 630
Seattle, WA 98104
ptinker@kanjikatzen.com

Stephanie R. Rush
Kanji & Katzen, PLLC
P.O. Box 2579
Sapulpa, OK 74067
vrush@kanjikatzen.com

/s/Kristina L. Gray_____
Kristina L. Gray

25