IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MUSCOGEE (CREEK) NATION,<br>  a federally recognized Indian Tribe,<br><br>        Plaintiff,<br><br>vs.<br><br>CITY OF TULSA; G.T. BYNUM, in his official capacity as Mayor of City of Tulsa; WENDELL FRANKLIN, in his official capacity as Chief of Police, Tulsa Police Department; and JACK BLAIR, in his official capacity as City Attorney for City of Tulsa,<br><br>        Defendants. | Case No. 23-CV-490-SH |

**DEFENDANTS' JOINT REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS AND BRIEF IN SUPPORT**

The Defendants hereby provide this joint reply to the Plaintiff's Response Opposing the Defendants' Motion to Dismiss ("the Plaintiff's Response"). The Muscogee (Creek) Nation ("the Nation" or "Plaintiff") asserts this Court should retain jurisdiction and hear this case regardless of a pending case in the Oklahoma Court of Criminal Appeals ("the OCCA") addressing the City's jurisdiction over Indians within the Nation's Indian Country, in which a decision is imminent. The Nation essentially seeks to have this Court circumvent a pending State case in which the same issue is ripe for decision. Although the Plaintiff's Response argues that abstention and the cases cited by the City do not apply,[1] the Plaintiff's arguments and use of the law in the cited cases repeatedly minimize the fact that the Nation not only voluntarily inserted itself into the *Stitt* State

---

[1] The City erred in citing *Lowery v. Dedeke*, see Doc. 33 at 8. The correct case that should have been cited in that string cite is *Driggers v. Crow*, 2021 WL 2372228, (W.D. Okla. May 17, 2021) (magistrate recommending dismissal of petition for relief by alleged Indian for convictions alleged to occur in Indian Country).

1

litigation but, that it has participated as much as any party and has fully asserted its federal arguments regarding tribal sovereignty in that case.

A.  **This case meets the three requirements for *Younger* abstention[2].**

Although Plaintiff urges the *Ute* case supports its contention that *Younger* does not apply here essentially because tribal sovereignty is at stake (Doc. 33 at 5-7). The *Ute* case, however, involved the question of criminal jurisdiction over specific lands, which questions had already been adjudicated by the courts, all the way to the U.S. Supreme Court. *Ute Tribe of the Uintah and Ouray Reservation v. Utah*, 790 F.3d 1000, 1004-05 (10th Cir. 2015). The Ute Tribe then sought enforcement of those final decisions through an injunction against the State. *Id.* at 1005. The *Ute* Court reviewed *Younger* abstention and held there are three requirements for abstention to apply: an ongoing state proceeding, the "presence of an important state interest, and an adequate opportunity to raise federal claims in the state proceedings." Here, all three are present.

1. *There is an ongoing State proceeding.*

There is currently a case before the Oklahoma Court of Criminal Appeals ("the OCCA") which has been fully briefed by the parties. See, *Stitt v. City of Tulsa*, Oklahoma Crim. App. MA-2022-984.[3] The Nation has participated in that case in full, with four attorneys entering, several motions filed, and three briefs filed. The case involves the <u>completed</u> prosecution and conviction of an Indian who committed a misdemeanor crime within the Nation's reservation boundaries. The Indian defendant appealed his conviction, arguing only that the City did not have jurisdiction over him under *McGirt v. Oklahoma* due to his Indian status. Br. of Appellant at 18-31. There are no

---

[2] All briefs referred to in this section can be found filed in the *Stitt v. City of Tulsa* case, MA-2022-984, at https://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=M-2022-984&cmid=134050.
[3] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=M-2022-984&cmid=134050. Since the City's initial Motion to Dismiss on this case, the Oklahoma Court of Criminal Appeals has allowed the Oklahoma Association of Municipal Attorneys to file an amicus brief in the Stitt case, which is due on or before January 19, 2024.

2

personal arguments raised regarding the adequacy of the trial, issues of fact specific to the appellant's case, or other arguments beyond Indian Country criminal jurisdiction.

