IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MUSCOGEE (CREEK) NATION,** a federally recognized Indian Tribe, <br><br> *Plaintiff*, <br><br> v. <br><br> **(1) CITY OF TULSA; (2) G.T. BYNUM, in his official capacity as Mayor of City of Tulsa; WENDELL FRANKLIN, in his official capacity as Chief of Police, Tulsa Police Department; and (4) JACK BLAIR, in his official capacity as City Attorney for City of Tulsa,** <br><br> *Defendants*. | Case No. 23-cv-00490-SH <br><br> Judge: Hon. John D. Russell |

### MOTION OF DAMARIO SOLOMON-SIMMONS AND THE MUSCOGEE CREEK INDIAN FREEDMEN BAND FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT

COMES NOW Damario Solomon-Simmons and The Muscogee Creek Indian Freedmen Band through counsel and pursuant to Rule LCvR7-1 (b) of Local Rules, hereby move this Court to grant the Motion for Temporary Restraining Order and Preliminary Injunction for the reasons set forth in the Memorandum in Support filed herewith.

## INTRODUCTION

The City of Tulsa ("Tulsa") continues to prosecute Indians for traffic violations within the Muscogee (Creek) Nation ("MCN") Reservation in flagrant disregard of binding Supreme Court and Tenth Circuit Court of Appeals precedent that confirms neither Oklahoma nor its municipalities have a "right to prosecute Indians for crimes committed in a portion of Northeastern Oklahoma that includes most of the City of Tulsa." *McGirt* v. *Oklahoma*, 591 U.S. 894, 899 (2020); *see also Hooper v. City of Tulsa*, 71 F.4th 1270, 1285-88 (10th Cir. 2023). As recently as December 20, 2024, Tulsa issued proposed Plaintiff Mr. Damario Solomon-Simmons a traffic citation on territory which constitutes parts of the MCN Reservation. Yet Mr. Solomon-Simmons is a Muscogee Creek Indian by blood and federal law, a class of Creeks who citizenship within MCN is guaranteed under the plain terms of Article II of the Treaty of 1866.[1] *See* MCN Creek Treaty of 1866, Art. 2, June 14, 1866, 14 Stat. 785, 1866 WL 18777 (hereinafter the "Treaty of 1866"). Accordingly, Tulsa lacked jurisdiction to issue the December 20, 2024, traffic citation.

The MCN brought this suit before this Court against Tulsa and several of its officials on November 15, 2023, asserting that any exercise of criminal jurisdiction by the Defendants over Indians on MCN reservation land violates federal law. *See* Pl.'s Compl. ¶¶ 46-50. The MCN correctly argues that "*McGirt* . . . affirmed that in treaties entered between 1832 and 1866, Congress established and defined a federally protected Indian reservation for the Nation" that "remains Indian country today under 18 U.S.C. § 1151(a)." Pl.'s Compl. ¶ 22. The MCN therefore seeks declaratory and injunctive relief to "enjoin Tulsa from exercising criminal jurisdiction over

---

[1] Mr. Solomon-Simmons and the MCIFB incorporate herein their Complaint but also their motion to intervene and accompanying memorandum of law, including the sections addressing Mr. Solomon-Simmons and the MCIFB's standing to bring this case.

Indians for conduct occurring within the MCN Reservation absent express authorization from Congress." Pl.'s Compl. ¶¶ A-B.

Unfortunately for Mr. Solomon-Simmons and other similarly situated "Creeks of African Descendants," including the Muscogee Creek Indian Freedmen Band ("MCIFB"), the MCN persists in unlawfully denying their clear citizenship rights as laid out in Article II of the Treaty of 1866. Article II of the Treaty of 1866 conclusively states that "Creeks of African descent" also known as "Creek Freedmen,"[2] and their descendants, "shall have and enjoy all the rights and privileges of native citizens . . . and the laws of the said nation shall be equally binding upon and give equal protection to all such persons, and all others, of whatsoever race or color, who may be adopted as citizens or members of said tribe." As a result, it has become necessary for Mr. Solomon-Simmons and the MCIFB, an interest group promoting justice for Creek Freedmen of which Mr. Solomon-Simmons is an active member, to intervene in this matter to seek relief that not only enjoins Tulsa from "exercising criminal jurisdiction over Indians for conduct occurring within the Creek Reservation absent express authorization" but that clarifies such an injunction extends to "Creek Freedmen" Descendants. *See generally* Solomon-Simmons & MCIFB Mot. to Intervene.

