IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MUSCOGEE (CREEK) NATION, a federally recognized Indian Tribe, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF TULSA; G.T. BYNUM, in his official capacity as Mayor of City of Tulsa; WENDELL FRANKLIN, in his official capacity of Chief of Police, Tulsa Police Department, and JACK BLAIR, in his official capacity as City Attorney for City of Tulsa, <br><br> Defendants. | Case No. 23-CV-490-JDR-CDL |

### DAMARIO SOLOMON-SIMMONS AND THE MUSCOGEE CREEK INDIAN FREEDMEN BAND'S OBJECTION TO THE PARTIES' FOURTH JOINT MOTION TO EXTEND STAY OF PROCEEDINGS

COMES NOW Damario Solomon-Simmons and the Muscogee Creek Indian Freedmen Band ("MCIFB"), through counsel, to object to the Parties' Fourth Joint Motion to Extend Stay of Proceedings, *see* Doc. #145, and to seek an order declining to stay the proceedings until this Court has resolved Mr. Solomon-Simmons and the MCIFB's Motion to Intervene. *See* Doc. # 130 (pending since March 18, 2025). Neither the City of Tulsa, who continues to prosecute Creeks of African Descendent ("Creek Freedman") in violation of *McGirt v. Oklahoma*, 591 U.S. 894 (2020), and the Muscogee (Creek) Nation ("MCN"), who has a long history of discriminating against Creek Freedmen descendants, will adequately represent Mr. Solomon-Simmons and the MCIFB's interests in settlement negotiations if this case is stayed. Accordingly, this Court should first rule on Mr. Solomon-Simmons and the MCIFB's Motion to Intervene so they can participate in these settlement negotiations.

## ARGUMENT AND AUTHORITIES

This Court should not allow settlement negotiations to proceed until it rules on Mr. Solomon-Simmons and the MCIFB's Motion to Intervene.

Although federal district courts have discretionary authority to stay a proceeding pending before it, *see Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936), the utilization of this power "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55. Accordingly, in assessing the propriety of a stay, a district court should consider "[1] whether the defendants are likely to prevail in the related proceeding; [2] whether, absent a stay, the defendants will suffer irreparable harm; [3] whether the issuance of a stay will cause substantial harm to the other parties to the proceeding; and [4] the public interests at stake." *United Steelworkers of Am. v. Oregon Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003).

Here, the second, third, and fourth factors weigh against granting a stay.[1] As Governor Stitt also explained in his brief, "[n]either party has offered any showing of irreparable injury to justify their prior stay requests" when it comes to this second factor. Doc. #147 at 5. Instead, the Parties "have justified their stay requests based principally on their own agreement." *Id.*

But in doing so, the Parties have ignored the substantial harm that Mr. Solomon-Simmons and the MCIFB would suffer if they were unable to participate in these proposed settlement negotiations. As stated in their Motion to Intervene, *see* Doc. # 130, Mr. Solomon-Simmons, and other similarly situated members of the MCIFB, are direct, lineal descendants of Creek Indians and Creek Freedmen, both of whom are considered Indians under federal law, including but not limited to, the Treaty of 1866 between the MCN and the United States, June 14, 1866, 14 Stat. 785

---

[1] Mr. Solomon-Simmons and the MCIFB agree with Governor Stitt for the reasons provided in his brief that this first factor is inapplicable here. *See* Doc. # 147, at 5.

and Pub. L. No. 90-504, 82 Stat. 855 (Sept. 21, 1968). Indeed, Article 2 of the Treaty of 1866 guarantees rights to Creek Freedmen in relevant part:

> inasmuch as there are among the Creeks many persons of African descent, . . . these persons . . . and their descendants . . . shall have and enjoy all the rights and privileges of native citizens, including an equal interest in the soil and national funds, and the laws of the said nation shall be equally binding upon and give equal protection to all such persons, and all others, of whatsoever race or color, who may be adopted as citizens or members of said tribe.

Congress has never revoked or modified these guarantees, so these rights remain in full force today. Art. VI of the U.S. Constitution holds that treaties are the supreme law of the land.

But despite being "Indians" under this Treaty, and various federal statutes, the City of Tulsa has continued to subject them to unlawful exercises of criminal jurisdiction in violation of *McGirt v. Oklahoma*, 591 U.S. 894 (2020). Furthermore, the MCN cannot be trusted to adequately protect Mr. Solomon-Simmons' and other similarly situated Creek Freedmen descendants' interest in these settlement negotiations either. Indeed, the MCN has a long history of discriminating against Creek Freedmen descendants, including expelling them and their descendants from MCN communities, divesting them of their citizenship rights, denying them MCN benefits and services, and erasing their history and contributions to the MCN. *See* Doc. #130, at 2-5. Accordingly, the MCN is unlikely to seek any relief in these settlement negotiations that would protect Mr. Solomon-Simmons and similarly situated Creek Freedmen who are subjected to Tulsa's unlawful exercise of criminal jurisdiction over them. Because neither party will adequately represent their interests in settlement, Mr. Solomon-Simmons and the MCIFB must be allowed to intervene and participate in these negotiations. Otherwise, they will continue to be denied their rights of citizenship and equal protection under the 1866 Treaty and continue to suffer injustice by the City of Tulsa.

Finally, the fourth factor concerning the public interests at stake weighs against a stay. If Mr. Solomon-Simmons and the MCIFB cannot participate in these settlement discussions, then they cannot ensure their rights under federal law are protected, nor can they ensure the City of Tulsa will stop exercising unlawful criminal jurisdiction over them. The public has a strong interest in ensuring that federal treaties are complied with and that criminal jurisdiction is lawfully exercised by the City of Tulsa. Because three of these four factors weigh against this stay, the Court should refuse to grant it until this Court has resolved Mr. Solomon-Simmons and the MCIFB's Motion to Intervene.

## **CONCLUSION**

For these reasons, Mr. Solomon-Simmons and the MCIFB respectfully request this Court to (1) deny the Parties' Fourth Joint Motion to Extend Stay of Proceedings and (2) decline to stay the proceedings until this Court has resolved Mr. Solomon-Simmons and the MCIFB's Motion to Intervene.

Date: June 19, 2025

Respectfully submitted,

Damario Solomon-Simmons, OBA #20340
SOLOMONSIMMONSLAW PLLC
601 S. Boulder Ave., Ste. 602
Tulsa, OK 74119
Telephone: (918) 551-8999
Facsimile: (918) 558-8039
dss@solomonsimmons.com

        /s/Jana Knott
Jana L. Knott, OBA #30615
Allyson A. Stewart, OBA #34801
Bass Law
104 N. Rock Island Ave.
El Reno, OK 73036
Telephone: (405) 262-4040
Facsimile: (405) 262-4058
jana@basslaw.net
allyson@basslaw.net

Mike McBride III, OBA #15431
Crowe & Dunlevy
222 N. Detroit Ave., Ste. 600
Tulsa, OK 74120
Telephone: (918) 592-9824
mike.mcbride@crowedunlevy.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that on June 19, 2025, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/ECF system, which will serve and send a notice of electronic filing to all parties or their counsel of record.

        /s/Jana Knott
        Jana L. Knott