**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MUSCOGEE (CREEK) NATION,<br> a federally recognized Indian Tribe,<br><br> *Plaintiff,*<br><br> v.<br><br> CITY OF TULSA; MONROE NICHOLS IV,<br> in his official capacity as Mayor of City of<br> Tulsa; DENNIS LARSEN, in his official<br> capacity as Chief of Police, Tulsa Police<br> Department; and JACK BLAIR, in his official<br> capacity as City Attorney for City of Tulsa,<br><br> *Defendants.* | Case No. 23-cv-00490-JDR-CDL |

**JOINT SETTLEMENT AGREEMENT BETWEEN PLAINTIFF
MUSCOGEE (CREEK) NATION AND DEFENDANTS CITY OF TULSA ET AL.**

**INTRODUCTION**

On November 15, 2023, the Muscogee (Creek) Nation ("Nation") filed its Complaint, Dkt. 02, and Motion for Preliminary Injunction, Dkt. 09, in this action against the City of Tulsa and its Mayor, Chief of Police, and City Attorney (collectively "City"), seeking to preliminarily and permanently enjoin the City's exercise of criminal jurisdiction over Indians within the boundaries of the Nation's Reservation. On December 8, 2023, the City filed a Motion to Dismiss, arguing that the Court should abstain from ruling on Plaintiff's Motion for Preliminary Injunction and dismiss the case. Dkt. 28.

The Parties have now agreed it is in their mutual interest, in advancing their law enforcement and public safety priorities and policies, to settle this matter in lieu of litigating

disputes over jurisdiction. In furtherance of this goal, the Parties agree to the following Joint Settlement Agreement (the "Agreement").

### DEFINITIONS

1. **Litigation:** Litigation means *Muscogee (Creek) Nation v. City of Tulsa et al.*, Case No. 23-cv-00490-JDR-CDL (N.D. Okla. Filed Nov. 15, 2023).

2. **Parties:** The parties to this agreement are the Muscogee (Creek) Nation ("Nation") and the City of Tulsa, Oklahoma ("City"), and shall include their respective officials, officers, employees, departments, agencies, or other governmental subdivisions.

3. **Court:** Except as otherwise stated in this Agreement, "Court" shall mean the United States District Court for the Northern District of Oklahoma, which is presiding over the Litigation.

4. **Criminal Jurisdiction:** Criminal Jurisdiction is the power and authority of a governmental body, including its law enforcement personnel, prosecutors, or judicial officers, to enforce the applicable criminal laws within a specific geographic area or over particular persons or subject matter, including through criminal investigations, prosecutions, sentencing, or incarceration. For purposes of this Agreement, and consistent with the decisions of the United States Supreme Court and the United States Court of Appeals for the Tenth Circuit concerning the allocation of jurisdiction within Indian Country, Criminal Jurisdiction is distinct from civil/regulatory jurisdiction. *See, e.g.*, *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987).

5. **Relevant Federal Decision:** A Relevant Federal Decision is a decision issued after the effective date of this Agreement by the United States Supreme Court or the United States Court of Appeals for the Tenth Circuit, or federal law duly enacted by the United States.

6. **Indian:** Unless modified by a Relevant Federal Decision, Indian shall mean a person who "(1) has some Indian blood; and (2) is recognized as an Indian by a tribe or by the federal government." *United States v. Prentiss*, 273 F.3d 1277, 1280 (10th Cir. 2001).

## TERMS AND CONDITIONS

7. **Acknowledgement of Criminal Jurisdiction and Recent and Pending Cases:** The Parties hereby acknowledge that:

   a. The United States Supreme Court has confirmed that the Nation's Reservation boundaries, as established and confirmed in treaties between the Nation and the United States of America, including the Treaty of 1866, 14 Stat. 785, have not been disestablished. *McGirt v. Oklahoma*, 591 U.S. 894, 140 S.Ct. 2452, 207 L.Ed.2d 985 (2020).

   b. As defined in federal statute at the time of this Agreement, Indian Country includes "all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation…." 18 U.S.C.A. § 1151(a).

   c. Indian Tribes have Criminal Jurisdiction over all Indian defendants for crimes occurring in Indian Country. 25 U.S.C.A. § 1301(2).

   d. Federal and State of Oklahoma courts have issued conflicting opinions regarding State and municipal Criminal Jurisdiction over Indian defendants. *Compare Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000, 1004 (10th Cir. 2015) (Gorsuch, J.) ("[U]nless Congress provides an exception to the rule … states possess 'no authority' to prosecute Indians for offenses in Indian

