## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

MUSCOGEE (CREEK) NATION,
a federally recognized Indian Tribe,

        *Plaintiff*,

v.

CITY OF TULSA; MONROE NICHOLS IV,
in his official capacity as Mayor of City of
Tulsa; DENNIS LARSEN, in his official
capacity as Chief of Police, Tulsa Police
Department; and JACK BLAIR, in his official
capacity as City Attorney for City of Tulsa,

        *Defendants*.

Case No. 23-cv-490-JDR-CDL

**MUSCOGEE (CREEK) NATION'S COMBINED RESPONSE TO NOTICE OF
REQUIRED DISMISSAL OR MOTION TO INTERVENE BY GOVERNOR J. KEVIN
STITT AND MOTION TO INTERVENE BY DAMARIO SOLOMON-SIMMONS ET AL.**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 3

I.    No Basis Exists to Dismiss This Case for Non-Joinder of the State of Oklahoma. ........... 3

      A.    The State of Oklahoma Is Not a Required Party ..................................... 3

      B.    The State's Purported Sovereign Immunity Is No Bar to the Court's Adoption
            of the Parties' Joint Settlement Agreement. ............................................. 5

      C.    The State of Oklahoma Is Not Indispensable to this Suit. ....................... 9

            1.    The Parties' Joint Settlement Agreement Will Not Prejudice or the
                  Parties. ................................................................................................. 10

            2.    A Judgment Adopting the Parties' Joint Settlement Agreement
                  Would Be Adequate in the State's Absence. ...................................... 11

            3.    The Nation Will Have No Adequate Remedy if This Suit Is
                  Dismissed. ............................................................................................ 12

II.   The Governor Is Not Entitled To Intervene as of Right. ..................................... 13

      A.    The Governor Claims No Interest in This Suit That May Be Impaired
            by This Court's Adoption of the Joint Settlement Agreement in His
            Absence. ........................................................................................................ 13

      B.    The Governor Failed To Comply with Rule 24(c) ................................... 14

      C.    The Governor's Motion to Intervene is Untimely. ................................... 15

      D.    The Governor's Intervention Would Subvert the Purposes of Rule 24(a) ........... 16

III.  The Governor Is Not Entitled to Permissive Intervention Under Federal Rule of
      Civil Procedure 24(b). ............................................................................................ 17

IV.   MCIFB Has Identified No Permissible Basis for Intervention. ........................... 18

      A.    MCIFB Is Not Entitled To Intervene as of Right. .................................. 18

i

1.  MCIFB Claims No Interest in This Suit that May Be Impaired by This Court's Adoption of the Joint Settlement Agreement in Its Absence...................................................................................18

2.  MCIFB's Motion is Untimely...................................................................23

B.  MCIFB Is Not Entitled to Permissive Intervention Under Federal Rule of Civil Procedure 24(b)..............................................................................24

CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Abdulmutallab v. Sessions*,
Civil Action No. 17-cv-02493-RM-KMT, 2018 WL 11225244 (D. Colo. July 6, 2018) ........ 14

*Arostegui-Maldonado v. Garland*,
75 F.4th 1132 (10th Cir. 2023) ................................................. 9

*Bottoms v. Dresser Industries, Inc.*,
797 F.2d 869 (10th Cir. 1986) ................................................. 22

*Citizen Potawatomi Nation v. Norton*,
248 F.3d 993 (10th Cir. 2001) ............................................. 6, 10

*Citizenship Board of Muscogee (Creek) Nation v. Grayson*,
Case No.: SC-2023-10 (MCN Sup. Ct. May 13, 2025)...........................19

*City of Tulsa v. Tyson Foods, Inc.*,
No. 01-CV-0900-CVE-PJC, 2008 WL 185701 (N.D. Okla. Jan. 18, 2008)........................... 18

*Coalition of Arizona/New Mexico Counties v. Department of Interior*,
100 F.3d 837 (10th Cir. 1996) ......................................... 16, 21

*Copeland v. C.A.A.I.R., Inc.*,
Case No. 17-CV-564-TCK-JFJ, 2019 WL 4307125 (N.D. Okla. Sept. 11, 2019) .................... 5

*Davis ex rel. Davis v. United States*,
343 F.3d 1282 (10th Cir. 2003) ............................................. 11

*Davis v. United States*,
192 F.3d 951 (10th Cir. 1999) ............................................... 3

*Ex parte Young*,
209 U.S. 123 (1908)................................................. passim

*Federal Trade Commission v. Elite IT Partners, Inc.*,
91 F.4th 1042 (10th Cir. 2024) .............................................. 9

*Fowler v. Stitt*,
104 F.4th 770 (10th Cir. 2024) ............................................. 7

*Freeman v. Oklahoma ex rel. Department of Human Services*,
145 P.3d 1078 (Okla. 2006).................................................. 12

*Grayson v. Citizenship Board of Muscogee (Creek) Nation*,
Case No. CV-2020-34 (MCN Dist. Ct. Sept. 27, 2023) ..........................19

*Hill v. Kemp,*
    478 F.3d 1236 (10th Cir. 2007) ........................................................................... 7

*Idaho v. Coeur d'Alene Tribe of Idaho,*
    521 U.S. 261 (1997) ..................................................................................... 6, 7

*Imbler v. Pachtman,*
    424 U.S. 409 (1976) ......................................................................................... 6

*Independent School District No. 1 v. Sodexo Management, Inc.,*
    2019 WL 1933748 (N.D. Okla. May 1, 2019) ..................................................... 5

*Iowa Mutual Insurance Co. v. LaPlante,*
    480 U.S. 9 (1987) ........................................................................................... 19

*Kane County v. United States,*
    94 F.4th 1017 (10th Cir. 2024) ........................................................................ 15

*Kane County. v. United States,*
    928 F.3d 877 (10th Cir. 2019) .................................................................... 13, 23

*Lenon v. St. Paul Mercury Insurance Co.,*
    136 F.3d 1365 (10th Cir. 1998) ................................................................. 10, 11

*Local No. 93, International Association of Firefighters v. City of Cleveland,*
    478 U.S. 501 (1986) ....................................................................................... 16

*McGirt v. Oklahoma,*
    591 U.S. 894 (2020) ............................................................................... 1, 2, 25

*Miami County National Bank v. Bancroft,*
    121 F.2d 921 (10th Cir. 1941) ......................................................................... 14

*Muscogee (Creek) Nation v. Pruitt,*
    669 F.3d 1159 (10th Cir. 2012) ...................................................................... 6, 7

*Muscogee (Creek) Nation v. Tulsa County,*
    Case No. 4:25-cv-00075-GKF-JFJ (N.D. Okla. filed Feb. 13, 2025) ......................17

*Muscogee Creek Indian Freedmen Band, Inc. v. Bernhardt,*
    385 F. Supp. 3d 16 (D.D.C. 2019) ................................................................... 19

*Nielander v. Board of County Commissioners,*
    582 F.3d 1155 (10th Cir. 2009) ......................................................................... 6

*Northern Arapaho Tribe v. Harnsberger,*
    697 F.3d 1272 (10th Cir. 2012) ................................................................. 10, 11

*Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*,
   619 F.3d 1223 (10th Cir. 2010) ................................................................. 15, 16, 24

