# United States District Court
## for the Northern District of Oklahoma

---

Case No. 23-cv-490-JDR-SH

---

MUSCOGEE (CREEK) NATION, *a federally recognized Indian Tribe*,

*Plaintiff*,

*versus*

CITY OF TULSA; MONROE NICHOLS IV, *in his official capacity as Mayor of* CITY OF TULSA; DENNIS LARSEN, *in his official capacity as Chief of Police*, TULSA POLICE DEPARTMENT; JACK BLAIR, *in his official capacity as City Attorney for* CITY OF TULSA,

*Defendants*.

---

## OPINION AND ORDER

---

The Muscogee (Creek) Nation sued the City of Tulsa, its Mayor, its Chief of Police, and its City Attorney seeking a declaratory judgment that Defendants lack criminal jurisdiction over Indians who commit traffic offenses within the Creek Reservation. Dkt. 2. The Nation also asked the Court to enjoin Defendants from exercising this jurisdiction without express authorization from Congress. Dkt. 9. Defendants moved to dismiss, arguing that the action was premature because "the law regarding jurisdiction over Indians is unsettled, continually evolving, and the subject of several pending lawsuits in both state and federal courts." Dkt. 28 at 6.[1] The parties settled their dispute and filed a stipulation of voluntary dismissal without prejudice. Dkt. 161.

Prior to dismissal, but after the parties entered settlement negotiations, Oklahoma Governor Kevin Stitt, on behalf of the State of Oklahoma,

---

[1] All citations use CM/ECF pagination.

No. 23-cv-490

asked the Court to dismiss this case for lack of joinder, arguing that the State is a necessary and indispensable party that must be but cannot be joined absent a waiver of sovereign immunity. Dkt. 127. In the alternative, the State moved to intervene as a matter of right. The Nation, the City, and the individual named parties oppose the State's motion that, they claim, is mooted by the parties' settlement. Dkts. 150, 152.

After careful consideration, the Court, at a hearing on March 6, 2026, entered a "bottom line" order holding that the voluntary dismissal of this case does not moot the State's motion and that the State of Oklahoma is not a necessary party, does not qualify for intervention as a matter of right, and does not qualify for permissive intervention. The Court therefore denied the State's motion. The Court's denial of the State's motion and the parties' stipulation of dismissal [Dkt. 161] moot all remaining motions. This Opinion and Order sets forth the reasons for the Court's determinations. The Court closes the case.

I

As a threshold issue, the Court considers whether the parties' stipulation of dismissal [Dkt. 161] moots the State's notice of mandatory joinder and motion to intervene. In general, a stipulation of dismissal by the parties moots most outstanding motions in a case. This is true about permissive motions to intervene because "[t]he fact that a motion to intervene is pending at the time the notice is filed does not affect the automatic dismissal provided for by Rule 41(a)(1)(A)(i) and (B)." *Fort Sill Apache Tribe of Oklahoma v. United States*, No. CIV-08-0541-F, 2008 WL 2891654, at *1 (W.D. Okla. July 23, 2008).

But the State's motion is not limited to permissive joinder. Instead, the State argues that the case cannot proceed without it, that it must be joined, and that it may intervene as a matter of right. Dkt. 127. "A court can allow 'intervention as of right in a jurisdictionally and procedurally proper suit that

2

No. 23-cv-490

has been dismissed voluntarily,' even when nothing is left before the district court." *DeOtte v. Nevada*, 20 F.4th 1055, 1066 (5th Cir. 2021) (quoting *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 513 n.5 (5th Cir. 2016)). Although the Tenth Circuit has not explicitly held that an order granting intervention as of right may be permissible even after a case is otherwise resolved, it has held that settlement does not moot an *appeal* of a denial of intervention as of right. *Fed. Deposit Ins. Corp. v. Jennings*, 816 F.2d 1488, 1491 (10th Cir. 1987) (holding that the court had jurisdiction to consider the appeal because "if First Penn was entitled to intervention of right, Peat Marwick's liability . . . is still subject to determination at trial"). If settlement does not moot an appeal of an order denying intervention as of right, it follows that settlement cannot moot the underlying motion to intervene. *See In re Brewer*, 863 F.3d 861, 870 (D.C. Cir. 2017) (holding "if a motion to intervene can survive a case becoming otherwise moot, then so too can a motion to intervene survive a stipulated dismissal."). And both a motion to intervene as of right and a notice of required joinder fundamentally hinge on the same question: Whether the real party in interest to the litigation is a party in the case. The Court holds that the stipulation of dismissal does not moot the State's notice of required joinder.