### 2. *Plaintiff has adequately raised its federal claims in the State proceeding.*

Although Plaintiff simply asserts that because it is not an official party to the *Stitt* case, it cannot adequately assert its interests, the Nation minimizes its actual participation in that case and fails to note that it made essentially the same arguments in *Stitt* that it makes here. In fact, in its first *Stitt* Motion, the Nation argued in the last 16 pages that tribes have jurisdiction over Indians in Indian Country and, importantly: "The Nations are of course aware, though, that this Court has expressed interest in the question of state authority over Indian defendants in the wake of the United States Supreme Court's decision in *Oklahoma v. Castro-Huerta* …." Mot. of MCN and Seminole Nation for Authorization to File Brief Amicus Curiae, filed April 14, 2023, at 29. The Nation then argued the historical federal cases it asserts give it jurisdiction over Indians and asserted that the OCCA should not find the City has jurisdiction under *Castro-Huerta*. Thus, the Nation itself raised the *Castro-Huerta* and *Bracker* balancing test arguments to the OCCA first. The City did not even file its first brief until June 12, 2023, almost two weeks after the Nation filed an argument regarding *Castro-Huerta*.

The Nation also stated in its first motion that, "As a matter of their inherent sovereignty, the Nations exercise jurisdiction over crimes committed by Indian defendants within their Reservations." Mot. of MCN and Seminole Nation for Authorization to File Brief Amicus Curiae, filed April 14, 2023, at ¶ 2. The Nation went on to argue that Section 14 of the Curtis Act no longer authorized the City to exercise jurisdiction over Indians because the City had chartered under Oklahoma law. *Id.* at ¶¶ 3-6. The Nation then argued, almost identically to the Complaint and Declarations in this case, that it exercises "highly effective criminal law enforcement throughout

3

their Reservations," that their traffic code mirrors Oklahoma's and that the Nation has multiple cross-deputization agreements. *Id.* at ¶ 7. The Nation asserted that the *Stitt* case "raises legal questions of exceptional public importance …." *Id.* at ¶ 8. The *Stitt* Motion went on to argue that the Nation's perspective was so important it was allowed to brief and participate in oral argument in the *Hooper* case. *Id.* at ¶ 10. In its actual amicus brief, the Nation expanded its argument about the Curtis Act for the first approximately 14 pages. Brief of Amici Curiae MCN and Seminole Nation of Okla., filed May 31, 2023.

In its Second Motion filed by the Nation in *Stitt*, it argued the Tenth Circuit's decision in *Hooper* controlled the case, much as it argues in its Complaint here. Opposed Mot. of MCN and Seminole Nation for Authorization to File an Amicus Curiae Brief, filed July 3, 2023. In its Reply Brief in *Stitt*, the Nation argued, as it does here, the Tenth Circuit's *Hooper* Decision was correctly decided. Reply Br. of Amici Curiae MCN and Seminole Nation of Okla., filed July 3, 2023.

In its third *Stitt* brief, which was invited by the OCCA for the Nation to brief both the *Hooper* Decision and *Castro-Huerta*, Order filed Sept. 19, 2023, the Nation took approximately seven pages to argue that the *Hooper* Decision was correctly decided. Supplemental Br. of Amici Curiae MCN and Seminole Nation of Okla. at 1-8, filed Oct. 19, 2023. It then spent the remaining 14 pages arguing that States, and thereby the City, do not have jurisdiction over Indians in Indian Country because, under federal case law, Tribes have exclusive jurisdiction unless states are granted jurisdiction expressly by Congress. *Id*. at 8-20. The Nation discussed *Castro-Huerta*, the Tenth Amendment, and other historical federal Indian law criminal cases, and essentially made the same arguments as the dissent in *Castro-Huerta*, just as they do in the case before this Court. *Id.* Less than one month after filing its third *Stitt* brief, the Nation filed this lawsuit.

4

The Nation's full and active participation in *Stitt* belies its assertion that the State forum is inadequate. The Nation has asserted its legal position fully in the *Stitt* case, where only the legal question is at issue. Here, the Plaintiffs seek an injunction and a declaration that the City has no jurisdiction over Indians who commit crimes within the City limits under any legal theory, while they make these same arguments in the *Stitt* case. If Plaintiff were to succeed here, they would undoubtedly raise this Court's decision in an effort to foreclose the *Stitt* State-court decision, just as they raised the Tenth Circuit's *Hooper* decision in *Stitt*. See *Stitt*, Reply Br. of MCN and Seminole Nation filed July 3, 2023. Such state-court interference is exactly what abstention is intended to prevent and is considered "impermissible under *Younger*." *D.L.* at 392 F.3d at 1229.