---

[2] Starting in 1898 the Dawes Commission created two separate lists of MCN citizens eligible for land allotment: the Creek Nation Creek Roll and the Creek Nation Freedmen Roll, for those labeled as formerly enslaved Africans, regardless of their actual Creek ancestry. The Dawes Commission deliberately used physical appearance and the **hypo-descent rule**, meaning that any person believed to have even **"one drop" of "Black blood"** was classified as a Creek Freedmen, regardless of the actual Creek heritage or whether they or their ancestors had ever been enslaved. **Therefore,** The Dawes Commission therefore enrolled many Creeks of African descent on the Freedmen Roll, regardless of whether they or their ancestors were ever enslaved in the MCN or how much "Creek blood" they actually possessed. This racial categorization ensured that generations of Creek Freedmen and their descendants would **carry the stigma of slavery indefinitely**, which contributes their deprivation of their lawful rights and recognition.

The temporary restraining order sought by Mr. Solomon-Simmons and the MCIFB is warranted. Under Federal Rule of Civil Procedure 65, "a plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1277 (10th Cir. 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Rangel-Lopez v. Cox*, 344 F. Supp. 3d 1285, 1289 (D. Kan. 2018) (noting the same standard applies to temporary restraining orders). Mr. Solomon-Simmons is likely to succeed on the merits because both Tulsa's position—that it can continue to issue traffic citations to Indians despite *McGirt* and *Hooper*—and the Tulsa and MCN's position— that Mr. Solomon-Simmons and similarly situated Creek Freedmen Descendants are not citizens of MCN or "Creek Indians" under federal law violates the language of the 1866 Treaty, several federal statutes, and almost two hundred of clear U.S. Supreme Court legal precedent. Moreover, without this Court's intervention, Mr. Solomon-Simmons and other similarly situated Creek Freedmen Descendants will continue to suffer irreparable harm as Tulsa will continue to erroneously exercise jurisdiction over Indians, including themselves.

**I.     Mr. Solomon-Simmons Is Likely to Succeed on the Merits Because Binding Precedent Forecloses Tulsa's Exercise of Jurisdiction Over Indians.**

This case presents a question of law on which the Tenth Circuit Court of Appeals and the Supreme Court have decisively ruled in Mr. Solomon-Simmons' favor. In *McGirt*, the Supreme Court held that neither Oklahoma nor its municipalities have a "right to prosecute Indians for crimes committed in a portion of Northeastern Oklahoma that includes most of the City of Tulsa". *McGirt*, 591 U.S. at 899. The Tenth Circuit of Appeals subsequently reaffirmed that municipal courts, which issue citations such as the one issued to Mr. Solomon-Simmons, do not have

jurisdiction over Indians in the territory of the MCN Reservation because Section 14 of the Curtis Act no longer applies. *See Hooper v. City of Tulsa*, 71 F.4th 1270, 1288 (10th Cir. 2023).

Tulsa nonetheless continues to assert jurisdiction over Creek Indians based on (i) Section 14 of the Curtis Act and (ii) a tortured reading of *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022). Not only is Tulsa's reliance on Section 14 of the Curtis Act foreclosed by binding precedent, but it is also barred by the doctrine of issue preclusion. "[I]ssue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." *Park Lake Res. Ltd. Liab. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004). Tulsa was a party to *Hooper*, in which the continued applicability of Section 14 was necessarily adjudicated. *Boulder v. Noble Energy Inc.,* 74 F.4th 1285, 1289 (10th Cir. 2023) (noting factors to be considered in applying issue preclusion include whether the "issue is … identical to an issue actually litigated and necessarily adjudicated in the prior proceeding . . . [t]he party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding.") Tulsa had a "full and fair opportunity to litigate the issues in the prior proceeding" because it decided not to appeal *Hooper* to the Supreme Court for a writ of certiorari. *Id*. (additional factors are whether there "was a final judgment on the merits in the prior proceeding" and "[t]he party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding").

Nor does *Castro-Huerta* somehow grant Tulsa the authority to exercise criminal jurisdiction concurrently with the MCN on the Creek Reservation. *Castro-Huerta* held that Oklahoma (and by extension Tulsa)'s jurisdiction extends to state jurisdiction over non-Indians on Indian territory, which it upheld as a matter of state power reserved by the Tenth Amendment. 597 U.S. at 656. In fact, *Castro-Huerta* explicitly "express[es] no view on state jurisdiction over a

criminal case" involving Indians in Indian country. *Id*. at 650 n.6; *see also id*. at 655 n. 9. The natural reading of *Castro-Huerta* alongside *McGirt* is that tribal courts and state courts remain geographically concurrent but otherwise jurisdictionally distinct, with state courts retaining power over non-Indians and tribal courts exercising jurisdiction over Indians.[3] State courts simply "have no jurisdiction to try Indians" such as Mr. Solomon-Simmons for conduct committed in Indian territory, including Tulsa. *McGirt*, 591 U.S. at 898. As a result, Mr. Solomon-Simmons has a substantial likelihood of success on the merits of his claim.

## II. Mr. Solomon-Simmons Is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief.

"To show a threat of irreparable harm, a plaintiff must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016) (quotation omitted). "Irreparable harm also occurs if the district court cannot remedy the injury following a final determination on the merits." *Id.* (cleaned up).