3

country." (quoting *Cheyenne-Arapaho Tribes of Okla. v. Oklahoma*, 618 F.2d 665, 668 (10th Cir. 1980)), with *City of Tulsa v. O'Brien*, 2024 OK CR 31, --- P.3d--- (Okla. Ct. Crim. App. 2024) (holding that the City and State of Oklahoma maintain jurisdiction, concurrent with Tribal nations and the United States, over nonmember Indians.) *and Stitt v. City of Tulsa*, 2025 OK CR 5, 565 P.3d 857 (Okla. Ct. Crim. App. 2025).

e.  Cases are pending which, if appealed to the United States Supreme Court, may resolve or reconcile the conflicting opinions of federal and state courts. *See United States v. Ballard*, CIV-4:24-626-CVE-SH (N.D. Okla. filed Dec. 23, 2024) (Consolidated Cases); *United States v. Iski*, CIV-6:24-493-CVE (E.D. Okla. filed Dec. 23, 2024) (Consolidated Cases); *Muscogee (Creek) Nation v. Tulsa County*, Case No. 4:25-cv-00075-GKF-JFJ (N.D. Okla., filed Feb. 13, 2025); *Stitt v. City of Tulsa*, Case No. M-2022-984 (Okla. Ct. Crim. App. 2025).

8.  **Deference to Nation's Criminal Jurisdiction:** In the best interest of public safety and inter-governmental cooperation, and to settle this matter in lieu of litigating disputes over jurisdiction, the City agrees that it will not exercise Criminal Jurisdiction over Indian Defendants on the Nation's Reservation.  This Agreement does not preclude the City from exercising criminal jurisdiction pursuant to any lawful, valid, and duly authorized delegation of authority from the Nation to the City, including law enforcement activities undertaken by the Tulsa Police Department pursuant to the parties' cross-deputization agreement.  *See* Intergovernmental Cross-Deputization Agreement Between the United States, Muscogee (Creek) Nation, and Political Subdivisions of the State of Oklahoma. https://www.sos.ok.gov/documents/filelog/63941.pdf.

9. **Identification of Suspects as Indian Defendants:** The City shall make a good faith effort to determine the Indian status of all suspects or defendants before seeking to exercise criminal jurisdiction over such persons.

10. **Dismissal of Pending Prosecutions against Indian Defendants:** As of the effective date of this Agreement, the City will dismiss with prejudice all pending prosecutions in the City's court system ("Municipal Court") against all known Indian defendants for conduct occurring on the Nation's Reservation.

11. **Agreement not to Initiate Future Prosecutions:** As of the effective date of this Agreement, the City will not initiate prosecutions in Municipal Court or the Courts of the State of Oklahoma against known Indian defendants for conduct occurring on the Nation's Reservation.

12. **Referral of Tickets and Charges to the Nation:** As of the effective date of this Agreement, the City will work in good faith with the Nation to transfer tickets and charges dismissed under Section 10 of this Agreement to the Nation. The City shall refer all future charges and tickets against known Indian defendants for conduct occurring within the Nation's Reservation to the Nation and/or, in the case of Major Crimes subject to 18 U.S.C. § 1153, the City may refer such charges against known Indian defendants to both the United States and to the Nation.

13. **Prosecution by the Nation:** The Nation will review in good faith all tickets and charges referred by the City and prosecute such cases consistent with the Nation's law enforcement priorities and prosecutorial discretion.

   a. The Nation and the City agree to work together in good faith to facilitate the efficient and orderly implementation of this provision, including through the

establishment of the joint law enforcement working group provided for in Section 15 of this Agreement.

    b. The Nation utilizes a case-management software and tracking database, which records the disposition of all cases processed by Nation prosecutors within the Nation's Office of the Attorney General, including whether charges are filed, deferred, or declined, and the reason for that disposition. As a referring jurisdiction, the City will have access to the records of the Nation's prosecutorial decisions through this system. The Nation agrees to ensure that the City retains access to these records of decision through this database, and that the Office of the Attorney General will discuss in good faith any questions that the City might have regarding the Nation's prosecutorial decisions in individual cases or classes of cases.

14. **Settlement and Dismissal of Litigation:** The Parties to this Agreement agree to jointly move the Court to do the following with respect to the Litigation:

    a. Grant the United States' Motion to Withdraw its Motion to Intervene, Dkt. 039.

    b. Deny all other pending or future Motions to Intervene.

    c. Dismiss the Litigation without prejudice to the Nation's ability to bring suit to enforce its jurisdiction to the fullest extent authorized under federal law, should the Agreement be modified or terminated pursuant to Section 18 of this Agreement.