*Oklahoma v. Bull*,
   No. CF-2023-226 (Okla. Dist. Ct. Rogers Cnty.) ...................................................17

*Oklahoma v. Castro-Huerta*,
   597 U.S. 629 (2022) ................................................................................... 8, 9

*Oklahoma v. Williams*,
   No. CF-2023-311 (Okla. Dist. Ct. Rogers Cnty.) ...................................................17

*Osage Producers Association v. Jewell*,
   2016 WL 80660 (N.D. Okla. Jan. 7, 2016) ............................................................ 22

*Petuskey v. Rampton*,
   431 F.2d 378 (10th Cir. 1970) ............................................................................. 22

*Prime Healthcare Services-Shasta LLC v. Price*,
   2017 WL 2881447 (E.D. Cal. July 6, 2017) ......................................................... 15

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
   390 U.S. 102 (1968) ............................................................................................ 4

*Rishell v. Jane Phillips Episcopal Memorial Medical Center*,
   94 F.3d 1407 (10th Cir. 1996) ........................................................................ 3, 12

*Sac and Fox Nation of Missouri v. Norton*,
   240 F.3d 1250 (10th Cir. 2001) ......................................................................... 12

*Semtek International Inc. v. Lockheed Martin Corp.*,
   531 U.S. 497 (2001) ......................................................................................... 24

*Strain v. Regalado*,
   977 F.3d 984 (10th Cir. 2020) ............................................................................. 9

*Sutphen Estates v. United States*,
   342 U.S. 19 (1951) ........................................................................................... 22

*Tri-State Generation and Transmission Association, Inc. v. N.M. Public Regulation Commission*,
   787 F.3d 1068 (10th Cir. 2015) ......................................................................... 14

*Tri-State Truck Insurance, Ltd. v. First National Bank of Wamego*,
   2011 WL 4688857 (D. Kan. Oct. 5, 2011) ......................................................... 14

*U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*,
   513 U.S. 18 (1994) ........................................................................................... 12

*United States v. Albert Investment Co.*,
    585 F.3d 1386 (10th Cir. 2009) ......................................................... 13

*United States v. Ballard*,
    Case No. 4:24-CV-00626-CVE-SH (N.D. Okla. filed Dec. 23, 2024) .................... 17

*United States v. Iski*,
    Case No. 6:24-cv-00493-CVE (E.D. Okla. filed Dec. 23, 2024) .......................... 17

*United States v. Prentiss*,
    273 F.3d 1277 (10th Cir. 2001) ......................................................... 20

*Utah Association of Counties v. Clinton*,
    255 F.3d 1246 (10th Cir. 2001) ......................................................... 15

*Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*,
    790 F.3d 1000 (10th Cir. 2015) ....................................................... 8, 9

*Verizon Maryland, Inc. v. Public Service Commission*,
    535 U.S. 635 (2002) .................................................................. 7, 8

*Western Energy Alliance v. Zinke*,
    877 F.3d 1157 (10th Cir. 2017) ..................................................... 21, 23

*Wildearth Guardians v. U.S. Forest Service*,
    2020 WL 5134221 (D. Colo. Mar. 30, 2020) ............................................ 21

*Younger v. Harris*,
    401 U.S. 37 (1971) ................................................................... 7, 8

**Statutes and Constitutional Provisions**

18 U.S.C. § 1151 .......................................................................... 25

42 U.S.C. § 1983 ........................................................................... 6

Muscogee (Creek) Nation Const. art. III, § 2 ............................................... 20

Okla. Stat. Ann. tit. 12, § 2019 .......................................................... 12

**Rules**

Federal Rule of Civil Procedure 19 .................................................... passim

Federal Rule of Civil Procedure 24 .................................................... passim

**Regulations**

58 Fed. Reg. 14,248 (1993) ............................................................... 21

58 Fed. Reg. 14,252 (1993) ...........................................................................................21

**Other Authorities**

https://www.sos.ok.gov/documents/filelog/63941.pdf ................................................... 2

Brief of Amici Curiae Tom Cole et al.,
    *McGirt v. Oklahoma,* No. 18-9526, 2020 WL 703876 ........................................... 1

## INTRODUCTION

The Muscogee (Creek) Nation ("Nation") initiated this suit to vindicate what it believes to be its rights of sovereignty and jurisdiction within its Reservation as reaffirmed by the Supreme Court in *McGirt v. Oklahoma*, 591 U.S. 894 (2020). The City of Tulsa and the official capacity defendants ("Tulsa") took a different view of the jurisdictional rules that govern within the Creek Reservation. Now, after months of good-faith negotiations, the parties have determined that resolving their differences as courtroom adversaries is not the preferred path. They have chosen instead to embrace what the Supreme Court in *McGirt* endorsed as the proven potential for tribal and non-tribal governments to "work successfully together as partners" in a "spirit of good faith, comity and cooperative sovereignty" toward a "shared future" of robust law enforcement and public safety for the people they serve, Indians and non-Indians alike, throughout the lands they share. *Id*. at 936–37 & n.16 (quotation marks omitted).[1]

In that same spirit of cooperative sovereignty, under the existing cross-deputization agreement between the Nation and Tulsa (and to which the State, numerous Oklahoma agencies and subdivisions, and the United States Bureau of Indian Affairs are also parties), the Nation's Lighthorse Police Department refers all criminal matters involving non-Indian defendants arising within that portion of Tulsa that falls within the Creek Reservation to the Tulsa Police Department, and Tulsa generally refers such criminal matters involving Indian defendants to the

---

[1] *McGirt*'s endorsement of cooperative governance in Oklahoma relied in part on an amicus brief filed by "a former Governor, state Attorney General, cabinet members, and legislators of the State of Oklahoma" and two tribal nations, with "hands-on experience in resolving jurisdictional issues that arise … in the delivery of governmental services by state, local, and tribal authorities in eastern Oklahoma." Brief of Amici Curiae Tom Cole et. al, *McGirt* (No. 18-9526), 2020 WL 703876, at *1 (stating that "cooperation between tribal and state officials … has served their citizens well," *id*., by ending "jurisdictional standoffs," *id*. at *15, and "providing clear lines of authority for law enforcement to act when necessary," *id*. at *20–21, which "*reduces* jurisdictional confusion … and in so doing enhances public safety," *id*. at *22).

Nation. *See* Decl. of Att'y Gen. Geraldine Wisner ¶¶ 13–15, 21, 25. The exception to this cooperation has been traffic offenses involving Indian defendants, which Tulsa, prior to this suit, had declined to refer to the Nation. *Id*. ¶ 22. Now, under the parties' Joint Settlement Agreement, Tulsa has agreed that "it will not exercise Criminal Jurisdiction over Indian Defendants on the Nation's Reservation," Joint Settlement Agreement ("Agreement") ¶ 8, and will instead "refer all [pending and] future charges and tickets against known Indian defendants for conduct occurring within the Nation's Reservation to the Nation," *id.* ¶ 12; and the parties have submitted to the Court a Proposed Order implementing their Agreement. Integral to the Agreement, the parties will "establish a joint working group to assess the parties' shared governance needs and goals, and to evaluate and recommend additional practices, policies, and cooperative agreements to achieve their joint public safety and law enforcement priorities." Agreement ¶15. The parties' choice to prioritize cooperation and mutual respect over corrosive and costly jurisdictional competition and litigation is precisely the path urged by the Supreme Court in *McGirt*.