At oral argument, the Nation argued that there was no longer a live dispute into which the State can intervene because the City has ceased prosecuting Muscogee tribal members within the boundaries of the Nation's reservation. But according to the City, it still has jurisdiction to prosecute those members and has only agreed not to do so for policy reasons. So although the City has not recently brought a case against a tribal member, it still opposes the Nation's core argument in its complaint and motion for preliminary injunction. The fundamental disagreement at the heart of the dispute is still in play, and the case, and consequently the State's notice and motion, is not mooted by changes in the City's policy that could be undone.

No. 23-cv-490

## II

The State argues it is a necessary and indispensable party and urges the Court to dismiss the case unless it is joined. It also argues that, if it is joined (as it purportedly must be), the case must be dismissed on sovereign immunity grounds. This presents an issue because there is no obvious difference between the relief sought by the State and the one negotiated by the parties—dismissal. It is therefore unclear why the State must be permitted to intervene in order to obtain the relief the City has already obtained.

And although the State argues that Oklahoma law precludes the City from entering into agreements that cede the State's criminal jurisdiction, the State acknowledged at oral argument that the legality of the City's agreement with the Nation under Oklahoma law is a matter for Oklahoma state courts, not this Court.[2] At most, the State argues that a dismissal of this case on the merits would notionally invalidate the settlement agreement, and a live settlement agreement would create unnecessary confusion for consideration of the issues in Oklahoma state court. But the State concedes that the City could, at least in theory, enter into an agreement with the Nation under the same terms it has agreed to in the current settlement; thus, even if the case were dismissed on sovereignty or other grounds, the State could be left with a nearly identical agreement that would likely create the same issues in any state-court proceedings.

In the end, the State seeks the same relief that is being granted—a dismissal, although the State requests dismissal on Eleventh Amendment grounds. Dkt. 127 at 14. This requested relief is fatal to the State's argument that it is an indispensable party. The remedy the State seeks for being left out of the case is identical to the remedy the parties have negotiated: dismissal.

---

[2] The State is currently involved in litigation to prevent the City from entering into the settlement *See* Writ of Prohibition, *State of Oklahoma ex rel. Stitt v. City of Tulsa*, No. PR-123368 (Okla. Aug. 20, 2025).

4

No. 23-cv-490

Insofar as the State argues that the agreement transgresses Oklahoma law, it may seek a remedy in Oklahoma state court to invalidate the agreement. It is not the function of a federal court to decide fundamentally internal matters of the relationship between the State of Oklahoma and its constituent municipalities.

## III

Even if the relief sought by the state had been different from the parties' stipulated dismissal, joinder would be improper because the State cannot show that it must be joined to this action. Rule 19 lays out two circumstances where an absent entity is necessary to a suit. *Alabama-Quassarte Tribal Town v. United States*, 899 F.3d 1121, 1123 (10th Cir. 2018). First, if the court cannot accord complete relief without the absent entity, the party is necessary. Second, if the entity claims an interest in the suit and continuing without it may "as a practical matter impair or impede the [party's] ability to protect [their] interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest," the party is necessary. Fed. R. Civ. P. 19(a)(1)(B)(i) and (ii).

## A

The State argues that the Rule 19(a)(1)(B)(i) requirement is met because it has an interest in Tulsa's "right to exercise criminal jurisdiction" as a political subdivision of the State and because the injunctive relief sought by the Nation would impair or impede the State's "sovereign interest in enforcing its laws, using its police powers, and protecting its citizens[.]" Dkt. 127 at 12. The Nation responds that the posture of this case has changed, and injunctive relief is no longer at issue. The parties have agreed to dismissal and "Tulsa has not ceded its claim to state derived concurrent jurisdiction to prosecute Indians for traffic offenses within the Creek Reservation." Dkt. 152 at 12. In its reply, the State counters that the relevant question is not the procedural posture of the case, but the subject of the suit. Dkt. 155 at 1.