### 3. There is an important State interest in this case being litigated in a State-court case.

Plaintiff relies heavily on the *Ute* Court's finding that Utah had no state interest, but the Court there specifically found Utah identified no "legitimate state interest advanced <u>by its attempt to relitigate boundary decisions</u> by prosecuting Indians for crimes in Indian country." *Id.* at 1008 (emphasis added). The Nation also relies on language in *Ute* which cites *Seneca-Cayuga* to find that the state's interests are insufficient, but the *Seneca-Cayuga* case is also not on point. It involved the State's regulation of Indian gaming, which the Court found is preempted by federal law. *Seneca-Cayuga Tribe of Okla. v. Oklahoma*, 874 F.2d 709, 713 (10th Cir. 1989). Indeed, the *Seneca-Cayuga* case noted in a string cite that state criminal proceedings are a "traditional area of state concern" where federal courts are counseled to abstain. *Id.* at 713 (internal citations omitted).

Here, the City is not regulating the Nation itself. And unlike *Ute*, the City does not seek to relitigate the Nation's boundaries; the City previously asserted concurrent jurisdiction under the Curtis Act and separately asserts it under *Castro-Huerta*. Although the Tenth Circuit has ruled as to the Curtis Act, the City's jurisdiction under *Castro-Huerta* is an unanswered question, and the

5

Nation knows full well that the OCCA has taken an interest in that question, as noted supra at 3. This issue, unlike the jurisdiction in *Ute*, has not been previously adjudicated to finality in either the State or Federal system. Again, *Castro-Huerta* called into question Indian Country criminal jurisdictional precedent, whereas in the *Ute* criminal case issued pre-*Castro-Huerta*, the Court found the law was "long since settled …." *Id.* at 1006.

Although the Plaintiff believes the law is still settled post-*Castro-Huerta*, it focuses on *Castro-Huerta*'s language, including several footnotes, where the case limits its holding to non-Indians. Doc. 33 at 6-7. However, Plaintiff ignores the remainder of that case which uses broad language including the holding, where the Court said it:

> holds that Indian country within a State's territory is part of a State, not separate from a State. Therefore, <u>a State has jurisdiction to prosecute crimes committed in Indian country unless state jurisdiction is preempted</u>. … [and] further holds … that the Oklahoma Enabling Act does not preempt Oklahoma's authority to prosecute (indeed it solidifies the State's presumptive sovereign authority to prosecute).

142 S.Ct. at 2504 (emphasis added). Further, Plaintiff's position ignores the OCCA's recent discussions of *Castro-Huerta*, and although the Plaintiff may feel the opinions of the State's highest criminal court in interpreting a U.S. Supreme Court case do not matter, the Nation's reservation is "part of the State, not separate from the State." *Castro-Huerta*, 142 S.Ct at 2493.

The Nation also ignores that the City has not sought jurisdiction over Indians exclusive to the Nation's jurisdiction but has exercised criminal jurisdiction over Indian misdemeanants *concurrently* with the Nation. The Nation in fact admits that the City's Police Department sends some misdemeanor cases to the Nation while sending others to municipal court, though it incorrectly limits those cases to traffic offenses. Doc. 2 at ¶¶ 39 and 42.  To borrow the reasoning regarding federal interests in *Castro-Huerta*, the City's exercise of jurisdiction over criminal behavior supplements tribal jurisdiction rather than supplants it. 142 S.Ct. at 2501.

Lastly, although the Plaintiffs argue that the City/State have insufficient interests to support *Younger* abstention, the City's interests in its criminal jurisdiction, as derived from the State, are significant. This fact has been repeatedly recognized by the U.S. Supreme Court, which stated that, "[f]rom the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today." *Kansas v. Garcia*, 589 U.S. ---, 140 S.Ct. 791, 806 (2020). The *Castro-Huerta* Court also recognized that States have "a strong sovereign interest in ensuring public safety and criminal justice within its territory, and in protecting all crime victims. … The State also has a strong interest in ensuring that criminal offenders … are appropriately punished and do not harm others in the State." *Castro-Huerta*, 142 S. Ct. at 2501-02 (internal citations omitted).