Mr. Solomon-Simmons, and other Creek Freedmen Descendants like him, will continue to face irreparable harm from traffic prosecutions in Tulsa along with other citizens of the MCN absent this Court's intervention. "The Tenth Circuit has 'repeatedly stated that … an invasion of tribal sovereignty can constitute irreparable injury.'" *Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Utah*, 790 F.3d 1000, 1005 (10th Cir. 2015) (quoting *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1255 (10th Cir. 2006)). The risk of such harms is heightened considering the MCN's refusal to recognize descendants of Creek Freedmen.

---

[3] The distinction established between Indians and non-Indians on tribal land by *Castro-Huerta* nonetheless underscores the importance of Creek Freedmen participation in this matter, given that MCN refuses to abide by the Treaty and disputes that Creek Freedmen Descendants qualify as Creek Indian.

In fact, the court in *Ute Indian Tribe* found the exact same injuries constituted irreparable harm. 790 F.3d at 1005. In that case, Utah courts were prosecuting Indians for traffic violations in areas federal courts had declared Indian territory. *Id.* The court noted, "[n]ot only is the prosecution of [plaintiff] itself an infringement on tribal sovereignty, but the tortured litigation history that supplies its backdrop strongly suggests it is part of a renewed campaign to undo the tribal boundaries settled by [federal courts]. *Id.*

The present case parallels *Ute Indian Tribe*. Here, Tulsa continues to prosecute citizens of the MCN for traffic violations. Tulsa does so despite federal courts stating in *McGirt* and *Hooper* that Tulsa lacks criminal jurisdiction over Indians within the boundaries of the Creek Reservation.

Without court intervention, Tulsa will continue its flagrant violation of tribal sovereignty. MCN maintains its own courts and police force and has enacted its own traffic codes. Tulsa's traffic prosecutions subject Creek Freedmen Descendants like Mr. Solomon-Simmons, as well as citizens of the MCN more broadly, to laws outside their Indian nation in the Nation's territory. No amount of money can remedy violating a right as core as sovereignty. And without a preliminary injunction, Tulsa will continue this infringement of rights.

### III.     The Balance of Equities and the Public Interest Favor an Injunction.

In assessing similar claims in *Ute Indian Tribe*, the Tenth Circuit analyzed the balance of harms and public interest factors simultaneously when considering competing claims of jurisdiction. *See* 790 F.3d at 1007.

As the *Ute* court analyzed, Indians face risks of interference with self-governance and sovereignty. *Id.* State and municipal governments face an inability to issue traffic tickets to Indians and engage in traffic prosecutions, though nothing stops them from being able to patrol roads and stop Indian drivers, so long as they refer suspected traffic offenses to tribal law enforcement. *Id.*

A preliminary injunction merely stops state and municipal governments from prosecuting offenses they cannot prosecute in the first place—an interest that pales in the face of Indians' interest in sovereignty.

The same reasoning translates to Mr. Solomon-Simmons. Mr. Solomon-Simmons' interest in MCN sovereignty and ensuring that Creek Freedmen Descendants receive the same rights, benefits, and protections under the law as every other Creek Indian within the MCN reservation seriously outweigh Tulsa's interest in issuing him traffic tickets. Tulsa has no interest in issuing traffic tickets to similarly situated Creek Freedmen Descendants, and Tulsa police are still free to conduct a traffic stop on Mr. Solomon-Simmons. They merely need to refer any prosecutions that arise out of such stops with MCN reservation to the MCN. As such, the balance of equities and public interest strongly favor a preliminary injunction.

## CONCLUSION

Mr. Solomon Simmons respectfully requests that the Court preliminarily enjoin Tulsa from any further assertion of criminal jurisdiction over Indians within the Creek reservation, including Mr. Solomon-Simmons and other similarly situated Creek Freedmen Descendants, pending final resolution of this action.

DATED: March 18, 2025

Respectfully Submitted,

*/s/ Damario Solomon-Simmons*
Damario Solomon-Simmons, OBA #20340
SOLOMONSIMMONSLAW PLLC
601 S. Boulder Ave., Ste. 602
Tulsa, OK 74119
Telephone: (918) 551-8999
Facsimile: (918) 558-8039
dss@solomonsimmons.com

Jana L. Knott, OBA #30615
Bass Law
104 N. Rock Island Ave.
El Reno, OK 73036
Telephone: (405) 262-4040
Facsimile: (405) 262-4058
jana@basslaw.net

Mike McBride III, OBA #15431
Crowe & Dunlevy
222 N. Detroit Ave., Ste. 600
Tulsa, OK 74120
Telephone: (918) 592-9824
mike.mcbride@crowedunlevy.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2025, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/ECF system, which will serve and send a notice of electronic filing to all parties or their counsel of record.

*/s/ Damario Solomon-Simmons*
Damario Solomon-Simmons