15. **Cooperative Law Enforcement Principles and Plan**: The Nation and the City recognize that their joint law enforcement and public safety priorities and policies are best served by a cooperative, inter-governmental approach to exercising their public

safety and law enforcement responsibilities within the Nation's Reservation. In furtherance of this renewed focus on cooperative governance, the Nation and the City agree that, within one (1) month of the effective date of this Agreement, they will establish a joint working group to assess the Parties' shared governance needs and goals, and to evaluate and recommend additional practices, policies, and cooperative agreements to achieve their joint public safety and law enforcement priorities. Within eight (8) months from the effective date of this Agreement, the working group will present a comprehensive Report on the status and disposition of cases referred by the City to the Nation and an actionable Plan for achieving shared public safety goals in the City of Tulsa on the Nation's Reservation. The Plan, which will be made available to the public, shall address matters such as booking procedures and transfer of custody; detention facilities and procedures; special services such as addiction and mental health treatment and diversion; laboratory testing costs; evidence and property storage; video testimony; warrants and extradition procedures; law enforcement communication, training, policies, and procedures; expedient and reliable identification of Indian defendants; and communication and coordination regarding Major Crimes. The Report and Plan will be presented to the Muscogee Nation Principal Chief and the Mayor of the City of Tulsa for consideration and approval in writing.

16. **Effective Date:** This agreement will take effect and remain binding on the Parties once both of the Parties have executed this Agreement.

17. **Good Faith Negotiation and Mediation:** It is the intent of the Parties that any dispute arising in the course of performance under this Agreement will be resolved informally and promptly through good faith negotiations. Should any dispute arise that cannot be

resolved by negotiation, either Party may request mediation by giving a written mediation demand to the other party. Mediation is a condition precedent to enforcing, modifying, or terminating this Agreement pursuant to Section 18.

    a.  The Parties shall first attempt to agree on a neutral mediator. If the Parties cannot agree on a mediator within fifteen (15) days of receiving the written demand, a three-person mediation panel shall be selected as follows: each Party shall select a mediator and the two mediators selected by the Parties shall jointly select a third mediator.

    b.  Each Party shall be responsible for its own mediation costs, including legal fees. All other costs of mediation, including but not limited to the fees and charges of the mediator(s), if any, shall be shared equally by the Parties.

    c.  If the dispute has not been settled within thirty (30) days following receipt of a written mediation demand, or within such other period as the parties may agree in writing, either Party may enforce, modify, or terminate this Agreement pursuant to the provisions of Section 18.

18. **Enforcing, Modifying, or Terminating this Agreement:** This Agreement may be enforced, modified, or terminated as follows:

    a.  If a Relevant Federal Decision finds or determines that the State of Oklahoma and/or its political subdivisions have Criminal Jurisdiction over Indian defendants within the Nation's Reservation boundaries, the City's decisions regarding whether to initiate future prosecutions in State or Municipal Court and whether to refer tickets and charges to the Nation will be made as a matter of municipal policy and comity, at the City's sole discretion, rather than the terms of this

Agreement. In such case, either Party may terminate this Agreement or propose modifications to the Agreement to reflect the finding or determination of the Relevant Federal Decision. The Parties will work in good faith to incorporate such modifications to the extent necessary to conform the Agreement to the Relevant Federal Decision.

b. If either the Muscogee Nation Principal Chief or the Mayor of the City of Tulsa does not approve the report and plan described in Section 15, in writing, within one (1) year of the effective date of this Agreement, either Party may terminate this Agreement. The determination of whether to approve the report and plan will be at the discretion of the Principal Chief and the Mayor, based on each official's independent evaluation and assessment of progress toward achieving the goals of this Agreement and the viability of the plan relative to the risks and costs of continued litigation if this Agreement is terminated.

c. Should either Party fail to meet its obligations under this Agreement, either Party may request by Motion that the Court enforce, modify, or terminate this Agreement, provided that such Motion must represent to the Court that the Parties were unable to resolve the dispute after engaging in good faith negotiations and mediation regarding the disputed issues. Upon receipt of such Motion and any Responses and Replies to such Motion under the governing Federal Rules of Civil Procedure and Local Rules of the Court, the Court may enter an order enforcing, modifying, or terminating this Agreement.

Dated this 25th day of June, 2025.

CITY:

APPROVED AS TO FORM

_____
City Attorney

CITY OF TULSA, OKLAHOMA,
A municipal corporation

_____
Monroe Nichols IV, Mayor

JUN 2 4 2025

ATTEST:

_____
City Clerk

NATION:

_David W. Hill_

David W. Hill, Principal Chief
Muscogee (Creek) Nation