Nevertheless, Governor Stitt ("Governor"), along with Mr. Solomon-Simmons and the Muscogee Creek Indian Freedmen Band (collectively "MCIFB"), seek to upend the parties' settlement by entering this litigation at the eleventh hour. As demonstrated below, the Court should reject their efforts and approve the terms of the parties' settlement. The parties' Agreement is in the public interest, *see supra* n.1; *McGirt*, 591 U.S. at 936–37 & n.16, and it is lawful.[2] Moreover, approving the Agreement will require this Court to make no findings of fact

---

[2] *See* https://www.sos.ok.gov/documents/filelog/63941.pdf at 1 (Recitals stating federal, tribal, and state law authorization for cooperative governance agreements between the Creek Nation, the United States, and the State of Oklahoma and its political subdivisions); *id.* at 13–15 (executed signature pages for the Nation, the United States, and the State of Oklahoma, including the Governor and the Chair of the State's Joint Commission on State-Tribal Relations); *id.* at page preceding 1 (executed signature page for Tulsa).

or conclusions of law regarding the merits of the parties' initial jurisdictional dispute as to whether state (and hence, municipal) criminal jurisdiction extends to Indians in Indian country. This Court's approval of the Agreement and entry of the Proposed Order, and its corresponding dismissal of this suit, will accordingly have no impact on the rights or interests of the Governor, the State of Oklahoma, or the MCIFB. The Agreement will not bind any of them and does not speak in any way to, much less impair, their legal rights or interests—whether that be the sovereignty and jurisdiction of the State of Oklahoma or the legal status of the Creek Freedmen under federal or Nation law. The Agreement simply commits the Nation and Tulsa to taking fuller advantage of the opportunities for jurisdictional cooperation that have been available under federal, state, and tribal law since long before this lawsuit began. *See supra* n.2.

## ARGUMENT

I.      **No Basis Exists To Dismiss This Case for Non-Joinder of the State of Oklahoma.**

A.      **The State of Oklahoma Is Not a Required Party.**

The Governor contends that, in lieu of approving the parties' settlement, this suit must be dismissed under Federal Rule of Civil Procedure 19 for nonjoinder of Oklahoma. Gov. Mot. 5–15. Under Rule 19, a person is required if "the person claims an interest relating to the subject of the action and … dispos[ing] of the action in the person's absence may … as a practical matter impair or impede the person's ability to protect that interest[.]" *Davis v. United States*, 192 F.3d 951, 957 (10th Cir. 1999) (quoting Fed. R. Civ. P. 19(a). Under Rule 19, "[t]he moving party has the burden of persuasion in arguing for dismissal." *Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1411 (10th Cir. 1996) (citation omitted).

The Governor cannot carry this burden. He contends that the State's absence will "impede the State's sovereign interest in enforcing its laws, using its police powers, and

3

protecting its citizens, as well as the Governor's particular interest in upholding the laws of the State." Gov. Mot. 7. In support, he contends that this suit "challenges the State and its political subdivisions' sovereign right to exercise criminal jurisdiction within the State's territory," *id*., including its "concurrent criminal jurisdiction [i.e., concurrent with that of the Nation] to prosecute traffic offenses" involving Indian defendants within the Creek Reservation, *id*. at 14.

None of this reflects the present posture of this case. Courts must remain cognizant of the fact that a judgment "may not in fact affect the interest of any outsider even though there existed," at one time, "a possibility that a judgment affecting his interest would be rendered." *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 111 (1968). Here, when the Governor filed his Rule 19 notice, the case had been stayed and the parties were actively engaged in settlement negotiations that have now borne fruit such that the jurisdictional dispute identified by the Governor as the basis for his claimed interest is no longer at issue. In agreeing to settle this case, Tulsa has not ceded its claim to state-derived concurrent jurisdiction to prosecute Indians for traffic offenses within the Creek Reservation. It has instead made a policy determination not to exercise any jurisdiction that it may possess and instead to refer such cases to the Nation as part of the parties' commitment to cooperative criminal law enforcement—as encouraged by the Supreme Court and as already authorized by state and federal law since before this suit began. *See supra* n.2 (citing inter-governmental law enforcement agreement to which Tulsa, the Nation, the United States, and Oklahoma are signatories).

Thus, the parties' Agreement and the Proposed Order will not bind the State or require this Court to address the legal issues raised in the Nation's Complaint and invoked by the Governor as the bases for his claimed interests. Instead, the Agreement acknowledges that "Federal and State of Oklahoma courts have issued conflicting opinions regarding State and

4

municipal Criminal Jurisdiction over Indian defendants," Agreement ¶ 7(d); that "[c]ases are pending which, if appealed to the United States Supreme Court, may resolve or reconcile the conflicting opinions of federal and state courts," *id.* ¶ 7(e); and that the parties have chosen to settle their present dispute "in lieu of litigating" the disputed jurisdictional questions that gave rise to this suit, *id.* ¶ 8.

Accordingly, while the Nation continues to believe that Tulsa does not enjoy state-derived concurrent jurisdiction to prosecute Indians for conduct arising within the Creek Reservation, that issue is no longer a live dispute in this case. And nothing about Tulsa's decision to refrain from asserting any such jurisdiction, or this Court's approval of the parties' Agreement implementing that decision, will render it a live dispute or impede the ability of the Governor or of local district attorneys to claim that the State enjoys such jurisdiction in eastern Oklahoma as a matter of federal law, as they are presently doing in other federal and state cases where the issue is joined.

Because the Governor claims no interests subject to potential impairment by this case, he is not a required party under Rule 19. *See Indep. Sch. Dist. No. 1 v. Sodexo Mgmt., Inc.*, Case No. 19-CV-0161-CVE-JFJ, 2019 WL 1933748, at *2 (N.D. Okla. May 1, 2019) (absent parties not required under Rule 19 because "neither … has any interest that would be impaired if this case proceeds without joining them as parties"); *Copeland v. C.A.A.I.R., Inc.*, Case No. 17-CV-564-TCK-JFJ, 2019 WL 4307125, at *12 (N.D. Okla. Sept. 11, 2019) (Oklahoma not required under Rule 19 because it had "no interest" in outcome of case).

### B.    The State's Purported Sovereign Immunity Is No Bar to the Court's Adoption of the Parties' Joint Settlement Agreement.

Because the State is not a required party, the Court need not reach the Governor's argument that its joinder is not feasible because of the State's purported immunity. *See Citizen*

5

*Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001) (if the absent person is deemed required, "the court must *then* determine whether joinder is feasible" (emphasis added) (quotation marks omitted)).

And the Governor's argument lacks merit in any event. The Governor claims that Oklahoma could not be joined because "[t]his suit challenges the very act of prosecution, which is squarely foreclosed by prosecutorial immunity and is absolute." Gov. Mot. 9 (citing *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009). But *Nielander* involved a claim for monetary damages under 42 U.S.C. § 1983, *see* 582 F.3d at 1163, as did the case *Nielander* cites for the statement quoted by the Governor, *see Imbler v. Pachtman*, 424 U.S. 409, 420 (1976) (discussing prosecutorial "immunity from § 1983 suits for damages"). By contrast, the Nation brought claims for prospective relief against official capacity defendants for ongoing violations of federal law. *See* Compl. (Dkt. 2) ¶¶ 46–50 and Prayer for Relief. Under *Ex parte Young*, 209 U.S. 123 (1908), state immunity does not bar such suits. *See Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (stating same).