5

No. 23-cv-490

Although the Court agrees that the State has a strong interest in the subject matter of the suit, the Court's inquiry does not end there. A putative party is not necessary if its "interests . . . are substantially similar" to the interests of a party already represented in the action because a party can only be necessary if their interest is not already represented. *Kansas v. United States*, 249 F.3d 1213, 1227 (10th Cir. 2001).

The State argues that, although the interests of the City of Tulsa and the State of Oklahoma were originally aligned in this case, they no longer do so, and there is now "more than a mere possibility exists that the interests of the City of Tulsa and the State . . . diverge in this lawsuit." Dkt. 127 at 25. The Governor's brief argues that political differences, policy differences, and differences in the tenure of office between the City's and State's executive branches caused the two interests to diverge. *Id.*

The Governor's brief cites no authority indicating that this is the type of divergence giving rise to relief under Rule 19. In support of his argument, the Governor cites an out-of-circuit case from 1949, *Pyle-National Co. v. Amos*, 172 F.2d 425, 427 (7th Cir. 1949). But *Pyle* dealt with a shareholder who alleged that corporate directors of the plaintiff company had engaged in a settlement in bad faith and had extinguished a legal claim for substantially less than it was worth. *Id.* This case does not establish that states and cities have divergent interests simply because they are political entities with impermanent executives whose policies may fluctuate accordingly. Other courts have determined that divergent political affiliations are insufficient to find inadequate representation when there is an otherwise shared, general interest. *United States v. Alabama*, No. 2:06-cv-392-WKW, 2006 WL 2290726, at *5-6 (M.D. Ala. Aug. 8, 2006).

Although the State and the City might no longer be completely aligned in all respects, they retain shared interests in every significant respect. Both the City and the State seek public safety on Tulsa streets, and cities, as state-

6

authorized entities, have an interest in enforcing state law. *See Anderson v. Veeru-Collings*, No. 2:14-cv-00481, 2014 WL 6085679, at \*4 (D. Utah Nov. 13, 2014) (holding that cities have "an interest in the enforcement of state statutes."). The Governor acknowledges as much when he states that the City has previously defended that interest. Dkt. 127 at 120. And the fact that the City might have other, unique interests that the State does not share does not mean that the shared interest in law enforcement is illusory or no longer represented.

The Tenth Circuit has recognized that a prospective party's interest need not be identical to that of an existing party to ensure adequacy of representation. In *Sac & Fox Nation of Missouri v. Norton*, 240 F.3d 1250, 1258 (10th Cir. 2001), the Wyandotte Tribe of Oklahoma attempted to dismiss a case for lack of joinder of the tribe as necessary and indispensable party. The Tenth Circuit held that the Department of the Interior, who was already a party in the case, shared interests in the lawsuit with the Wyandotte Tribe because the Secretary of the Interior's determination of the Wyandotte Tribe's rights was at issue. The Wyandotte Tribe was not a necessary party even though its interests were not precisely identical to those of the Secretary. *Id.* at 1259.

Further, the Tenth Circuit has held that even diverging interests may be adequately represented where "the objective of the applicant for intervention is identical to that of one of the parties." *Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regul. Comm'n*, 787 F.3d 1068, 1072 (10th Cir. 2015). And that is what we have here.

The City of Tulsa's interest is substantially similar to the State's. The City retains an interest in law and order on Tulsa streets, as does the State. The City retained and defended its interest by asserting jurisdiction over traffic violations by tribal members on the Creek Reservation; the State claims the same interest. That the City has additional interests in its relationship with the Nation and other tribal governments that may color exactly how it

7

chooses to proceed with the litigation and policymaking does not eliminate its shared interest with the State. Although the City and State may not share exactly the same concerns or ideas on how to protect their shared interests, that does not mean that the State's interests are unrepresented or are in conflict with the City's. *Cf. Union Pac. R.R. Co. v. Utah State Tax Comm'n*, No. 2:20-cv-00547, 2020 WL 5634142, at *4 (D. Utah Sept. 21, 2020) (permitting joinder of multiple counties when revenue and budgetary interests were unrepresented and the existing government parties "agree that they will be unable to adequately represent" the new parties.).