Here, the City has similarly strong interests in enforcing criminal laws within its boundaries. Although the Nation has repeatedly attempted to couch this case in terms of traffic tickets, the City's ordinances and prosecutions run the gamut from gun crimes, assault and battery, trespassing, noise and nuisance violations, building-, health- and fire-code violations, and other property crimes and crimes against persons, as well as traffic violations. Further, the fact that there is virtually no restricted or trust land in the City and only a 4.5% Indian population[4] substantiates the City's interests in ensuring equal application of the laws within its boundaries and protection of all citizens from the actions of others.

Again, the City seeks concurrent, not exclusive, jurisdiction over Indians who commit crimes within the City limits, and the City's interest in public safety is paramount to the Nation's where the Nation has almost no government infrastructure within the City. As the Oklahoma

---

[4] https://www.census.gov/quickfacts/fact/table/tulsacityoklahoma/PST045222.

Supreme Court recently noted, the Tribal and City/State goals of public safety are, at the very least, equally significant:

> The Tribe and the State here have an identical goal: to provide each individual citizen a swift path to safety, with the combined weight of all the involved sovereigns ready to enforce it. … A terrified person may be trying to escape physical or sexual violence. … The swiftest and surest path to aid is to find the closest avenue for legal protection. Maybe the tribal courthouse is nearby. Maybe it is in another county — another part of the state, even — but a county courthouse is near to hand. The most effective way to achieve the combined tribal and State goal here is to give that scared victim every option to find their swift path to safety.

*Milne v. Hudson*, 2022 OK 84, ¶ 19, 519 P.3d 511, 516.

Further, the City has an interest in maintaining the safety of its police officers and easing the burden on them as they navigate the jurisdictional morass. The City prosecutes a significant number of cases each year. In 2022 alone, the Municipal Court received about 95,986 citations and 10,335 arrest cases. Ex. 1.[5] In addition to the issues Tulsa police officers already endure with the perceived lack of authority to enforce criminal laws since the *McGirt* and *Hooper* Decisions, *Id.*,[6] there will also be a significant change to the traffic-stop process and misdemeanor arrest process for Tulsa Police if the City loses municipal jurisdiction over Indians. Cross-deputization does not resolve these challenges.[7] Protection of its police officers and efficient use of limited resources also weigh in favor of City/State concurrent jurisdiction. As Police Chief Franklin sets forth in his Affidavit (Doc. No. 29-1), if TPD officers are required to apply the complicated Indian Country jurisdiction analysis to every citation and misdemeanor arrest, it will change every single stop. Doc. No. 29-1 at ¶¶13-17.

---

[5] Affid. of W. Franklin, Doc. 29-1 at ¶ 8. These numbers do not include State or Federal charges or those charges that are currently sent to the Tribes, which consist primarily of non-federal felony charges and domestic assault and battery misdemeanors.

[6] Affid. of W. Franklin, Doc. 29-1 at ¶ 11 for examples of individuals challenging TPD authority even though officers have commissions from both Tribes. Such encounters have continued through December 2023.

[7] The Wall Street Journal noted many of these problems in a recent article, "No Speed Limit For Native Americans". https://www.wsj.com/articles/oklahoma-mcgirt-supreme-court-neil-gorsuch-native-americans-traffic-laws-justin-hooper-e9c88dbd.

Just two years ago, in a case involving Tribal officers' authority to temporarily detain non-Indians, the U.S. Supreme Court noted that "workability" issues, almost identical to those confronting Tulsa Police counseled in favor of Tribal authority where a Tribal police officer might have to first determine whether a suspect is non-Indian, which "would produce an incentive to lie." *U.S. v. Cooley*, 593 U.S. ---, 141 S. Ct. 1638, 1645 (2021) (non-Indian DUI suspect detained for controlled drugs and firearms by Tribal police).

These jurisdictional questions are not easily answered by lawyers who are able to sit in a room with significant time and comfort to consider the issues, but the officer on the street is subject to more danger the longer s/he is on a traffic stop or at a domestic situation attempting to determine which jurisdiction's procedures to follow. Indeed, as recently as December 18, 2023, a Tulsa Police Officer was kicked by an MCN member during his arrest on an outstanding warrant from the City's Courts, and when the City arrested the MCN member for the felony Assault and Battery on a Police Officer and attempted to file the case with the Nation, the Nation's Prosecutor declined the charge stating that, "The City can take care of its cases first." Although the Nation's declarations filed herein include statements that TPD's officers need not make inquiries into jurisdictional questions, such declarations ignore the reality of failing to determine probable cause for jurisdictional purposes and the lawsuits that will be filed against officers if such inquiries are not made. Thus, the City's interests are vast in this case, as distinct from those in *Ute*.