The Governor claims that the Nation's suit falls outside the ambit of *Ex Parte Young*. He first asserts that the "special sovereignty interests" principle identified by the Supreme Court in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997), provides an exception to *Ex parte Young*. According to the Governor:

> [L]ike in *Coeur d'Alene*, this unusual suit challenging the very core of the State's exercise of police power "implicates special sovereignty interests." 521 U.S. at 281. The effect of this lawsuit would burden the State's police power and shift that power away from the State. Just as in *Coeur d'Alene*, this "troubling" case seeks "far-reaching and invasive relief" that effectively would determine that certain lands and criminal offenses "are not even within the [criminal] jurisdiction of the State." *Id.* at 282. Put differently, "[t]he requested injunctive relief would bar the State's principal officers from exercising their governmental powers and authority over the disputed lands .…" *Id.*

6

Gov. Mot. 10–11 (brackets in original). Once again, none of this reflects the present posture of this case. The parties have entered their Joint Settlement Agreement, which they have asked the Court to adopt on terms that require this Court to take no position on the jurisdictional issues on which the Nation premised its Complaint. *See supra* p. 4-5.

But even had the parties not entered such an agreement, the Governor's arguments would miss the mark. In *Verizon Maryland, Inc. v. Public Service Commission*, 535 U.S. 635 (2002), the Supreme Court held that in assessing the applicability of *Ex parte Young*, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id*. at 645 (brackets in original) (quotation marks omitted); *see Fowler v. Stitt*, 104 F.4th 770, 782 (10th Cir. 2024) (same). As the Tenth Circuit has repeatedly explained (in cases to which Oklahoma's top officials have been party), to the extent *Coeur d'Alene* required federal courts "[to] examine whether the relief sought against a state official implicates special sovereignty interests, we recognize today that *Verizon Maryland* abrogated this step," *Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007) (brackets in original) (quotation marks and citation omitted); *see also Pruitt*, 669 F.3d at 1167 n.4 ("[I]n *Verizon*, the Supreme Court stated that [the special sovereignty interests] inquiry was no longer required under an *Ex parte Young* analysis."). The Governor's "special sovereignty interests" argument is a dead letter.

The Governor next asserts that the Nation "cannot establish the mere prosecution of traffic offenses within the State *violates federal law*—and binding precedent squarely forecloses a contrary conclusion." Gov. Mot. 12 (citing *Younger v. Harris*, 401 U.S. 37, 46 (1971)). As an initial matter, the Supreme Court has been clear that "the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim.… An *allegation* of an

7

ongoing violation of federal law … is ordinarily sufficient[.]" *Verizon Md.*, 535 U.S. at 646 (ellipses in original) (quotation marks omitted); *see* Dkt. 2 ¶ 9 (alleging ongoing violation of federal law).

Moreover, the Governor's argument that "binding precedent squarely forecloses" any claim that state prosecution of Indians for traffic offenses can be considered a violation of federal law for *Ex parte Young* purposes is simply incorrect. *Younger*, in the quote relied on by the Governor, simply states that irreparable harm is required for a federal court to enjoin a state prosecution. *See* Gov. Mot. 12 (quoting *Younger*, 401 U.S. at 46). In *Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*, 790 F.3d 1000 (10th Cir. 2015) (Gorsuch, J.), Utah and a political subdivision sought to prosecute an Indian for state traffic offenses within the Ute Tribe's reservation. The Tenth Circuit concluded that the prosecution violated federal law because "unless Congress provides an exception to the rule—and it hasn't here—states possess no authority to prosecute Indians for offenses in Indian country," *id*. at 1004 (quotation marks omitted), and that doing so constituted irreparable harm to tribal self-government, *id*. at 1005–06.

The Governor cites only one case post-dating *Ute Indian Tribe* in support of his argument. *See* Gov. Mot. 12–13 (discussing *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022)). But *Castro-Huerta* involved state jurisdiction over *non*-Indians and repeatedly disclaims any intent to reach the question of state criminal jurisdiction over Indians. *See, e.g.*, 597 U.S. at 648 (referring to state criminal jurisdiction over non-Indians as "the narrow jurisdictional issue in this case" and distinguishing it from "other crimes committed in Indian country, such as crimes committed by Indians"); *id*. at 639 n.2 (describing state jurisdiction "over crimes committed by Indians" as "a question not before us"); *id.* at 650 n.6 ("*We express no view* on state jurisdiction

over a criminal case of that kind." (emphasis added)); *id.* at 655 n.9 ("*To reiterate*, we do not take a position on that question." (emphasis added)).

Given *Castro-Huerta*'s repeated limitation of the reach of its reasoning, this Court would lack authority to depart from *Ute Indian Tribe* based on the view that *Castro-Huerta* somehow undermined it. Even a Tenth Circuit panel may not depart from prior Circuit precedent based on a subsequent Supreme Court decision unless the decision "clearly overrule[s] our precedent[.]" *Arostegui-Maldonado v. Garland*, 75 F.4th 1132, 1142 (10th Cir. 2023) (quotation marks omitted). Accordingly, Tenth Circuit precedents "remain good law unless the Supreme Court has *indisputably and pellucidly abrogated* them." *Fed. Trade Comm'n v. Elite IT Partners, Inc.*, 91 F.4th 1042, 1051 (10th Cir. 2024) (emphasis added) (quotation marks omitted), *cert. denied*, 145 S. Ct. 150 (2024); *see also, e.g.*, *Strain v. Regalado*, 977 F.3d 984, 993 (10th Cir. 2020) (where Supreme Court decision does not "pronounce its application" to an issue, "we cannot overrule our precedent on this issue"). Far from "pronounc[ing] its application" to state criminal jurisdiction over Indians in Indian country, *Castro-Huerta* "express[es] no view on state jurisdiction over a criminal case of that kind," 597 U.S. at 650 n.6.

In sum, *Ute Indian Tribe* remains controlling and renders beyond dispute that the Nation has adequately alleged an ongoing violation of federal law sufficient to trigger the *Ex parte Young* exception to any claim by Oklahoma that its immunity should prevent this Court from approving the parties' Joint Settlement Agreement.

## C.    The State of Oklahoma Is Not Indispensable to this Suit.

Even were the State a required party and its joinder infeasible, neither of which is true, the State would not properly be deemed indispensable such that the Court could not "in equity and good conscience" approve the parties' Joint Settlement Agreement in the State's

absence, *N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1278 (10th Cir. 2012) (quoting Rule 19(b)). In assessing indispensability under Rule 19(b), courts examine:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001) (quoting Fed. R. Civ. P. 19(b)). "As the party seeking dismissal for inability to join an allegedly indispensable party, [the Governor] has the burden of persuasion." *Lenon v. St. Paul Mercury Ins. Co.*, 136 F.3d 1365, 1372 (10th Cir. 1998). He cannot carry it.