At oral argument, the State cited *Cameron v. EMW Women's Surgical Center, P.S.C.*, 595 U.S. 267 (2022), a case in which the Supreme Court permitted the Attorney General of the Commonwealth of Kentucky to intervene in an appellate proceeding to defend a Kentucky law when a different state official declined to file a petition for rehearing en banc or a petition for certiorari. *Id.* at 273, 282. Critical to the Supreme Court's analysis in that case was that the Commonwealth's interests "would no longer be protected" if the existing parties declined to petition for rehearing or certiorari, and the Sixth Circuit's ruling against the Kentucky law would stand unopposed. *Id.* at 280. But that does not bear on the facts at play here. In *Cameron*, the failure to defend the Kentucky law would have meant that the Sixth Circuit's ruling on the constitutionality of the law would stand and the Commonwealth would have been precluded from enforcing it. *Id.* Here, the City's entrance into settlement negotiations could not lead to the State being bound by any agreement that came out of those negotiations—any threat to the enforceability of state law would come from the *failure* of the parties to settle their dispute and an ensuing judicial ruling, not from a successful settlement agreement. The State conceded at the hearing that the settlement agreement does not bind the State.

The Governor's argument that the City's interests have diverged from the State's might have more weight if Tulsa were conceding jurisdictional

8

ground. But that is not the case. The City diligently defended its argument that it retains jurisdiction over traffic violations within the borders of the Creek Reservation throughout this case. Even though the City and the Nation have reached a settlement agreement, the City did not give up its claim of jurisdiction over these matters. Instead, the City simply agreed, as part of its policies, to refer traffic violations to the Nation. Dkt. 149-1 at 4-6.[3] This is not, as the Governor characterizes it, "Tulsa . . . failing to diligently pursue, preserve, and protect Oklahoma's state-wide interests" or a "sacrific[e]" of Oklahoma's "sovereignty interests." Dkt. 127 at 25. It is Tulsa pursuing and protecting those interests through a third party. Even if the Governor's argument were correct, the City and State may have a common goal of preservation of the City's claim to jurisdiction notwithstanding their divergent interests. *Tri State Generation and Transmission*, 787 F.3d at 1072. That the Governor objects to changes in the City's strategy in defending their common goal of jurisdiction would not defeat the presumption that representation by a party with identical litigation goals is adequate.

Further, Oklahoma is not prejudiced by lack of joinder. No part of the settlement agreement precludes the Oklahoma Legislature from abrogating the City's authority to transfer such cases nor instituting alternative mechanisms for processing criminal cases within Tulsa's boundaries.[4] In fact, the settlement agreement does not restrain Oklahoma whatsoever. The

---

[3] At oral argument, the City and the Nation represented that their new settlement agreement is substantially identical to the one at Dkt. 149-1 and the City confirmed that it is not conceding its jurisdictional arguments.

[4] The Court has not identified a provision of the Oklahoma Constitution preventing the Oklahoma legislature from restricting the City's ability to refer cases to the Nation or authorizing the use of state resources to process criminal cases through the Oklahoma court system. Insofar as there are judicial and legislative forums better suited to hearing and resolving the dispute between the City and the State, the Court does not need to referee what it perceives as either a wholly state-law dispute or a nonjusticiable political question ancillary to the Nation's lawsuit and the present settlement agreement.

No. 23-cv-490

settlement would not have precedential value in the other cases pending on this same topic, and it will not prejudice the State's efforts to claim jurisdiction.

The State has failed to show that the City is incapable of adequately representing the State's interest. The City's actions throughout this lawsuit show that it has sought to preserve its jurisdictional arguments even through the settlement process, and the pending agreement does not cede legal ground for future litigation. That the City has agreed to a policy of administrative referral does not amount to abandonment of its claims to jurisdiction. The Court finds that the State is not a necessary party under Rule 19(a)(1)(B)(i).

## B

The second alternative presented in a Rule 19(a)(1)(B)(ii) inquiry presents a wrinkle. Even if an entity's interests are adequately represented, it would nevertheless be a necessary party if non-joinder would "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." There is no allegation that the State would (or could) incur multiple inconsistent obligations by prosecuting a claim that the City has agreed not to refer to the Nation. Further, there is "nothing in the record indicat[ing] the possibility of additional lawsuits involving this same subject matter" that would lead to an inconsistent obligation on the City's part. *Sac & Fox Nation*, 240 F.3d at 1259.