**B.     That the City did not raise abstention to bar the action in the *Hooper* case is irrelevant to this case.**

The Nation argues this Court should retain the case and ignore abstention doctrines because the City urged the district court in the *Hooper* case to retain that case and hear the City's argument on *Castro-Huerta* and municipal jurisdiction. Doc. 33 at 1. The City asserted that *Hooper* was an appropriate case for such argument because *Hooper* was the first case filed that addressed the

9

City's jurisdiction over Indians who commit crimes in the City and in the Nation's reservation boundaries, and because two Justices of the United States Supreme Court said it appeared to be proper. The case at bar, however, is the <u>last filed</u> of all the cases addressing the issue of the City's jurisdiction. The *Hooper* case has been dismissed, and now the first-filed case is the *Stitt* State Court case, in which Plaintiff is fully and actively participating. Doc. 33 at 9.

Plaintiff cites *Guttman* as authority for the idea that a State may voluntarily submit to a federal forum. Doc. 33 at 2. However, that case is not on point and does not control. In that case, the State failed to raise *Younger* abstention in the federal district court <u>in the same case</u>, which had been ongoing for six years, and raised it for the first time on appeal to the 10th Circuit after a petition for certiorari and other stages of the litigation. *Guttman v. New Mexico*, 325 F. App'x 687, 693 (10th Cir. 2009).

> Here, New Mexico has been litigating in federal court for the last six years and has had numerous opportunities to raise the abstention issue. Since this case was filed, the state has filed a motion to dismiss, and has argued a prior appeal, a petition for certiorari, and a remand to this court. It has also since submitted numerous pleadings in the district court, but only raised its *Younger* argument in the present appeal. Although New Mexico never expressly waived an abstention argument, under the circumstances, we conclude it has voluntarily submitted this case to a federal forum and thus waived the *Younger* question.

*Id.* Here, the City raised abstention in its first pleading. *Guttman* does not stand for the proposition that because a state allowed one case to go forward on a similar issue, such as jurisdiction, that the state must then permit all future cases raising similar arguments to go forward without raising defenses, such as abstention, which were not raised in the initial case. The fact that the City did not raise abstention in the *Hooper* case, where jurisdiction under the Curtis Act was at issue, does not prohibit the City from raising abstention where the City's jurisdiction under *Castro-Huerta* is also at issue.

### C. The Nation is not a stranger to the State litigation involving the City's jurisdiction over Indians who commit crimes within the City limits.

Although Plaintiff cites *D.L.* as authority that the Nation is a "stranger" to the State *Stitt* litigation and thus cannot be barred by *Younger* abstention, the *D.L.* Court ruled that case should have been dismissed under *Younger* abstention even though the parties in the State and Federal cases were not the same. *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1230 (10th Cir. 2004). Plaintiffs incorrectly read *D.L.* as standing for the proposition that the City's *Younger* argument is foreclosed because the Plaintiffs are not parties to the State cases. Doc. 33 at 3-5.

There, a school district filed an action in state court against parents seeking reimbursement of funds paid for special education services provided to the defendants' children while they resided outside the district. *Id.* at 1226. The Court noted that if the federal plaintiffs were successful, it would foreclose the state-court suit which the Court stated was "an interference with state-court litigation that is impermissible under *Younger*. … *Younger* abstention is inappropriate when a federal plaintiff cannot pursue its federal contentions in the ongoing state proceeding. … But no reason appears why Plaintiffs' contentions here could not be interposed as defenses in state court." *Id.* at 1229 (internal citations omitted). The Court then held that although there were additional plaintiffs and defendants who were not parties in the state litigation, the federal claims that would litigate the same issues as the state claims were still barred by *Younger*. *Id.* at 1232.