### 1. The Parties' Joint Settlement Agreement Will Not Prejudice Oklahoma or the Parties.

The Governor states that allowing the case to proceed to a settlement will prejudice the parties "and the State of Oklahoma." Gov. Mot. 15. This argument has no merit. The prejudice inquiry under Rule 19(b) "is essentially the same as the inquiry under Rule 19(a)(2)(i) into whether continuing the action without a person will, as a practical matter, impair that person's ability to protect his interest relating to the subject of the lawsuit." *N. Arapaho Tribe*, 697 F.3d at 1282 (citation omitted). As addressed above, the State has no interests that could be impaired by this Court's approval of the parties' Joint Settlement Agreement and its entry of the Proposed Order. Neither the Agreement nor the Order binds the State or requires the Court to take a position on state or municipal criminal jurisdiction in Indian country. *See supra* p. 4-5; *see also N. Arapaho Tribe*, 697 F.3d at 1282 (prejudice can be avoided "by tailoring the judgment or relief").

With respect to prejudice to the existing parties, the Governor asserts:

10

> Those parties will be deprived of finality and receive an inadequate remedy that will be subject to actual or effective vacatur through a collateral lawsuit at some point in the future. Any findings or conclusions from this Court will be challenged, effectively annulled, or potentially lead to inconsistent and diverging obligations between other courts.

Gov. Mot. 15.

This argument again incorrectly assumes that a settlement of this case will require this Court to rule on the jurisdictional dispute that gave rise to this suit. It will not. The parties' Agreement and the Proposed Order take those questions off the table. Indeed, the Agreement expressly acknowledges that those same questions are presently pending in state and federal courts and provides that the parties may revisit the Agreement to account for potential future changes in governing law. Agreement ¶¶ 7(e), 18(a). In other words, the parties have "tailor[ed] the … relief" they ask this Court to adopt, *N. Arapaho Tribe*, 697 F.3d at 1282, in a way that wholly eliminates the very risks invoked by the Governor.

### 2.    A Judgment Adopting the Parties' Joint Settlement Agreement Would Be Adequate in the State's Absence.

Under Rule 19(b), courts consider whether a judgment will be adequate in the movant's absence, focusing on the interests "of the courts and the public in complete, consistent, and efficient settlement of controversies[.]" *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1293 (10th Cir. 2003) (citation omitted). "As the party seeking dismissal" under Rule 19, the Governor again "has the burden of persuasion" on this factor, *Lenon*, 136 F.3d at 1372, but he nowhere even mentions it, *see* Gov. Mot. 14–15.

Nor could he carry that burden. This Court's approval of the parties' Joint Settlement Agreement and issuance of the Proposed Order will further the interests of the public and the courts in the "complete, consistent, and efficient" resolution of disputes because those acts will render moot all disputed issues between the parties without further costly litigation in this Court

11

and on appeal, *see U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 28 (1994) ("judicial economies achieved by settlement" are highest "at the district-court level"). And they will require this Court to take no position on any jurisdictional questions involving Tulsa, the State, or any other political subdivision of the State, eliminating all risk of inconsistency with other court judgments and allowing the parties to adjust their Agreement if necessary to account for any future changes to governing law.

### 3.    The Nation Will Have No Adequate Remedy if This Suit Is Dismissed.

Rule 19(b) also requires courts to consider "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(4). The Governor, who again bears the burden of persuasion, makes no argument that the Nation will have an adequate remedy in an alternative forum if the Court declines to approve the parties' Joint Settlement Agreement and instead dismisses this case for failure to join Oklahoma. Oklahoma's law on joinder is materially identical to Rule 19. *Compare* Okla. Stat. Ann. tit. 12, § 2019 ("joinder of persons needed for just adjudication"), *with* Fed. R. Civ. P. 19. And Oklahoma courts recognize Oklahoma's sovereign immunity to unconsented suits in its own courts on issues arising under federal law. *See, e.g.*, *Freeman v. Oklahoma ex rel. Dep't of Hum. Servs.*, 145 P.3d 1078 (Okla. 2006). If the Governor succeeds in having this case dismissed for non-joinder of the State under Rule 19, nothing will stop the Governor from raising identical arguments in the state courts to foreclose an action there by the Nation. This factor counsels strongly against dismissal. *See Rishell*, 94 F.3d at 1413 ("The absence of an alternative forum would weigh heavily, if not conclusively against dismissal[.]"); *Sac and Fox Nation of Mo. v. Norton*, 240 F.3d 1250, 1260 (10th Cir. 2001) (same).

*        *        *

12

In sum, the Governor has identified no plausible basis for his claim that Oklahoma is a necessary party whose joinder is infeasible such that the Court cannot in equity and good conscience approve the parties' Joint Settlement Agreement in Oklahoma's absence.

## II.    The Governor Is Not Entitled To Intervene as of Right.

The Governor next contends that he is entitled to intervene as a party under Federal Rule of Civil Procedure 24(a)(2). Gov. Mot. 15–22. This argument likewise lacks merit.

### A.    The Governor Claims No Interest in This Suit That May Be Impaired by This Court's Adoption of the Joint Settlement Agreement in His Absence.

The Governor must establish that he "claims an interest relating to … the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest[.]" Fed. R. Civ. P. 24(a)(2). "[P]ractical judgment must be applied in determining whether the strength of the interest and the potential risk of injury to that interest justify intervention." *United States v. Albert Inv. Co.*, 585 F.3d 1386, 1392 (10th Cir. 2009) (citation omitted); *see also, e.g.*, *Kane Cnty. v. United States*, 928 F.3d 877, 890 (10th Cir. 2019) ("[C]ase developments can alter the intervention calculus.").

Here, as with his Rule 19 argument, the Governor asserts interests that are at no risk of impairment by virtue of the parties' settlement. *See*, *e.g.*, Gov. Mot. 18 ("The State has a direct, substantial, and legally protected interest in the subject of the action … because the Complaint challenges Tulsa's exercise of powers that directly flow from the State."). As discussed, the Joint Settlement Agreement and the Proposed Order do not implicate any asserted State interests because neither requires this Court to take any position on state or municipal jurisdiction over Indians within the Creek Reservation. *See supra* p. 4-5. The Governor has not argued that it is unlawful for Tulsa to refer Indian traffic offenses to the Nation under the existing cross-deputization agreement to which the State itself is a signatory, *see supra* n.2, and under which

13

Tulsa has for years been referring far more serious criminal offenses involving Indian defendants to the Nation, *see* Wisner Decl. ¶ 21, without objection from the State. And as discussed above, nothing about the Agreement and the Proposed Order has any bearing on the ability of the State or its local district attorneys to adhere to their own views of the State's jurisdiction. *See supra* p. 4-5.

Because the Governor has not identified an interest that may be impaired by this Court's adoption of the parties' Joint Settlement Agreement, he cannot satisfy Rule 24(a)(2). *See Tri-State Generation and Transmission Ass'n, Inc. v. N.M. Pub. Regul. Comm'n*, 787 F.3d 1068, 1071 (10th Cir. 2015) (under Rule 24(a)(2), putative intervenor "*must establish* an interest in … the action that might be impaired by the action's disposition" (emphasis added)).

**B.    The Governor Failed To Comply with Rule 24(c).**

Rule 24(c) requires that the intervention motion "must … be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). "The purpose" of this requirement "is to enable the court to determine whether the applicant has the right to intervene, and, if not, whether permissive intervention should be granted." *Miami Cnty. Nat. Bank v. Bancroft*, 121 F.2d 921, 926 (10th Cir. 1941).