But what if we consider the matter before the settlement has issued—would there have been a risk of inconsistent obligations at that time? The State has not pointed to one. The State suggests the possibility that if the City were bound by an injunction in this case, that decision might run counter to or interfere with ongoing matters currently pending before the Oklahoma Supreme Court. But splits in authority are common occurrences, and the State

10

No. 23-cv-490

has not cited any authority that the risk of diverging legal rulings is the type of risk that would support intervention under Rule 19. In any event, splits in authority are best resolved by appeals, not by permitting parties in one action to intervene in other actions that might, if pursued to their end, create such a split.

There is no substantial risk of any of the parties being subject to multiple, inconsistent obligations such that joining the State of Oklahoma would be necessary.[5] Because it has failed to establish the elements of Rule 19, the State is not a necessary party to this action, and the Court will not dismiss for lack of joinder.

## IV

The Governor, on behalf of the State, has moved for alternative relief; first, to intervene as of right under Rule 24(a)(2) and second, to intervene with the Court's permission under Rule 24(b)(1)(B). The Court denies the first request because the motion is untimely and would prejudice the existing parties, and the second because the motion is untimely and a party may not permissively intervene in a settled case.

## A

To intervene under Rule 24(a)(2), a party must "claim[] an interest relating to the property or transaction that is the subject of the action, and [be] so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Timeliness is a threshold issue to any motion to intervene. *Wyandotte Nation v. Salazar*, No. 11-cv-2656-JAR-DJW, 2012 WL 1231857, at *5 (D. Kan. Apr. 11, 2012). Rule 24 does not impose a

---

[5] Because the Court found that Oklahoma is not a necessary party, it need not rule on the State's arguments that Oklahoma's sovereign immunity precludes its joinder to a case asking solely for injunctive relief or that Oklahoma would be an indispensable party.

time limit for intervention, but a district court may exercise its discretion in determining timeliness. *Id.*

This Court has already ruled that other would-be intervenors failed to timely seek intervention when they waited three months to file after learning of their interest. Dkt. 154. The State's delay was even longer. The State filed its motion to intervene fifteen months after this case was filed, even when the State was well aware of its interest in the action. Dkts. 2, 127. The State's sole argument is that it was initially "optimistic that the case would be dismissed without the need for the State to insert itself" but changed course when settlement negotiations changed the playing field. Dkt. 127 at 26. This argument is unavailing.

The State's "optimis[m]" that this Court would grant a dismissal is not a valid reason for delaying a motion to intervene. *Id.* In general, "if parties take a wait-and-see approach to intervention, they lose on timeliness." *United States v. Michigan*, 68 F.4th 1021, 1028 (6th Cir. 2023) (quotation marks removed). Although "[p]lausible justifications for tardiness [in seeking leave to intervene] may include a significant change in the circumstances of the case . . . a strategic decision not to intervene sooner due to a belief that the court would grant a motion to dismiss cannot justify tardiness." *Schmidt v. City of Norfolk*, No. 2:24cv621, 2025 WL 1502994, at *4 (E.D. Va. May 27, 2025) (quotation marks and alterations removed). The State waited for over a year after it knew of its interest out of a belief that the Court would grant a motion to dismiss; this strategic decision to delay cuts against the timeliness of the State's motion.

Although the State's motion was fifteen months delayed, the Tenth Circuit has described the 24(a)(2) timeliness analysis as "not a tool of retribution to punish the tardy . . . but rather a guard against prejudicing the original parties by the failure to apply [to intervene] sooner." *S. Utah Wilderness All. v. Kempthorne*, 525 F.3d 966, 971 n.6 (10th Cir. 2008). The State argues

"[i]f the State is not permitted to intervene here, any decree or judgment entered in this case will be subject to immediate collateral attack by the state" and so his intervention at the time of filing, while the settlement agreement was pending, would not prejudice the parties. Dkt. 127 at 27. The Court notes that the State has already sued to bar the City's entry into a settlement agreement with the Nation.[6] Writ of Prohibition, *State of Oklahoma ex rel. Stitt v. City of Tulsa*, No. PR-123368 (Okla. Aug. 20, 2025). Further collateral attacks will not prejudice the parties more than the Governor's state-court action.[7]

The Tenth Circuit has also specified that there is undue prejudice when an intervention would "clutter the action unnecessarily" without aiding the original parties. *Arney v. Finney*, 967 F.2d 418, 421-22 (10th Cir. 1992). The Court finds this prejudice is likely here. The State has not shown how its intervention in this suit would meaningfully aid the City's defense of its claim to jurisdiction over traffic offenses committed by tribal members on the Creek Reservation, particularly because the City has continuously asserted its jurisdiction throughout multiple rounds of briefing in this case.