The *D.L.* Court discussed two Supreme Court cases, *Hicks* and *Doran*, when finding *Younger* abstention was appropriate to dismiss the federal action. 392 F.3d at 1230. The Nation attempts to use the *Doran* case to attack the City's argument because *D.L.* states that it is proper under *Doran* for a federal court to exercise jurisdiction "over the claim of a genuine stranger to an ongoing state proceeding even though a federal decision clearly could influence the state proceeding by resolving legal issues identical to those raised in state court …." 392 F.3d at 1231,

11

*discussing Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561 (1975). However, *Doran* does not help the Plaintiff here because in *Doran*, the federal case was filed before the municipal prosecution, and the one *Doran* plaintiff who was involved in the state litigation did have its claims dismissed under *Younger*. 422 U.S. at 928.

Although the Nation attempts to place itself in the position of an entity with no involvement in the State litigation, as set forth herein, the Nation has presented its interests fully in the State *Stitt* case. See supra at 3-5. *Doran* is distinguishable as it involved a city prosecutor who was sued by three topless dance clubs which sought a declaratory judgment as to the constitutionality of, and seeking to enjoin prosecution under, an ordinance prohibiting such dancing. 422 U.S. at 924. In *Doran*, the federal case was filed first, and only one of the three clubs, M&L, was involved in the state litigation. *Id.* The Supreme Court applied *Younger* and barred M&L from obtaining declaratory relief even though the state litigation was filed <u>after</u> the federal one, ruling M&L "cannot now be heard to complain that its constitutional contentions are being resolved in a state court." *Id.* at 929. Although the Court allowed the other two topless clubs to continue with their federal litigation, it did so because there was an absence of a state proceeding in which they were involved. *Id.* at 930.

Here, there is a State proceeding in which the Nation is involved. This case might be different had the Nation filed this lawsuit immediately after finding out the City was prosecuting Indians in municipal court instead of waiting three years to file this case, after it had already entered State litigation involving the same question of jurisdiction over such prosecutions. Even if the Nation is not a party *per se*, it is certainly not a "stranger" to the *Stitt* litigation, having filed more briefs in that case than the City itself.

12

The *Doran* Court noted "there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them …." *Id.* at 929. This is such a case. Although the Nation asserts it is not an alter ego to anyone in *Stitt*, Nation itself is actually involved in the *Stitt* litigation so alter ego and stranger questions are irrelevant.

As opposed to *Doran*, this case is more like . *Hicks v. Miranda,* 422 U.S. 332, 334–35, 95 S.Ct. 2281 (1975). *Hicks* involved a theater owner who filed a federal suit alleging a State law was unconstitutional after the theater owner's employees were prosecuted under the law. *Id.* In addressing *Hicks*, the *D.L.* Court noted that:

> The [*Hicks*] Court wrote, 'Absent a clear showing that [the owners] ... could not seek the return of their property in the state proceedings and see to it that their federal claims were presented there,' *Younger* abstention could not be avoided. The owners, it said, 'had a substantial stake in the state proceedings, so much so that they sought federal relief. ... Obviously, their interests and those of their employees were intertwined; and, as we have pointed out, the federal action sought to interfere with the pending state prosecution.'

392 F.3d at 1230 (10th Cir. 2004) (internal citations omitted). The *Hicks* Court held that *Younger* "could not be avoided on the ground that no criminal prosecution was pending against [the federal plaintiffs] on the date the federal complaint was filed." 422 U.S. 332 at 34, 95 S.Ct. 2281 at 2292. Here, the Nation's interests are intertwined with those individual Indians prosecuted by the City for crimes committed within the Nation's boundaries, as in *Stitt*, because the argument in both cases is that the Nation's sovereignty prohibits the City from exercising jurisdiction. Even if *Stitt* is a Cherokee Indian, Doc. 33 at 5, he committed his crime within the Nation's boundaries so unless the Nation is conceding the City has jurisdiction over nonmember Indians on the reservation, then the Nation's interests are still implicated in that case as the Nation asserted in its briefs in *Stitt*. Although the Nation asserts that the *Stitt* defendant is not in the position to argue the

13

Nation's sovereignty, Doc. 33 at 5, the Nation itself has presented its sovereign interests and claims to jurisdiction in that case and any other it has chosen to enter.[8] Attempting to gain a federal decision which the Nation would undoubtedly present to the State Courts as controlling, if not persuasive, as the Nation did with the Tenth Circuit's *Hooper* Decision, is an attempt to interfere with the OCCA determination of the City's jurisdiction under *Castro-Huerta*.