The Governor did not attach a pleading to his motion spelling out the particular claim or defense he seeks to press in this case. This alone is sufficient grounds to deny his motion. *See id*. (affirming denial of intervention where no pleading filed with motion); *see also Abdulmutallab v. Sessions*, Civil Action No. 17-cv-02493-RM-KMT, 2018 WL 11225244, at *1 (D. Colo. July 6, 2018) ("Mr. Salim fails to provide a pleading identifying the claims for which intervention is sought. On this basis alone, Mr. Salim's Motion may be denied."); *Tri-State Truck Ins., Ltd. v. First Nat. Bank of Wamego*, No. 09-4158-SAC, 2011 WL 4688857, at *3 (D. Kan. Oct. 5, 2011)

14

("In the Tenth Circuit, as in several other jurisdictions," failure to comply with Rule 24(c)'s pleading requirement "can be fatally defective").

### C.    The Governor's Motion To Intervene Is Untimely.

A putative intervenor under Rule 24(a) "must establish … that the application is timely[.]" *Kane Cnty. v. United States*, 94 F.4th 1017, 1029–30 (10th Cir. 2024). This requirement is "a guard against prejudicing the original parties by the failure to apply sooner," and "[t]he analysis is contextual," *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (citation omitted), and "determined in light of all of the circumstances," *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010) (quotation marks omitted)).

Here, the Nation filed this suit in November 2023. The Governor makes no claim that he was unaware of the suit in the intervening year and a half. He in fact acknowledges that "the State sat on the sidelines until now" because it "was optimistic that the case would be dismissed[.]" Gov. Mot. 21. This is not a cognizable basis to justify the Governor's delay; nor is the assertion that the Governor was "hesitan[t] to get involved" until he became aware of the possibility of the parties' settlement, *id.* "Settlement of a civil action before judgment is a specter that lurks in virtually every case" from its onset. *Prime Healthcare Servs.-Shasta LLC v. Price*, No. 2:17-cv-00069-TLN-KJN, 2017 WL 2881447, at *6 (E.D. Cal. July 6, 2017).

Moreover, there is significant prejudice to the parties from the Governor's delay. After months of good-faith negotiations undertaken while the Governor "sat on the sidelines" because he was "optimistic" the case would be dismissed, Gov. Mot. 21, the parties have resolved their dispute and presented this Court with an executed Joint Settlement Agreement containing carefully considered mechanisms for cooperative governance. While "[i]t has never been

supposed that … an intervenor … could preclude other parties from settling their own disputes and thereby withdrawing from litigation," *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 528–29 (1986), the Governor seeks to do just that—that is, to blow up the parties' hard-won compromise and resurrect the jurisdictional disputes that they have expended such effort to resolve. *See Tyson Foods*, 619 F.3d at 1237 ("The purpose of the basic requirement that the application to intervene be timely is to prevent last minute disruption of painstaking work by the parties[.]" (citation omitted)).

The Governor also contends that the parties will be prejudiced if his eve-of-settlement intervention is denied because "this case will be subject to immediate collateral attack by the State" and "[i]t will cost the parties more time and money in a different venue to re-litigate *the same underlying issue* with the necessary and proper parties." Gov. Mot. 22 (emphasis added). This argument again incorrectly assumes that the Agreement and Proposed Order implicate "the same underlying issue" raised in the Nation's Complaint—i.e., the disputed Indian country jurisdictional issue. But again, the terms of the parties' settlement require this Court to make no jurisdictional ruling whatsoever that the State might collaterally attack.

We are left here with the Governor's last-minute effort to invalidate a fully negotiated and executed settlement agreement that binds only the Nation and Tulsa and that in no way speaks to, much less calls into question, the sovereignty, jurisdiction, or other authority of the State.

### D.    The Governor's Intervention Would Subvert the Purposes of Rule 24(a).

As the Tenth Circuit has explained, "[t]he purpose of Rule 24(a)" is "the prevention of a multiplicity of suits where common questions of law or fact are involved[.]" *Coal. of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996)

16

(quotation marks omitted). There presently exist a multiplicity of state and federal cases in which assertions of criminal jurisdiction over Indians by the State and its subdivisions are being litigated.[3] As initially filed, this case was among that host of suits. But now, approval of the parties' settlement by this Court would result in a decrease in the number of suits raising the jurisdictional issue, with a corresponding decrease in the potential for inconsistent rulings—and thereby advance the purpose of Rule 24(a). Allowing the Governor to instead intervene in this case to thwart settlement and revive the jurisdictional disputes would subvert that same purpose by adding this case to the number of suits in which such disputes are pending.

*      *      *

In sum, the Governor has no interest that will be impaired by the Court's adoption of the parties' Agreement, his motion is untimely, and intervention would subvert the purposes of Rule 24(a). The Governor is accordingly not entitled to intervention as of right under Rule 24(a)(2).

### III.    The Governor Is Not Entitled to Permissive Intervention Under Federal Rule of Civil Procedure 24(b).

Federal Rule of Civil Procedure 24(b) gives courts discretion to allow permissive intervention where the motion is timely, *id*. 24(b)(1), and the putative intervenor "has a claim or defense that shares with the main action a common question of law or fact," *id*. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id*. 24(b)(3).

---

[3] *See United States v. Ballard*, 4:24-CV-00626-CVE-SH (N.D. Okla. filed Dec. 23, 2024) (Consolidated Cases); *United States v. Iski*, 6:24-cv-00493-CVE (E.D. Okla. filed Dec. 23, 2024) (Consolidated Cases); *Muscogee (Creek) Nation v. Tulsa County*, Case No. 4:25-cv-00075-GKF-JFJ (N.D. Okla. filed Feb. 13, 2025); *Oklahoma v. Bull*, CF-2023-226 (Okla. Dist. Ct. Rogers Cnty.); *Oklahoma v. Williams*, CF-2023-311 (Okla. Dist. Ct. Rogers Cnty.).

The Governor's sole argument for permissive intervention is: "This lawsuit challenges the State or its subdivision's sovereign right to exercise criminal jurisdiction within its territory. That is the very claim the State seeks to defeat through … intervention." Gov. Mot. 23. But the parties' Joint Settlement Agreement has taken the jurisdictional issues off the table and requires this Court to render no decision on those issues. The Governor therefore cannot assert the requisite "claim or defense that shares with the main action a common question of law or fact," Rule 24(b)(1)(B).

Moreover, the Governor failed to set forth any such claim or defense in a separate pleading, as required by Rule 24(c), and his motion can be denied on that basis alone. *See supra* pp. 14–15. Further, his motion is untimely because it will "unduly delay or prejudice the adjudication of the original parties' rights," Rule 24(b)(3), for the same reasons stated above, *see supra* pp. 15–16. It can likewise be denied on that basis alone. *See City of Tulsa v. Tyson Foods, Inc.*, No. 01-CV-0900-CVE-PJC, 2008 WL 185701, at *4 (N.D. Okla. Jan. 18, 2008) ("[P]ermissive intervention … is proper only where the application was timely[.]" (brackets in original) (citation omitted)).