This Court previously determined that delaying intervention until three months after a putative intervenor had knowledge of an interest in this litigation was untimely; the State admits it took five times longer to file. Dkt. 154 at 2; Dkt. 127 at 26. The Court sees no difference between the State's

---

[6] The Court is uncertain what other collateral attacks the Governor may raise given the procedural posture of this case. In general, collateral attacks on settlement agreements are "impermissible." *James Barlow Fam. Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1321 (10th Cir. 1997); *see also Duell v. Heidenrich*, 39 F.3d 1176 (4th Cir. 1994) (unpublished table decision) (holding that "as a general matter, we recognize that settlements are not subject to collateral attack."). But even if additional ones are available, they will not cause further prejudice to the existing parties.

[7] At oral argument, the State argued that compacts between cities and independent sovereigns require the State's authorization and that Oklahoma law's broad grant of authority to cities to enter into contracts does not apply as the City was engaged in a cession of criminal jurisdiction. But this Court does not have jurisdiction to determine matters of Oklahoma state constitutional law and the Governor's current action in the Oklahoma Supreme Court is a better vehicle for resolving those questions.

No. 23-cv-490

attempt to intervene and those other late putative intervenors who have already been denied by this Court. The State's motion is untimely, would cause significant prejudice to the parties, and would clutter the action unnecessarily; the Court will not permit its intervention.

### B

Even assuming that the State's motion was timely and would not prejudice the parties, the Rule 24(a)(2) analysis would not favor intervention. The State of Oklahoma has an interest in this suit as discussed in section II–A, *supra*. But the City shares the State's interest and has acted to protect it. This is not a case where a government entity "must account for a broad spectrum of interests that may or may not be coextensive with the intervenor's particular interest." *Tri-State Generation & Transmission*, 787 F.3d at 1073 (quotation marks removed). The City and the State share interests in public safety and in preserving their jurisdiction over tribal member defendants; that the City has accepted a policy change to end this litigation without conceding its jurisdictional claims does not negatively affect the State's jurisdictional claims or interests in public safety.

If the City had abandoned its jurisdictional claim, the State's argument that the City had not appropriately defended their shared interests might have borne fruit. But simply agreeing to settle this case without conceding a jurisdiction argument, as the City has done here, does not equate to an abandonment of a defense and thus does not equate to an abandonment of a shared interest. The disposition of this action by settlement will neither impair nor impede the State's ability to protect its interests in traffic enforcement in Tulsa.

The Court finds that the State's intervention is untimely. The State waited fifteen months to file after knowing of its interest in the matter, solely out of a belief that the City would win a motion to dismiss, and the State only moved to intervene when the case was actively being resolved by the parties.

No. 23-cv-490

The State's intervention at this late stage in the case will prejudice the parties' settlement. The State is not entitled to intervene as a matter of right under Rule 24(a)(2).

C

Last, the State requests this Court permit its intervention under Rule 24(b)(1)(B). The Rule allows a court to permit a non-party's intervention when the application is timely and it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Court has previously found that the State's intervention is untimely. *See* § IV–A, *supra*. Further, insofar as the Court has held that the other portions of the State's motion are not made moot by the settlement agreement, motions for permissive intervention are mooted by voluntary dismissal. *Fort Sill Apache Tribe of Oklahoma v. United States*, No. CIV-08-0541-F, 2008 WL 2891654, at *1 (W.D. Okla. July 23, 2008). The Court will not permit the State's intervention under Rule 24(b)(1)(B).

V

For the reasons set forth above, the Court reaffirms its "bottom line" Order of March 6, 2026, denying Governor Stitt's notice of required dismissal for non-joinder and motion to intervene [Dkt. 127]. On advisement of the parties that all remaining motions [Dkts. 9, 39, 114, 127] are mooted by the settlement agreement, the Court denies them as moot and directs the Clerk to close the case.

DATED this 16th day of March 2026.

JOHN D. RUSSELL
*United States District Judge*