> D. **The City has shown sufficient basis for abstention under *Colorado River*.**

Like its argument that it is a stranger to the *Stitt* State court litigation, the Nation attempts to argue this case and the *Stitt* litigation do not overlap for purposes of *Colorado River* abstention. The Nation again argues that, even though it fully participated in *Stitt*, because it is not a named party there is no parallel litigation for *Colorado River* purposes. Doc. 33 at 11-13. As shown herein, the Nation clearly is litigating the same issues in *Stitt* as it seeks to litigate here.

Although the Nation repeatedly argues that *Colorado River* abstention cannot prevail because the *Stitt* litigation will not resolve the issues, this is inaccurate. No matter which way the OCCA rules that will be a final order appealable to the U.S. Supreme Court. If the U.S. Supreme Court takes up the issue, it will control both sides; if it does not, then the City will be controlled by the State's highest criminal court's decision. However, if no one appeals the OCCA decision, and this Court rules to the contrary, the issues will not be resolved, and more appeals will have to take place. Indeed, the City will be placed in exactly the type of situation *Colorado River* abstention seeks to avoid because the City will have been party to two competing decisions and will have to choose which one to follow, and in doing so, will be in violation of the other court's decision.

---

[8] Indeed, even in *Hooper*, the Nation acted as an amici through the appeal to the 10th Circuit and again on remand until the District Court Judge ordered the Nation to explain why it was not attempting to intervene as a party.

14

Again, the Nation reverts to its argument that it is not a party to *Stitt*, Doc. 33 at 13, as a reason why *Stitt* does not resolve the issues because, per the Nation, *Stitt* does not bind the Nation. However, it is not the Nation's actions that this case seeks to enjoin.

Further, there is no merit to the argument that the Nation's sovereignty and interests cannot be vindicated through a State criminal case, which is ultimately appealable to the U.S. Supreme Court. In both *McGirt* and *Murphy*, which are the basis for the Nation having reservation boundaries in the first place, the Nation participated as an amicus throughout and was not an intervening party in the litigation at any point, and its interests appear to have been asserted and protected just fine. See, *McGirt v. Oklahoma*, 2020 WL 774430 (Br. for Amicus Curiae Muscogee (Creek) Nation in Support of Petitioner); *Carpenter v. Murphy*, 2018 WL 5429227, 2017 WL 9604572, 2016 WL 11295447 (Various Briefs for Amicus Curiae Muscogee (Creek) Nation in Support of Respondent).

## CONCLUSION

This Court should dismiss the claims and requested relief against all parties, or in the alternative stay this case until resolution of the *Stitt* case.

         Respectfully Submitted,

         CITY OF TULSA,
         a municipal corporation

         JACK C. BLAIR,
         City Attorney


BY:  _/s/ Kristina L. Gray_____
   Kristina L. Gray, OBA #21685
   Litigation Division Manager
   Becky M. Johnson, OBA #18282
   Senior Assistant City Attorney
   City Hall, One Technology Center
   175 East Second Street, Suite 685
   Tulsa, Oklahoma  74103
   (918) 596-7717 Telephone
   (918) 596-9700  Facsimile


## CERTIFICATE OF MAILING

I, Kristina L. Gray, hereby certify that on the _5th_ day of January, 2024, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Riyaz A. Kanji
David A. Giampetroni
Kanji & Katzen, PLLC
P.O. Box 3971
Ann Arbor, MI 48106
rkanji@kanjikatzen.com
dgiampetroni@kanjikatzen.com

and

Geraldine Wisner
Attorney General
Muscogee (Creek) Nation
P.O. Box 580
Okmulgee, OK 74447
gwisner@mcnag.com

O. Joseph Williams
O. Joseph Williams Law Office, PLLC
The McCulloch Building
114 North Grand Avenue, Suite 520
P.O. Box 1131
Okmulgee, OK 74447
jwilliams@williamslaw-pllc.com

Philip H. Tinker
Kanji & Katzen, PLLC
811 1st Avenue, Suite 630
Seattle, WA 98104
ptinker@kanjikatzen.com

Stephanie R. Rush
Kanji & Katzen, PLLC
P.O. Box 2579
Sapulpa, OK 74067
vrush@kanjikatzen.com

                                              /s/ Kristina L. Gray
                                              Kristina L. Gray