## IV.     MCIFB Has Identified No Permissible Basis for Intervention.

### A.     MCIFB Is Not Entitled To Intervene as of Right.

#### 1.     MCIFB Claims No Interest in This Suit that May Be Impaired by This Court's Adoption of the Joint Settlement Agreement in Its Absence.

MCIFB asserts that it has a "stake in the outcome" of this case, MCIFB Mot. 1, and that "intervention is necessary … because the MCN [i.e., the Nation] unlawfully maintains that [Mr. Solomon-Simmons] and other similarly situated Creek Freedmen are neither Indian nor citizens of MCN." *id.* at 3. Therefore, "[i]f he and the MCIFB are not allowed to intervene, a potentially

18

adverse result is likely to cause him and other similarly situated Creek Freedmen to suffer injustice at the hands of both the MCN and [Tulsa]." *Id.* at 9. This argument has no merit.

    <u>First</u>, for context, MCIFB and several of its individual members, represented by Mr. Solomon-Simmons, filed suit in 2018 in the United States District Court for the District of Columbia against the Nation and the United States, asserting that MCIFB members are entitled to Creek citizenship under Nation and federal law. *See Muscogee Creek Indian Freedmen Band, Inc. v. Bernhardt*, 385 F. Supp. 3d 16, 18 (D.D.C. 2019). The court dismissed the suit without prejudice for failure to exhaust tribal court remedies. *See id.* at 24, 28 (stating that "issues of tribal citizenship are of the type which should first be decided through the tribal administrative and judicial process" and that plaintiffs were therefore "required to exhaust their tribal remedies prior to bringing suit in this Court"). Accordingly, individual MCIFB members who were plaintiffs in that federal suit, again represented by Mr. Solomon-Simmons, then initiated proceedings before the Nation's Citizenship Board and the Nation's tribal court. The tribal court found in their favor. *See Grayson v. Citizenship Bd. of Muscogee (Creek) Nation*, Case No. CV-2020-34 (MCN Dist. Ct. Sept. 27, 2023). The matter is presently on appeal before the Nation's Supreme Court, where it has been fully briefed and oral argument was held on June 10, 2025.[4] MCIFB's attempt to intervene in this case can hence be viewed as an effort to circumvent another federal court's tribal exhaustion requirement by filing suit in this Court on the same issue for which exhaustion was ordered by the other court but not yet completed. *See, e.g.*, *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 17 (1987) ("Until appellate review is complete, the Blackfeet

---

[4] *See Citizenship Bd. of Muscogee (Creek) Nation v. Grayson*, Case No.: SC-2023-10 (MCN Sup. Ct. May 13, 2025) (scheduling order), https://www.creeksupremecourt.com/wp-content/uploads/Doc.-47-Order-Granting-Appellants-Partially-Opposed-Motion-05132025.pdf.

Tribal Courts have not had a full opportunity to evaluate the claim and federal courts should not intervene.").

Second, MCIFB cannot identify an interest subject to potential impairment because nothing about this case involves any dispute or claim related in any way to the requirements for "Indian" status under federal law or "citizen" status under Nation law and this Court will have no occasion to render any ruling even remotely related to those issues. *See United States v. Prentiss*, 273 F.3d 1277, 1280, 1282 (10th Cir. 2001) (stating that "Indian status" under federal law "is extraordinarily complex" and setting forth applicable analytic framework); MCN Const. art. III, § 2 (defining Nation citizenship requirements).[5] If this Court approves the parties' Joint Settlement Agreement—under which Tulsa agrees not to prosecute "Indians" for conduct arising within the Creek Reservation—that ruling can and will have no impact whatsoever on MCIFB's or its members' rights or opportunities to claim Indian status or eligibility for Nation citizenship in any context or forum, including in the Nation's Supreme Court, where its claims are presently pending, or thereafter in the federal court that dismissed MCIFB's claims without prejudice pending exhaustion.

None of MCIFB's arguments to the contrary has merit. It first asserts that impairment of a party's asserted interest sufficient for intervention can arise "from a *stare decisis* effect from the court's judgment against their requested relief." MCIFB Mot. 8 (quotation marks omitted). But MCIFB does not even attempt to explain what stare decisis effect on its interests will follow from the approval of a settlement by the Court in this case. *See id*. Nor can it. This Court is simply not being asked to render a decision bearing in any way on the legal requirements for Nation citizenship or Indian status under federal law.

---

[5] https://www.creeksupremecourt.com/mcn-constitutiion/.

MCIFB next contends that under circuit precedent, a putative intervenor's "record of advocacy" can establish the requisite intervention interest. *Id.* 8–9 (quoting *W. Energy Alliance v. Zinke*, 877 F.3d 1157, 1165 (10th Cir. 2017)). However, in *W. Energy Alliance*, the Court found that the putative intervenors had a record of advocacy specifically with respect to *the issue the Court was faced with deciding*—thereby establishing the requisite interest in the action, 877 F.3d at 1165—*and* that the interest could be impaired by the outcome, establishing the requisite prospect of impairment, *id.* at 1167–68.

Here, MCIFB has established neither. It does not and cannot allege a record of advocacy on the issues presented in this case. Mr. Solomon-Simmons' advocacy on civil rights and social justice issues, *see* MCIFB Mot. 3, has no bearing on the issues presented here. *Compare, e.g.*, *Coal. of Ariz./N.M. Counties*, 100 F.3d at 838–39 (stating, in case involving challenge to agency's listing of a species of owl as endangered, that the putative intervenor's record of advocacy was relevant and substantiated because "he was instrumental in [the agency]'s initial decision to protect the Owl under the [Endangered Species] Act, *see, e.g.*, 58 Fed. Reg. 14,248, 14,252 (1993) (citing Dr. Silver's petition as instigating [agency]'s decision to list the Owl as an endangered species)"), with *Wildearth Guardians v. U.S. Forest Serv.*, Civil Action No. 19-cv-00208-REB, 2020 WL 5134221, at *3 (D. Colo. Mar. 30, 2020) ("The generalized claim of a persistent record of advocacy on related issues is not circumstantiated on the record" and therefore did not constitute a protectable interest supporting intervention).

MCIFB further asserts that Mr. Solomon-Simmons has a "personal stake in ensuring he is not subjected to unlawful exercises of criminal jurisdiction by the Defendant Tulsa [and] the MCIFB shares this interest for its members[.]" MCIFB Mot. 9. But that is not an interest that might be impaired by this Court's approval of the parties' Agreement because the Court is not

asked to make any ruling regarding Tulsa's jurisdiction as a matter of federal or state law, including with respect to Creek Freedmen, or any other ruling that could possibly impair or impede the ability of MCIFB or its members to challenge any assertion of criminal jurisdiction over Creek Freedmen by Tulsa (or any other government) in any forum.

In essence, MCIFB's argument here is that it might *benefit* from a ruling by this Court on the issue of who may legally qualify as an "Indian" under federal law or as a "citizen" under Nation law. But intervention as of right under Rule 24(a) turns on whether a putative intervenor's ability to protect its interest may be "impair[ed] or impede[d]," Fed. R. Civ. P. 24(a)(2), not whether it might be advanced. If the latter were the basis of the Rule, then putative intervenors could graft new issues onto pending cases at will, and courts have wisely declined to permit Rule 24 to be used in that fashion. *See, e.g.*, *Sutphen Ests. v. United States*, 342 U.S. 19, 23 (1951) (upholding denial of intervention where the lower court "had ample reason to prevent the [matter before it] from being burdened with a collateral issue that … can properly be adjudicated elsewhere"); *Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869, 874 (10th Cir. 1986) ("intervention could only cause delay and inject elements into the suit totally irrelevant to" the parties' dispute); *Petuskey v. Rampton*, 431 F.2d 378, 382 (10th Cir. 1970) (upholding denial of intervention where "the intervention sought to inject a new and different issue" addressing "separate problems" from those at issue between the parties); *Osage Producers Ass'n v. Jewell*, Case No. 15-CV-469-GKF-FHM, 2016 WL 80660, at *2 (N.D. Okla. Jan. 7, 2016) ("intervention would only serve to inject legal issues collateral to the dispute between the existing parties" and Rule 24(a)(2) "cannot be used" in that fashion (citation omitted)).

## 2.    MCIFB's Motion Is Untimely.

Like the Governor, MCIFB filed its intervention motion on the eve of settlement and makes no claim to have been unaware of this suit since its onset. And there is prejudice to the parties from MCIFB's delay for the same reasons there is prejudice from the Governor's delay: namely, eleventh-hour disruption of the parties' successful efforts to reach compromise. The Nation will not burden the Court with duplicative briefing on those points and incorporates them here. *See supra* pp. 14-16. That prejudice is compounded by MCIFB's efforts to inject entirely new (and decidedly complex) issues into the case that were not implicated at its onset and are not remotely implicated by the parties' Joint Settlement Agreement. *See supra* p. 16-17.

 MCIFB nevertheless asserts that the parties will not be prejudiced because, "similar to *Kane County*," it filed its motion during the stay issued by the Court to allow the parties to reach a settlement. *See* MCIFB Mot. 8 (discussing *Kane Cnty.*, 928 F.3d 877). However, in *Kane County*, the Court found a motion to intervene timely where it had been filed when the case was stayed for settlement negotiations; but it did so only after the settlement efforts had failed, the stay had expired, and the parties had resumed their adversarial positions. *See id*. at 885–86 & n.6.

MCIFB further contends its motion is timely because its interests "will be injured without the ability to participate, even if there are alternative forums that might be available." MCIFB Mot. 7 (citing *W. Energy Alliance*, 877 F.3d at 1167). *Western Energy Alliance* indeed states that "[w]here a proposed intervenor's interest *will be prejudiced if it does not participate in the main action*, the mere availability of alternative forums is not sufficient" to deny intervention. 877 F.3d at 1167 (brackets in original) (emphasis added) (citation omitted). But the Court also found that there were possible outcomes in the case by which the putative intervenors' "interests may be impaired[.]" *Id*. at 1168. As discussed above, that is simply not the case here. *See, e.g.*, *Tyson*

*Foods*, 619 F.3d at 1237 ("The Nation will not be prejudiced in the sense that its claims will not be impaired by the denial of its motion to intervene. The Cherokee Nation may bring its claims in a separate lawsuit if it wishes." (citation omitted)). Here, MICFB is presently enjoying full opportunity to litigate its Indian status and Creek citizenship claims in the Nation's Supreme Court. If MCIFB ends up unsatisfied with the outcome there, nothing about this case will affect MCIFB's ability file a federal action, including in the federal court that dismissed its action without prejudice for failure to exhaust tribal remedies. *Cf. Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) ("The primary meaning of 'dismissal without prejudice' … is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim.").

**B.      MCIFB Is Not Entitled to Permissive Intervention Under Federal Rule of Civil Procedure 24(b).**

MCIFB alternatively contends that it should be granted permissive intervention under Rule 24(b), which requires that the motion be timely, *id*. 24(b)(1), and that the putative intervenor "has a claim or defense that shares with the main action a common question of law or fact," *id*. 24(b)(1)(B). "[T]he court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id*. 24(b)(3). For the reasons stated above and incorporated here, permissive intervention would prejudice the adjudication of the parties' rights, and MCIFB's motion is untimely. *See supra* p. 15-16.

Nor can MCIFB meet Rule 24(b)'s commonality requirement. It appears to assert that a common question of fact exists because Tulsa's issuance of a traffic ticket to Mr. Solomon-Simmons "is precisely the kind of conduct by Tulsa that the MCN is challenging." MCIFB Mot. 12. But that is not a "*question* of … fact." Fed. R. Civ. P. 24(b)(1)(B) (emphasis added). No one disputes that Mr. Solomon-Simmons was ticketed by Tulsa, or that Tulsa has ticketed Indians

24

within the Creek Reservation as alleged by the Nation. Neither presents a factual question requiring resolution by this Court if MCIFB is allowed to intervene.

MCIFB's claim regarding a common question of law fares no better. It contends that "MCIFB's claim and the existing claim asserted by the MCN depend on this Court's analysis of Tulsa's criminal jurisdiction over Creek land pursuant to *McGirt* … and 18 U.S.C. § 1151(a)." MCIFB Mot. 12. As noted, the parties' Agreement takes Tulsa's Indian country jurisdiction over Indians off the table, requiring this Court to make no ruling on any such issues.

In sum, because MCIFB cannot meet Rule 24(b)'s mandatory commonality and timeliness requirements, permissive intervention should be denied.

## CONCLUSION

Neither the Governor nor MCIFB has identified any basis on which this Court should allow them to insert themselves into this case at the eleventh hour for purposes of upending the parties' successful effort to reach compromise on the very type of cooperative governance framework that the Supreme Court in *McGirt* identified as critical to jurisdictional stability and effective law enforcement in Indian country in eastern Oklahoma. The Nation respectfully requests that their motions to intervene be denied and that the Governor's Notice of Required Dismissal be rejected.

Dated: June 25, 2025

Geraldine Wisner, OBA No. 20128
Attorney General
MUSCOGEE (CREEK) NATION
P.O. Box 580
Okmulgee, OK 74447
(918) 295-9720
gwisner@mcnag.com

O. Joseph Williams, OBA No. 19256
O. JOSEPH WILLIAMS LAW OFFICE, PLLC
The McCulloch Building
114 N. Grand Avenue, Suite 520
P.O. Box 1131
Okmulgee, OK 74447
(918) 752-0020
jwilliams@williamslaw-pllc.com

Respectfully submitted,

/s/ *Riyaz A. Kanji*
Riyaz A. Kanji
David A. Giampetroni
KANJI & KATZEN, P.L.L.C.
P.O. Box 3971
Ann Arbor, MI 48106
(734) 769-5400
rkanji@kanjikatzen.com
dgiampetroni@kanjikatzen.com

Philip H. Tinker, OBA No. 36498
Stephanie R. Rush, OBA No. 34017
KANJI & KATZEN, P.L.L.C.
12 N. Cheyenne Avenue, Suite 220
Tulsa, OK 74103
(206) 344-8100
ptinker@kanjikatzen.com
vrush@kanjikatzen.com

*Counsel for Muscogee (Creek) Nation*

26

**CERTIFICATE OF SERVICE**

I certify that on June 25, 2025, this document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

/s/ *Riyaz A. Kanji*
Riyaz A. Kanji